UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EDWIN FIGUEROA-TORRES,
NICOLAS PETERSON,                                                20-CV-4851
RUBEN FIGUEROA TORRES,
ALEX CANDELARIO,
GERMAN PENA and
LUIS MACIAS,

                              Plaintiffs,                    **COMPLAINT**

              -against-

DAVID KLEINER
a/k/a DAVID GREEN
a/k/a DOVID KLEINER
a/k/a DAVID
a/k/a DAVID KLEIN,
STAFFPRO, INC.,
EMPAY INC.,
TIEBOUT DK HOLDINGS LLC,
TIEBOUT II ASSOCIATES LLC,
TIEBOUT ASSOCIATES LLC,
1665 MONROE REALTY, LLC,
1665 MONROE ASSOCIATES, LLC,
EAST 234 REALTY LLC,
DYK REALTY HOLDINGS LLC,
PALM TREE CONSTRUCTION CORP.,
705 GERARD LLC,
282 GUN HILL LLC,
1090 REALTY LLC,
124 E 176th STREET ASSOC LLC,
2155 GRAND AVE HOLDINGS LLC,
2084 GRAND AVE HOLDINGS LLC,
691 LLC,
2505 BEDFORD 2015 LLC,
GLEASON BRONX REALTY LLC,
2060 ASSOC LLC,
EAST 168 REALTY LLC,
1215 REALTY LLC,
2335 VALENTINE LLC,
66 GRAHAM LLC,
1855 REALTY LLC,
3905 ASSOC LLC,
1210 CROES LLC,

1125 SHERIDAN LLC,
247 AUDUBON REALTY LLC,
E 196 LLC,
IGNATIE FRIED a/k/a MEIR FRIED,
MOSHE LIEB and
YISRAEL FELDMAN,

                        Defendants.


   Plaintiffs Edwin Figueroa-Torres, Nicholas Peterson, Ruben Figueroa Torres, Alex Candelario, German Pena and Luis Macias (collectively, "Plaintiffs"), by their undersigned attorneys and based on the knowledge and information they possess collectively, allege as follows for their Complaint against David Kleiner a/k/a David Green a/k/a David a/k/a Dovid Kleiner a/k/a David Klein ("David"), Staffpro Inc., Empay Inc., Tiebout DK Holdings LLC, Tiebout II Associates LLC, Tiebout Associates LLC, 1665 Monroe Realty LLC, 1665 Monroe Associates LLC, East 234 Realty LLC, DYK Realty Holdings LLC, Palm Tree Construction Corp., 705 Gerard LLC, 282 Gun Hill LLC, 1090 Realty LLC, 124 E 176th Street Assoc LLC, 2155 Grand Ave Holdings, 2084 Grand Ave Holdings LLC, 691 LLC, 2505 Bedford 2015 LLC, Gleason Bronx Realty LLC, 2060 Assoc LLC, East 168 Realty LLC, 1215 Realty LLC, 2335 Valentine LLC, 66 Graham LLC, 1855 Realty LLC, 3905 Assoc LLC, 1210 Croes LLC, 1125 Sheridan LLC, 247 Audubon Realty LLC, E 196 LLC, Ignatie Fried a/k/a Meir Fried ("Fried"), Moshe Lieb ("Lieb") and Yisrael Feldman (sometimes collectively referred to herein as "Defendants"):

## <u>Introduction</u>

   1.  This action arises out of Defendants' violations of federal and state labor laws. Defendants, the owners, managers, and management companies of residential buildings in the Bronx, have systematically refused to pay Plaintiffs the minimum wage or overtime, failed to

pay their wages on time, and falsified their employment and time-keeping records.

2.      Plaintiffs are manual workers with limited education and communication skills who collectively perform building maintenance, electrical work, carpentry, small-scale construction, and certain administrative work. They bring this action against Defendants for minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201, *et seq.*) and Article 19 of the New York Labor Law ("NYLL") (§ 650, *et seq.*) and its implementing regulations, and for untimely paid wages and wage notice violations under NYLL Article 6 (§ 190, *et seq.*).

3.      Defendants are also liable for unlawful discrimination in violation of the New York City Human Rights Law, NYC Administrative Code § 8-107, for paying the only Plaintiff of African descent (Nicolas Peterson) substantially lower wages than the (already illegally and unconscionably low) wages paid to the other Plaintiffs, and for otherwise subjecting him to other forms of disparate treatment.

**Jurisdiction & Venue**

4.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

5.      This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

6.      Venue is proper under 28 U.S.C. § 1391(b) and (c). The underlying events occurred primarily in this district.

3

**The Parties**

7.      Plaintiff Edwin Figueroa-Torres resides in a basement unit at 2176 Tiebout Ave., Bronx, NY 10457.

8.      Plaintiff Nicolas Peterson resides in a room in the basement of 2176 Tiebout Ave., Bronx, NY 10457.

9.      Plaintiff Ruben Figueroa Torres resides at 1665 Monroe Ave., # FF, Bronx, NY 10457.

10.     Plaintiff Alex Candelario resides at 1665 Monroe Ave., # FF, Bronx, NY 10457.

11.     Plaintiff German Pena resides at 705 Gerard Ave., Apt. 20G, Bronx, NY 10451.

12.     Plaintiff Luis Macias resides at 2335 Valentine Avenue, Bronx, NY 10458.

13.     Defendant David Kleiner a/k/a David Green a/k/a David a/k/a Dovid Kleiner a/k/a David Klein ("David") is an individual who uses multiple aliases.[1]

14.     Upon information and belief, "David" is a resident of the State of New York.

15.     "David's" principal residence is not known to Plaintiffs.

---

[1] See, e.g., Gabriel Cruz, *Infamous Landlord's Buildings are Lacking in Safety*, The Boogie Breakdown (Summer 2018), at pg. 17, online at https://www.lehman.edu/college-now/summer-arts-academy/pdf/journal2018final.pdf ("David David goes by many names: David David, David Green, and David Kleiner. But among certain city officials, tenants, and activists, he is known in one way: as one of the most notorious landlords in the Bronx. Mr. David has been featured on Public Advocate for the City of New York's 100 Worst Landlords list multiple times under his different aliases. In 2016, he was on the list twice as David David at #13 and David Green at #72.").

4

16.     When communicating with Plaintiffs "David" refers to himself by the name "David Green."

17.     Upon information and belief, "David" is a member of Tiebout DK Holdings LLC, which is the managing member of Tiebout II Associates LLC. See mortgage modification agreement executed under the name "*David Klein*" at https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2019070100554001 (NYC Dept. of Finance filing).

18.     Upon information and belief, "David" is the managing Member of 705 Gerard LLC. See mortgage document executed under the name "*David Kleiner*" at https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2017080300863002 (NYC Dept. of Finance filing).

19.     Upon information and belief, "David" is a manager of 1665 Monroe Associates LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2017091400298004 (NYC Dept. of Finance filing at p. 51, executed under the name "*Dovid Kleiner*" and identifying him as that property's "Manager").

20.     At all material times herein "David" was the person with the most authority over each of the named entity Defendants and had the power to exercise control over Plaintiffs regardless of which building they were assigned to work at.

21.     At all material times herein "David's" role within or in relation to the entity Defendants named herein, and the decisions his role entailed, directly affected the nature and conditions of Plaintiffs' employment.

22.     At all material times herein "David" had operational control not only of the entity Defendants themselves, but of the entity Defendants' employment of Plaintiffs.

23.     At all material times herein "David" directed, authorized, condoned, acquiesced in, cooperated with and facilitated the wage and hour violations described herein.

24.     At all material times herein "David" was personally complicit in, and profited from, the wage and hour violations referenced herein.

25.     At all material times herein "David" was acting directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

26.     At all material times herein "David" held a managerial and directorial position through which he exercised control over the entity Defendants' wage policies, employee work schedules, pay rates, record-keeping practices, and day-to-day labor operations.

27.     At all material times herein, "David" had authority to reassign Plaintiffs from one building to another and from one of the Defendant entities to another, and he often used that authority directly, as well as indirectly (through his managers, including Fried, Lieb and Feldman).

28.     Although "David" often exercised his authority through other managers (including Fried, Lieb and Feldman), he periodically exercised that authority in a very direct fashion. By way of example, and not by way of limitation, "David," with respect to one or more Plaintiffs:

(a)     Informally interviewed certain Plaintiffs and other employees.

(b)     Directly set illegal wage rates.

(c)     Required certain Plaintiffs to sign blank timesheets (and sometimes multiple blank timesheets at one time).

6

(d)     Required Plaintiffs to sign a sheet of paper as a condition of
        receiving their holiday "bonus," but without affording them an
        opportunity to know what it says.

(e)     Periodically signed or authorized the placement of images of his
        signature (or the signature of one of his aliases) on paychecks.

29.     Upon information and belief, to the extent the individual Defendants
exercised direct and indirect control over the entity Defendants' wage policies, employee work
schedules, rates of pay, record-keeping practices, and day-to-day labor operations, they did so
with the support and approval of the entity Defendants.

30.     Upon information and belief, Staffpro Inc. is a domestic LLC ("LLC")
organized and existing under the laws of the State of New York.

31.     Upon information and belief, Staffpro Inc.'s principal place of business is
167 Lawrence Ave., Inwood, NY 11096.

32.     Upon information and belief, Staffpro Inc. also has an office at 431 Beach
20th Street, Far Rockaway, NY 11691.

33.     Since January 2019 Staffpro Inc. has been the main designated employer
of Plaintiffs Edwin Figueroa-Torres, Nicolas Petersen, Ruben Figueroa Torres, Alex Candelario
and Luis Macias.

34.     Since January 2019 Plaintiffs Edwin Figueroa-Torres, Nicolas Petersen,
Ruben Figueroa Torres, Alex Candelario and Luis Macias were mainly paid through Staffpro
Inc.

35.     Upon information and belief, since January 2019 Staffpro Inc. has
maintained records for Plaintiffs Edwin Figueroa-Torres, Nicolas Petersen, Ruben Figueroa

7

Torres, Alex Candelario and Luis Macias.

36.     Upon information and belief, "David" caused Staffpro Inc. to become the principal designated employer of Plaintiffs Edwin Figueroa-Torres, Nicolas Petersen, Ruben Figueroa Torres, Alex Candelario and Luis Macias in January 2019.

37.     Since Staffpro Inc. became those Plaintiffs' main employer, "David" has continued to exercise substantial control over the terms and conditions of Plaintiffs' employment.

38.     Upon information and belief, to the extent that Staffpro Inc. is owned by someone other than "David," Staffpro Inc.'s owner or owners have allowed Staffpro Inc. to be used by "David" as an instrumentality to artificially create a sense of distance between himself and the substantial and ongoing wage and hour violations described herein.

39.     Since at least January 2019 Staffpro Inc. has acted directly or indirectly in the interest of one or more other employers in relation to Plaintiffs.

40.     Upon information and belief, Empay Inc. is a domestic LLC organized and existing under the laws of the State of New York.

41.     Upon information and belief, Empay Inc.'s principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

42.     Computer-generated payroll records maintained by Defendants show Empay Inc. as having been an employer of certain plaintiffs at different times during the relevant time period, including, at a minimum, Edwin Figueroa-Torres.

43.     Upon information and belief, from January 2019 onward Empay Inc. has paid and maintained employment records for certain plaintiffs, including, at a minimum, Edwin

Figueroa-Torres.

44.    Upon information and belief, "David" caused Empay Inc. to become designated as an employer of, at a minimum, Edwin Figueroa-Torres, and caused it to be given the same P.O. Box as Tiebout II Associates LLC, 1665 Monroe Realty LLC, Tiebout II Associates LLC and several other companies that "David" owns and/or controls, including 282 Gun Hill LLC, 1090 Realty LLC, 2505 Bedford 2015 LLC, East 168 Realty LLC, and 66 Graham LLC.

45.    Upon information and belief, Empay Inc. is an instrumentality used to artificially create a sense of distance between "David" and Plaintiffs' previously designated employers, on the one hand, and the substantial and ongoing wage and hour violations described herein, on the other.

46.    Upon information and belief, since December 2017 Empay Inc. has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

47.    Upon information and belief, Tiebout DK Holdings LLC is a domestic LLC.

48.    Upon information and belief, Tiebout DK Holdings LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

49.    Tiebout DK Holdings LLC is the managing member of Tiebout II Associates LLC (which was designated as the main employer of certain Plaintiffs prior to 2019). See mortgage modification agreement executed under the name "*David Klein*" at https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2019070100554001 (NYC Dept. of Finance filing).

50.     Upon information and belief, as the managing member of Tiebout II Associates LLC, Tiebout DK Holdings LLC had the power to control, and did control, Tiebout II Associates LLC, which was designated as the main employer of certain Plaintiffs prior to 2019.

51.     At all material times herein, Tiebout DK Holdings LLC has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

52.     Upon information and belief, Tiebout II Associates LLC is a domestic LLC.

53.     Upon information and belief, Tiebout II Associates LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

54.     Upon information and belief, Tiebout II Associates LLC owns 2160-2184 Tiebout Ave., Bronx, NY 10457, see https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2010101100336005 ("Schedule A Description" of property file with the NYC Dept. of Finance, at 8th page of link), which includes 2176 Tiebout Avenue.

55.     Upon information and belief, Tiebout II Associates LLC also has an office at 1834 58th St., Brooklyn, NY 11204. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2019070100554001 (NYC Dept. of Finance filing referring to Tiebout II Associates LLC as having that address ).

56.     Tiebout II Associates LLC was designated as the main employer of certain Plaintiffs prior to 2019.

57.     Tiebout II Associates LLC paid most or all of the wages that were paid to certain Plaintiffs during certain periods within the relevant time period prior to 2019.

58.     Upon information and belief, Tiebout II Associates LLC maintains employment records for certain Plaintiffs.

59.     At all material times herein, Tiebout II Associates LLC has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

60.     Upon information and belief, Tiebout Associates LLC is a domestic LLC.

61.     Upon information and belief, Tiebout Associates LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

62.     Upon information and belief, at all material times herein Tiebout Associates LLC has been primarily controlled by "David," the same individual who controls Tiebout DK Holdings LLC and Tiebout II Associates LLC and the other entity Defendants.

63.     Tiebout Associates LLC has been designated as the main employer of certain Plaintiffs (including, at a minimum, German Pena) at different points during the relevant time period.

64.     Tiebout Associates LLC paid wages to certain Plaintiffs at different points during the relevant time period, including, at a minimum, to German Pena.

65.     Tiebout Associates LLC maintains and/or maintained employment records for certain Plaintiffs, including, at a minimum, German Pena.

66.     At all material times herein Tiebout Associates LLC has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

67.     Upon information and belief, 1665 Monroe Realty LLC is a domestic LLC.

11

68.     Upon information and belief, 1665 Monroe Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

69.     Upon information and belief, "David" is the managing member of 1665 Monroe Realty LLC.

70.     Upon information and belief, 1665 Monroe Realty LLC also operates out of 1665 Monroe Avenue, Bronx, NY 10457.

71.     1665 Monroe Realty LLC was designated as the main employer of certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, Ruben Figueroa Torres and, upon information and belief, Alex Candelario.

72.     1665 Monroe Realty LLC paid most or all of the wages that were paid for certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, Ruben Figueroa Torres and, upon information and belief, Alex Candelario.

73.     1665 Monroe Realty LLC maintains and/or maintained employment records for certain Plaintiffs, including, at a minimum, Ruben Figueroa Torres and, upon information and belief, Alex Candelario.

74.     1665 Monroe Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs and has done so (upon information and belief) at all material times herein.

75.     Upon information and belief, 1665 Monroe Associates LLC is a domestic LLC.

76.     Upon information and belief, 1665 Monroe Associates LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

77.     Upon information and belief, 1665 Monroe Associates LLC also operates out of 1665 Monroe Avenue, Bronx, NY 10457.

78.     "David" is the managing member of 1665 Monroe Associates LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2012100300996005 (NYC Dept. of Finance filing signed under the name "*David Kleiner*").

79.     Upon information and belief, 1665 Monroe Associates LLC owns, *inter alia*, 1665 Monroe Avenue, Bronx, NY 10457, an apartment building where certain Plaintiffs live and work.

80.     1665 Monroe Associates LLC was designated as the main employer of certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, Ruben Figueroa Torres and, upon information and belief, Alex Candelario.

81.     1665 Monroe Associates LLC paid most or all of the wages that were paid for certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, Ruben Figueroa Torres and, upon information and belief, Alex Candelario.

82.     1665 Monroe Associates LLC maintains and/or maintained employment records for certain Plaintiffs, including, at a minimum, Ruben Figueroa Torres and, upon information and belief, Alex Candelario.

83.     1665 Monroe Associates LLC has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs and has done so (upon information and belief) at all material times herein.

84.     Upon information and belief, East 234 Realty LLC is a domestic LLC.

85.     Upon information and belief, East 234 Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

86.     Upon information and belief, "David" is the managing member of DYK Realty Holdings LLC, the designated manager of East 234 Realty LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2012081000307006 (NYC Dept. of Finance filing signed under the name "*Dovid Kleiner*").

87.     East 234 Realty LLC was designated as an employer of certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, Ruben Figueroa Torres.

88.     East 234 Realty LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, Ruben Figueroa Torres.

89.     East 234 Realty LLC maintains and/or maintained employment records for certain Plaintiffs, including, at a minimum, Ruben Figueroa Torres.

90.     East 234 Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs and has done so (upon information and belief) at all material times herein.

91.     Upon information and belief, DYK Realty Holdings LLC is a domestic LLC.

92.     Upon information and belief, DYK Realty Holdings LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

93.     DYK Realty Holdings LLC controlled East 234 Realty LLC and has acted directly or indirectly in the interest of one or more employers in relation to Plaintiffs and has

14

done so (upon information and belief) at all material times herein.

94.     Upon information and belief, Palm Tree Construction Corp. is a domestic LLC.

95.     Upon information and belief, Palm Tree Construction Corp.'s principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

96.     Upon information and belief, "David" caused Palm Tree Construction Corp. to be established and/or used as a vehicle for numerous renovation projects and exercised control over its designated manager.

97.     Palm Tree Construction Corp. was designated as an employer of, at a minimum, Plaintiff German Pena during certain periods within the relevant time period.

98.     Palm Tree Construction Corp. paid all or most of the wages that were paid for, at a minimum, German Pena during certain periods within the relevant time period.

99.     Palm Tree Construction Corp. maintains and/or maintained employment records for, at a minimum, German Pena.

100.    Palm Tree Construction Corp. has acted directly or indirectly in the interest of one or more employers in relation to, at a minimum, German Pena, and has done so (upon information and belief) at all material times herein from 2018 onward.

101.    Upon information and belief, 705 Gerard LLC is a domestic LLC.

102.    Upon information and belief, 705 Gerard LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

103.    705 Gerard LLC was designated as an employer of, at a minimum,

15

Plaintiff German Pena during certain periods within the relevant time period.

104.    705 Gerard LLC paid most of the wages that were paid to, at a minimum, German Pena during certain periods within the relevant time period.

105.    705 Gerard LLC maintains and/or maintained employment records for, at a minimum, German Pena.

106.    705 Gerard LLC has acted directly or indirectly in the interest of one or more employers in relation to, at a minimum, German Pena, and has done so (upon information and belief) at all material times herein.

107.    Ignatie Fried a/k/a Meir Fried (Fried) is an individual who, upon information and belief, resides in the State of New York.

108.    Fried is and has been, since at least 2016, a principal manager for "David" and many of the entity Defendants named herein.

109.    Plaintiffs reported to Fried and Fried supervised them.

110.    Fried regularly made and participated in making decisions regarding Plaintiffs' wages and work assignments, and regularly interacted with Plaintiffs concerning same.

111.    At all material times herein Fried directed, authorized, condoned, acquiesced in, cooperated with and facilitated the wage and hour violations described herein.

112.    Fried also participated in the hiring of certain Plaintiffs, and regularly distributed paychecks, and maintained employment records.

113.    At all material times herein Fried's role within or in relation to the entity

Defendants named herein, and the decisions it entails, directly affected the nature and conditions of Plaintiffs' employment.

114.    At all material times herein Fried was acting directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

115.    At all material times herein Fried held a managerial position through which he exercised control over the entity Defendants' wage policies, employee work schedules, pay rates, record-keeping practices, and day-to-day labor operations.

116.    Moshe Lieb ("Lieb") is an individual who, upon information and belief, resides in the State of New York.

117.    Lieb is and has been, since about 2018, the designated "Head Officer" and "Managing Agent" for multiple properties owned and/or controlled by "David," including 705 Gerard LLC.

118.    At all material times herein during his service as "Head Officer" and "Managing Agent" of 705 Gerard LLC, Lieb has routinely participated in directing Plaintiff German Pena's work assignments, both through direct communications with German Pena, as well as through communications with "David" and the manager of Palm Tree Construction Corp. (believed to be Yisrael Feldman).

119.    Upon information and belief, Lieb was and remains involved in making decisions concerning German Pena's employment compensation, including the provision of an apartment in connection with his employment and the terms and conditions thereof.

120.    Upon information and belief, at all material times herein during his service as "Head Officer" and "Managing Agent" of 705 Gerard LLC, Lieb directed, authorized,

17

condoned, acquiesced in, cooperated with and/or facilitated violations of employees' wage and hour rights as described herein (including, without limitation, German Pena's wage and hour rights).

121.    Lieb also distributed paychecks to and maintained employment records for Edwin Figueroa-Torres and German Pena.

122.    At all material times herein during his service as "Head Officer" and "Managing Agent" of 705 Gerard LLC, Lieb's role within or in relation to 705 Gerard LLC and Palm Tree Construction Corp., and the decisions it entails, directly affected the nature and conditions of Plaintiffs' employment.

123.    At all material times herein during his service as "Head Officer" and "Managing Agent" of 705 Gerard LLC, Lieb was acting directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

124.    At all material times herein during his service as "Head Officer" and "Managing Agent" of 705 Gerard LLC, Lieb held a managerial position through which he exercised influence or control over wage policies, employee work schedules, pay rates, record-keeping practices, and day-to-day labor operations of at least some of the entity Defendants (including 705 Gerard LLC and Palm Tree Construction Corp.).

125.    Upon information and belief, 282 Gun Hill LLC is a domestic LLC.

126.    Upon information and belief, 282 Gun Hill LLC's principal place of business is 1417 Avenue J, Brooklyn, NY 11230.

127.    Upon information and belief, 282 Gun Hill LLC owns the building located at 282 E. Gun Hill Road, Bronx, NY 10467. See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015073000707001

("Schedule A Description" of property file with the NYC Dept. of Finance, at 5th page of link,

which includes 282 E. Gun Hill Road).

128.    Upon information and belief, 282 Gun Hill LLC receives mail at P.O. Box

243, Brooklyn, NY 11204. See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015073000707001 (NYC

Dept. of Finance filing at page 2 referring to 282 Gun Hill LLC as having that address).

129.    Upon information and belief, Lieb is the Head Officer and Managing

Agent of the building located at 282 Gun Hill LLC Road.

130.    Upon information and belief, "David" is a member of 282 Gun Hill LLC.

See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015073000707001 (NYC

Dept. of Finance filing at page 3 listing "David Kleiner" as a signatory and member of 282 Gun

Hill LLC).

131.    282 Gun Hill LLC was an employer of certain Plaintiffs within the

relevant time period, including, at a minimum, German Pena.

132.     282 Gun Hill LLC participated in directing the work of certain Plaintiffs

during the relevant period, including, at a minimum, German Pena, and benefitted from that

work.

133.    282 Gun Hill LLC paid wages to certain Plaintiffs during certain periods,

including, at a minimum, German Pena.

134.     Upon information and belief, 282 Gun Hill LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

135.     At all material times herein, 282 Gun Hill LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

136.     Upon information and belief, 282 Gun Hill LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David," Lieb and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

137.     Upon information and belief, 1090 Realty LLC is a domestic LLC.

138.     Upon information and belief, 1090 Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

139.     Upon information and belief, 1090 Realty LLC owns the building located at 1090 East New York Ave, Brooklyn, NY 11212 a/k/a 2 East 96th Street. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2014051400435001 ("Schedule A Description" of property file with the NYC Dept. of Finance, at 4th page of link, which includes 1090 East New York Avenue).

140.     Upon information and belief, 1090 Realty LLC also receives mail at P.O. Box 243, Brooklyn, NY 11204. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2014051400435001 (NYC Dept. of Finance filing, at 8th page of link, referring to 1090 Realty LLC as having that address).

141.     Upon information and belief, Fried is the Head Officer and Managing Agent of the building located at 1090 East New York Ave. a/k/a 2 East 96th Street.

142.    1090 Realty LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

143.    1090 Realty LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

144.    1090 Realty LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

145.    Upon information and belief, 1090 Realty LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

146.    At all material times herein, 1090 Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

147.    Upon information and belief, 1090 Realty LLC was owned, controlled and/or managed by, and used as an instrumentality by, "David," Fried and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

148.    Upon information and belief, 124 E 176th Street Assoc LLC is a domestic LLC.

149.    Upon information and belief, 124 E 176th Street Assoc LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

150.    Upon information and belief, 124 E 176th Street Assoc LLC owns the building located at 124 East 176th Street, Bronx, NY 11212, see https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2012091201400001

(Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes 124 East 176th Street).

151.    Upon information and belief, "David" is a member of 124 E 176th Street Assoc LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2017122700934001 (NYC Dept. of Finance filing at page 64 and 66 listing "*David Kleiner*" as the authorized signatory of 124 E 176th Street Assoc LLC).

152.    124 E 176th Street Assoc LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

153.    124 E 176th Street Assoc LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

154.    124 E 176th Street Assoc LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

155.    Upon information and belief, 124 E 176th Street Assoc LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

156.    At all material times herein, 124 E 176th Street Assoc LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

157.    Upon information and belief, 124 E 176th Street Assoc LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

22

158.     Upon information and belief, East 187 Realty LLC is a domestic LLC.

159.     Upon information and belief, East 187 Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

160.     Upon information and belief, East 187 Realty LLC owns the building located at 317 East 187th Street, Bronx, NY 10458. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2012062700395002 (Description of property file with the NYC Dept. of Finance, at 3rd page of link, which includes 317 East 187th Street).

161.     Upon information and belief, "David" is a manager of East 187 Realty LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015110400736002 (NYC Dept. of Finance filing at page 48 where "*David Kleiner*" signs as the manager of East 187 Realty LLC).

162.     East 187 Realty LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

163.     East 187 Realty LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

164.     East 187 Realty LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

165.     Upon information and belief, East 187 Realty LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

166.     At all material times herein, East 187 Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

167.     Upon information and belief, East 187 Realty LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

168.     Upon information and belief, 2155 Grand Ave Holdings LLC is a domestic LLC.

169.     Upon information and belief, 2155 Grand Ave Holdings LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

170.     Upon information and belief, 2155 Grand Ave Holdings LLC also receives mail at P.O. Box 319, Brooklyn, NY 11230.

171.     Upon information and belief, 2155 Grand Ave Holdings LLC owns the building located at 2155 Grand Avenue, Bronx, NY 10453. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015101400211002 (Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes 2155 Grand Avenue).

172.     Upon information and belief, Lieb is the Head Officer and Managing Agent of the building located at 2155 Grand Avenue.

173.     Upon information and belief, "David" is a member of 2155 Grand Ave Holdings LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2020012900705003 (NYC

Dept. of Finance filing at page 8 listing "*David Kleiner*" as an authorized signatory of 2155 Grand Ave Holdings LLC).

174.    2155 Grand Ave Holdings LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

175.    2155 Grand Ave Holdings LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

176.    2155 Grand Ave Holdings LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena

177.    Upon information and belief, 2155 Grand Ave Holdings LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

178.    At all material times herein, 2155 Grand Ave Holdings LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

179.    Upon information and belief, 2155 Grand Ave Holdings LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David," Lieb and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

180.    Upon information and belief, 2084 Grand Ave Holdings LLC is a domestic LLC.

181.    Upon information and belief, 2084 Grand Ave Holdings LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

182.    Upon information and belief, 2084 Grand Ave Holdings LLC also receives mail at P.O. Box 319, Brooklyn, NY 11230.

183.    Upon information and belief, 2084 Grand Ave Holdings LLC owns the building located at 2084 Grand Avenue, Bronx, NY 10453. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015101400211001 (Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes 2084 Grand Avenue).

184.    Upon information and belief, Lieb is the Head Officer and Managing Agent of the building located at 2084 Grand Avenue.

185.    Upon information and belief, "David" is a member of 2084 Grand Ave Holdings LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2020012900705003 (NYC Dept. of Finance filing at page 8 listing "*David Kleiner*" as an authorized signatory of 2084 Grand Ave Holdings LLC).

186.    2084 Grand Ave Holdings LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

187.    2084 Grand Ave Holdings LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

188.    2084 Grand Ave Holdings LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

189.     Upon information and belief, 2084 Grand Ave Holdings LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

190.     At all material times herein, 2084 Grand Ave Holdings LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

191.     Upon information and belief, 2084 Grand Ave Holdings LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David," Lieb and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

192.     Upon information and belief, 691 LLC is a domestic LLC.

193.     Upon information and belief, 691 LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

194.     Upon information and belief, 691 LLC owns the building located at 691 Gerard Avenue, Bronx, NY 10451. See (https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2008092200535004 (Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes 691 Gerard Avenue).

195.     Upon information and belief, Lieb is the Head Officer and Managing Agent of the building located at 691 Gerard Avenue.

196.     Upon information and belief, "David" is a managing member of 691 LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2018101000361004 (NYC

Dept. of Finance filing at page 22 in which "*David Kleiner*" identifies himself as a managing member of 691 LLC).

197.    691 LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

198.    691 LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

199.    691 LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

200.    Upon information and belief, 691 LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

201.    At all material times herein, 691 LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

202.    Upon information and belief, 691 LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David," Lieb and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

203.    Upon information and belief, 2505 Bedford 2015 LLC is a domestic LLC.

204.    Upon information and belief, 2505 Bedford 2015 LLC's principal place of business is 1417 Avenue J, Brooklyn, NY 11230.

205.    Upon information and belief, 2505 Bedford 2015 LLC also receives mail at 150 Airport Road, Suite 900, Lakewood, New Jersey 08701. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015120900296001 (NYC

Dept. of Finance filing at page 2 indicating that 2505 Bedford 2015 LLC has offices at 150
Airport Road, Suite 900, Lakewood, New Jersey 08701).

206.    Upon information and belief, 2505 Bedford 2015 LLC also receives mail
at P.O. Box 243, Brooklyn, NY 11204. See https://a836-
acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015120900296003 (NYC
Dept. of Finance filing at page 4 stating that 2505 Bedford 2015 LLC's office is located at P.O.
Box 243, Brooklyn, NY 11204).

207.    Upon information and belief, 2505 Bedford 2015 LLC owns the building
located at 2505 Bedford Avenue, Brooklyn, NY 11226. See https://a836-
acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015120900296001
(Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes
2505 Bedford Avenue).

208.    Upon information and belief, Fried is the Head Officer and Managing
Agent of the building located at 2505 Bedford Avenue.

209.    2505 Bedford 2015 LLC was an employer of certain Plaintiffs within the
relevant time period, including, at a minimum, German Pena.

210.    2505 Bedford 2015 LLC participated in directing the work of certain
Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from
that work.

211.    2505 Bedford 2015 LLC paid wages to certain Plaintiffs during certain
periods within the relevant time period, including, at a minimum, German Pena.

212.     Upon information and belief, 2505 Bedford 2015 LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

213.     At all material times herein, 2505 Bedford 2015 LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

214.     Upon information and belief, 2505 Bedford 2015 LLC was owned, controlled and/or managed by, and used as an instrumentality by "David," Fried and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

215.     Upon information and belief, Gleason Bronx Realty LLC is a domestic LLC.

216.     Upon information and belief, Gleason Bronx Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

217.     Upon information and belief, Gleason Bronx Realty LLC owns the building located at 1901 Gleason Avenue, Bronx, NY 10472. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2011111600954001 (Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes 1901 Gleason Avenue).

218.     Upon information and belief, Fried is the Head Officer and Managing Agent of the building located at 1901 Gleason Avenue.

219.     Upon information and belief, "David" is manager of Gleason Bronx Realty LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2019032900003002 (NYC

Dept. of Finance filing at page 26, where "David Kleiner" identifies himself as manager of
Gleason Bronx Realty LLC).

220.    Gleason Bronx Realty LLC was an employer of certain Plaintiffs within
the relevant time period, including, at a minimum, German Pena.

221.    Gleason Bronx Realty LLC participated in directing the work of certain
Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from
that work.

222.    Gleason Bronx Realty LLC paid wages to certain Plaintiffs during certain
periods within the relevant time period, including, at a minimum, German Pena.

223.    Upon information and belief, Gleason Bronx Realty LLC maintains
employment records for certain Plaintiffs, including, at a minimum, German Pena.

224.    At all material times herein, Gleason Bronx Realty LLC has acted directly
or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at
a minimum, German Pena.

225.    Upon information and belief, Gleason Bronx Realty LLC was owned,
controlled and/or managed by, and used as an instrumentality of, "David," Fried and various
other Defendants in carrying out the systemic wage and hour violations alleged herein.

226.    Upon information and belief, 2060 Assoc LLC is a domestic LLC.

227.    Upon information and belief, 2060 Assoc LLC's principal place of
business is 1419 Avenue J, Brooklyn, NY 11230.

228.    Upon information and belief, 2060 Assoc LLC owns the building located
at 2060 Grand Concourse, Bronx, NY 10457. See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2006121201256003

(Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes

2060 Grand Concourse).

229.    Upon information and belief, "David" is a member of 2060 Assoc LLC.

See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2013071701166006 (NYC

Dept. of Finance filing at page 6 indicating that "*David Kleiner*" is a member of 2060 Assoc

LLC).

230.    2060 Assoc LLC was an employer of certain Plaintiffs within the relevant

time period, including, at a minimum, German Pena.

231.    2060 Assoc LLC participated in directing the work of certain Plaintiffs

during the relevant period, including, at a minimum, German Pena, and benefitted from that

work.

232.    2060 Assoc LLC paid wages to certain Plaintiffs during certain periods

within the relevant time period, including, at a minimum, German Pena.

233.    Upon information and belief, 2060 Assoc LLC maintains employment

records for certain Plaintiffs, including, at a minimum, German Pena.

234.    At all material times herein, 2060 Assoc LLC has acted directly or

indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a

minimum, German Pena.

235.    Upon information and belief, 2060 Assoc LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

236.    Upon information and belief, East 168 Realty LLC is a domestic LLC.

237.    Upon information and belief, East 168 Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

238.    Upon information and belief, East 168 Realty LLC also receives mail at P.O. Box 243, Brooklyn, NY 11204.

239.    Upon information and belief, East 168 Realty LLC owns the building located at 101 East 168th Street, Bronx, NY 10452. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2008111100495001 (Description of property file with the NYC Dept. of Finance, at 3rd page of link, which includes 101 East 168th Street).

240.    Upon information and belief, "David" is the managing member of East 168 Realty LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2018101000656003 (NYC Dept. of Finance filing at page 22 indicating that "*David Kleiner*" is the managing member of East 168 Realty LLC).

241.    East 168 Realty LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

242.     East 168 Realty LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

243.     At times within the relevant time period, East 168 Realty LLC paid wages to certain Plaintiffs, including, at a minimum, German Pena.

244.     Upon information and belief, East 168 Realty LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

245.     At all material times herein, East 168 Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

246.     Upon information and belief, East 168 Realty LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

247.     Upon information and belief, 1215 Realty LLC is a domestic LLC.

248.     Upon information and belief, 1215 Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

249.     Upon information and belief, 1215 Realty LLC owns the building located at 1215 Grand Concourse, Bronx, NY 10452. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2006102000713001 (Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes 1215 Grand Concourse).

250.    Upon information and belief, "David" is a managing member of 1215 Realty LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2018101100267003 (NYC Dept. of Finance filing at page 6, listing "*David Kleiner*" as a managing member of 1215 Realty LLC).

251.    1215 Realty LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

252.    1215 Realty LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

253.    1215 Realty LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

254.    Upon information and belief, 1215 Realty LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

255.    At all material times herein, 1215 Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

256.    Upon information and belief, 1215 Realty LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

257.    Upon information and belief, 2335 Valentine LLC is a domestic LLC.

258.    Upon information and belief, 2335 Valentine LLC's principal place of business is 1834 58th Street, Brooklyn, NY 11204. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015031100682003 (NYC Dept. of Finance filing at page 3 indicating that 2335 Valentine's address is 1834 58th Street, Brooklyn, NY).

259.    Upon information and belief, 2335 Valentine LLC also receives mail at 1419 Avenue J, Brooklyn, NY 11230.

260.    Upon information and belief, 2335 Valentine LLC owns the building located at 2335 Valentine Avenue, Bronx, NY 10458. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2012050700374001 (Description of property file with the NYC Dept. of Finance, at 2nd page of link, which includes 2335 Valentine Avenue).

261.    Upon information and belief, Fried is the Head Officer and Managing Agent of the building located at 2335 Valentine Avenue.

262.    Upon information and belief, "David" is a member of 2335 Valentine LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015031100682003 (NYC Dept. of Finance filing at page 7 in which "*David Kleiner*" identifies himself as a member of 2335 Valentine LLC).

263.    2335 Valentine LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, Luis Macias, Edwin Figueroa-Torres and German Pena.

264.     2335 Valentine LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, Luis Macias, Edwin Figueroa-Torres and German Pena, and benefitted from that work.

265.     At times within the relevant time period, 2335 Valentine LLC paid wages to certain Plaintiffs, including, at a minimum, Luis Macias, Edwin Figueroa-Torres and German Pena.

266.     Upon information and belief, 2335 Valentine LLC maintains employment records for certain Plaintiffs, including, at a minimum, Luis Macias, Edwin Figueroa-Torres and German Pena.

267.     At all material times herein, 2335 Valentine LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, Luis Macias, Edwin Figueroa-Torres and German Pena.

268.     Upon information and belief, 2335 Valentine LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David," Fried and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

269.     Upon information and belief, 66 Graham LLC is a domestic LLC.

270.     Upon information and belief, 66 Graham LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

271.     Upon information and belief, 66 Graham LLC also receives mail at P.O. Box 319, Brooklyn, NY 11204. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2017040900020002 (NYC

Dept. of Finance filing at page 4 indicating that P.O. Box 319, Brooklyn, NY is 66 Graham

LLC's mailing address).

272.    Upon information and belief, 66 Graham LLC also receives mail at P.O.

Box 243, Brooklyn, NY 11204. See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2017040900020001 (NYC

Dept. of Finance filing at page 8 indicating a mailing address of 66 Graham LLC as P.O. Box

243, Brooklyn, NY 11204).

273.    Upon information and belief, 66 Graham LLC owns the building located

at 64 Graham Avenue, Brooklyn, NY 11206, see https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2017040900020001

(Description of property file with the NYC Dept. of Finance, at 3rd page of link, which includes

64 Graham Avenue).

274.    66 Graham LLC was an employer of certain Plaintiffs within the relevant

time period, including, at a minimum, German Pena.

275.    66 Graham LLC participated in directing the work of certain Plaintiffs

during the relevant period, including, at a minimum, German Pena, and benefitted from that

work.

276.    At times within the relevant time period, 66 Graham LLC paid wages to

certain Plaintiffs, including, at a minimum, German Pena.

277.    Upon information and belief, 66 Graham LLC maintains employment

records for certain Plaintiffs, including, at a minimum, German Pena.

278.    At all material times herein, 66 Graham LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

279.    Upon information and belief, 66 Graham LLC was owned, controlled and/or managed by, and used as an instrumentality by "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

280.    Upon information and belief, 1855 Realty LLC is a domestic LLC.

281.    Upon information and belief, 1855 Realty LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

282.    Upon information and belief, 1855 Realty LLC owns the building located at 1841-1855 Grand Concourse, Bronx, NY 10457. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2010081800436001 (Description of property file with the NYC Dept. of Finance, at 3rd page of link, which includes 1841-1855 Grand Concourse).

283.    Upon information and belief, Fried is the Head Officer and Managing Agent of the building located at 1841-1855 Grand Concourse.

284.    Upon information and belief, "David" is a managing member of 1855 Realty LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015022300803001 (NYC Dept. of Finance filing at page 10, indicating that "*David Kleiner*" is a managing member of 1855 Realty LLC).

285.    1855 Realty LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

286.    1855 Realty LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

287.    1855 Realty LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

288.    Upon information and belief, 1855 Realty LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

289.    At all material times herein, 1855 Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

290.    Upon information and belief, 3905 Assoc LLC is a domestic LLC.

291.    Upon information and belief, 3905 Assoc LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

292.    Upon information and belief, 3905 Assoc LLC also receives mail at P.O. Box 40243, Brooklyn, NY 11204. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2019031901094003 (NYC Dept. of Finance filing at page 4 stating that 3905 Assoc LLC has an address at P.O. Box 40243, Brooklyn, NY 11204).

293.    Upon information and belief, 3905 Assoc LLC owns the building located at 3905 Carpenter Avenue, Bronx, NY 10466. See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2007050700496001

(Description of property file with the NYC Dept. of Finance, at 3rd page of link, which includes 3905 Carpenter Avenue).

294.     Upon information and belief, "David" is the sole member of 3905 Assoc LLC. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2019031901094003 (NYC Dept. of Finance filing at page 35 in which "*David Kleiner*" identifies himself as the sole member of 3905 Assoc LLC).

295.     3905 Assoc LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

296.     3905 Assoc LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

297.     3905 Assoc LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

298.     Upon information and belief, 3905 Assoc LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

299.     At all material times herein, 3905 Assoc LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

300.    Upon information and belief, 3905 Assoc LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

301.    Upon information and belief, 1210 Croes LLC is a domestic LLC.

302.    Upon information and belief, 1210 Croes LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

303.    Upon information and belief, 1210 Croes LLC owns the building located at 1200 Croes Avenue, Grand Concourse, Bronx, NY 10472, see https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2014090500461001 (Description of property file with the NYC Dept. of Finance, at 3rd page of link, which includes 1200 Croes Avenue).

304.    Upon information and belief, Fried is the Head Officer and Managing Agent of the building located at 1200 Croes Avenue

305.    1210 Croes LLC was an employer of certain Plaintiffs within the relevant time period, including, at a minimum, German Pena.

306.    1210 Croes LLC participated in directing the work of certain Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from that work.

307.    1210 Croes LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

308.    Upon information and belief, 1210 Croes LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

42

309.     At all material times herein, 1210 Croes LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

310.     Upon information and belief, 1210 Croes LLC was owned, controlled and/or managed by, and used as an instrumentality of, "David," Fried and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

311.     Upon information and belief, 1125 Sheridan LLC is a domestic LLC.

312.     Upon information and belief, 1125 Sheridan LLC's principal place of business is 1419 Avenue J, Brooklyn, NY 11230.

313.     Upon information and belief, 1125 Sheridan LLC also receives mail % Jeffrey Zwick & Associates, 266 Broadway Suite 403, Brooklyn NY 11211.

314.     Upon information and belief, 1125 Sheridan LLC owns the building located at 1125-1127 Sheridan Avenue, Bronx, NY 10456, see https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015020400526001 (Description of property file with the NYC Dept. of Finance, at 2nd page of link), which includes 1125-1127 Sheridan Avenue.

315.     Upon information and belief, Lieb the Head Officer and Managing Agent of the building located at 1125-1127 Sheridan Avenue.

316.     Upon information and belief, "David" is a manager of 1125 Sheridan LLC. See  https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015020400526005 (NYC

Dept. of Finance filing at page 10 in which "*David Kleiner*" identifies himself as a manager of

1125 Sheridan LLC).

317.    1125 Sheridan LLC was an employer of certain Plaintiffs within the

relevant time period, including, at a minimum, German Pena.

318.    1125 Sheridan LLC participated in directing the work of certain Plaintiffs

during the relevant period, including, at a minimum, German Pena, and benefitted from that

work.

319.    1125 Sheridan LLC paid wages to certain Plaintiffs during certain periods

within the relevant time period, including, at a minimum, German Pena.

320.    Upon information and belief, 1125 Sheridan LLC maintains employment

records for certain Plaintiffs, including, at a minimum, German Pena.

321.    At all material times herein, 1125 Sheridan LLC has acted directly or

indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a

minimum, German Pena.

322.    Upon information and belief, 1125 Sheridan LLC was owned, controlled

and/or managed by, and used as an instrumentality of, "David."  Lieb and various other

Defendants in carrying out the systemic wage and hour violations alleged herein.

323.    Yisrael Feldman ("Feldman") is an individual who, upon information and

belief, resides in the State of New York.

324.    Feldman is and has been, since about 2018, the designated "President" for

multiple properties owned and/or controlled by "David," including Palm Tree Construction

44

325.     At all material times herein during his service as "President" of Palm Tree Construction, Feldman has routinely participated in directly and indirectly directing Plaintiff German Pena's work assignments.

326.     Upon information and belief, Feldman was and remains involved in making decisions concerning German Pena's employment compensation, including the provision of an apartment in connection with his employment and the terms and conditions thereof.

327.     Upon information and belief, at all material times herein during his service as "President" of Palm Tree Construction, Feldman directed, authorized, condoned, acquiesced in, cooperated with and/or facilitated violations of German Pena's wage and hour rights as described herein.

328.     Feldman also distributed paychecks to and maintained employment records for German Pena.

329.     At all material times herein during his service as "President" of Palm Tree Construction, Feldman's role within or in relation to Palm Tree Construction, and the decisions it entails, directly affected the nature and conditions of Plaintiffs' employment.

330.     At all material times herein during his service as "President" of Palm Tree Construction, Feldman was acting directly or indirectly in the interest of one or more employers in relation to Plaintiffs.

331.     At all material times herein during his service as "President" of Palm Tree Construction, Feldman held a managerial position through which he exercised influence or control over wage policies, employee work schedules, rate of pay, record-keeping practices, and

day-to-day labor operations of at least some of the entity Defendants (including Palm Tree

Construction).

332.    Upon information and belief, 247 Audubon Realty LLC is a domestic

LLC.

333.    Upon information and belief, 247 Audubon Realty LLC's principal place

of business is P.O. Box 319, Brooklyn, NY 11204.

334.    Upon information and belief, 247 Audubon Realty LLC owned the

building located at 247 Audubon Ave, Manhattan, NY 10033. See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2016080100140001

(Description of property file with the NYC Dept. of Finance, at 3rd page of link, which includes

247 Audubon Avenue).

335.    Upon information and belief, 247 Audubon Realty LLC sold the property

located at 247 Audubon Avenue to STF 247 Audubon Avenue Holding LLC on June 25, 2018.

See https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2018062700290002

(Document preparation dated June 25, 2018, located on page 1).

336.    247 Audubon Realty LLC was an employer of certain Plaintiffs within the

relevant time period, including, at a minimum, German Pena.

337.    247 Audubon Realty LLC participated in directing the work of certain

Plaintiffs during the relevant period, including, at a minimum, German Pena, and benefitted from

that work.

338.    247 Audubon Realty LLC paid wages to certain Plaintiffs during certain periods within the relevant time period, including, at a minimum, German Pena.

339.    Upon information and belief, 247 Audubon Realty LLC maintains employment records for certain Plaintiffs, including, at a minimum, German Pena.

340.    At all material times herein, 247 Audubon Realty LLC has acted directly or indirectly in the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum, German Pena.

341.    Upon information and belief, 247 Audubon Realty LLC was owned, controlled and/or managed by, and used as an instrumentality by, "David" and various other Defendants in carrying out the systemic wage and hour violations alleged herein.

342.    Upon information and belief, E 196 LLC is a domestic LLC.

343.    Upon information and belief, E 196 LLC's principal place of business is 1419 Ave J, Brooklyn, NY 11230.

344.    Upon information and belief, E 196 LLC owned the building located at 12 East 196 Street, Bronx, NY 10468. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015051100821001 (Description of property file with the NYC Dept. of Finance, at 4th page of link, which includes 12 East 196 Street).

345.    Upon information and belief, E 196 LLC sold the property located at 12 East 196 Street to E 196 DK LLC on October 9, 2018. See https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2018101100285001 (Document preparation dated October 9, 2018, located on page 1).

47

346.    Upon information and belief, "David" is a member of E 196 LLC. See

https://a836-

acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2015051100821001 (NYC

Dept. of Finance filing at page 8 in which "*David Kleiner*" identifies himself as a member of E

196 LLC).

347.    E 196 LLC was an employer of certain Plaintiffs within the relevant time

period, including, at a minimum, German Pena.

348.    E 196 LLC participated in directing the work of certain Plaintiffs during

the relevant period, including, at a minimum, German Pena, and benefitted from that work.

349.    E 196 LLC paid wages to certain Plaintiffs during certain periods within

the relevant time period, including, at a minimum, German Pena.

350.    Upon information and belief, E 196 LLC maintains employment records

for certain Plaintiffs, including, at a minimum, German Pena.

351.    At all material times herein, E 196 LLC has acted directly or indirectly in

the interest of one or more employers in relation to certain Plaintiffs, including, at a minimum,

German Pena.

352.    Upon information and belief, E 196 LLC was owned, controlled and/or

managed by, and used as an instrumentality by, "David" and various other Defendants in

carrying out the systemic wage and hour violations alleged herein.

353.    Upon information and belief, although nominally and technically distinct,

the various Defendant entities herein are properly seen as a single integrated entity controlled

and/or managed by, and used as an instrumentality by, "David."

**Defendants' Employment of Plaintiffs**

354.    Edwin Figueroa-Torres has been employed by Defendants since in or about early October 2013.

355.    Edwin Figueroa-Torres was the joint employee within the meaning of the FLSA and NYLL of combinations of Defendants, including, without limitation, "David," Fried, Tiebout II Associates LLC and Tiebout Associates LLC (throughout his employment); and Empay Inc. and Staffpro Inc. (from January 2019 onward).

356.    Throughout his employment, Edwin Figueroa-Torres worked for Defendants primarily as a building maintenance employee doing carpentry, electrical work, small-scale construction, plumbing, repairs, mold remediation, painting, cleaning, boiler maintenance, and general building maintenance.

357.    Throughout his employment, Edwin Figueroa-Torres also filled limited security and safety functions by periodically monitoring video cameras and contacting the police as needed.

358.    Throughout his employment, Edwin Figueroa-Torres also regularly performed certain administrative functions for Defendants by providing notices to tenants (e.g., rent invoices, court papers, and other types of notices), and receiving rents from about half of the building's tenants and later providing those rents to Defendants.

359.    Throughout his employment, Edwin Figueroa-Torres was often referred to as the "super," but was never paid as such, was never told that he would be paid as a

super/janitor, did not have a legally habitable apartment, and was not the only employee living in the building.

360.    Throughout his employment Edwin Figueroa-Torres worked primarily at 2176-2180 Tiebout Avenue, a 61-unit Bronx apartment building.

361.    Throughout Edwin Figueroa-Torres's employment, Defendants provided him with a basement apartment in that building, an arrangement that benefitted Edwin Figueroa-Torres as well as Defendants.

362.    However, the apartment was and is not habitable from a legal standpoint because, *inter alia*, it has two dangerous sunken floors and a bathtub propped up by blocks because the foundation is failing.

363.    Beginning in January 2014, Defendants generally paid Edwin Figueroa-Torres at the gross rate of $900 twice-a-month.

364.    From January 2019 to March 2020, Defendants, through Empay Inc. and Staffpro Inc., paid Edwin Figueroa-Torres every week.

365.    Throughout that period, Defendants issued Edwin Figueroa-Torres pay records bearing the names "Staffpro Inc." and "Empay Inc."  Those pay records listed an hourly pay rate of $15, but only listed a fraction of Edwin Figueroa-Torres's actual hours worked.

366.    In or about January 2019 Edwin Figueroa-Torres spoke to Staffpro Inc., Fried and "David" to find out why his hours were incorrectly listed in the pay records.

367.    Staffpro Inc. and Fried did not give him any meaningful explanation.

368.    "Fried" told him, in substance, that the balance of his pay was being deducted for rent.

369.    Edwin Figueroa-Torres then told "Fried," in substance, that if that was true, then to please show how him much he was being charged for rent.

370.    No such explanation or substantiation was ever provided.

371.    Edwin Figueroa-Torres asked "David" for $600 per week pay (less than the minimum amount he was entitled to by law).

372.    "David" told him that was too much money, and that he would pay him $450 per week.

373.    Thereafter, Defendants paid Edwin Figueroa-Torres by check in gross amounts typically ranging from $415 to $451 per week.

374.    Those checks continued to falsify the hours Edwin Figueroa-Torres worked and made no reference to the supposed deduction or offset for the (not legally habitable) basement apartment he occupied.

375.    At or about the time he was hired, Edwin Figueroa-Torres was told by Fried that his hours were 8:00 a.m. to 5:00 p.m.

376.    Edwin Figueroa-Torres generally worked those approximate hours each week, Monday through Saturday.

377.    If Edwin Figueroa-Torres had a doctor's appointment or other personal matter that required him to be away from the building for a substantial period of time during the day, he generally worked additional time during the remainder of the pay period, thereby effectively making up for much or all of the missed time.

378.    Ewin Figueroa-Torres was also "on call" 24 hours a day Monday through Saturday (which caused him to be away from the building much less often than he otherwise

would have been) because his work also routinely included handling time-sensitive tenant or building issues that arose after hours (including, but not limited to, plumbing repairs, lighting repairs, breaker repairs, window repairs, assisting Con Ed or the Fire Department as needed, and checking and refilling the boiler [primarily between mid-October and mid-April], etc.).

379.   While the amount of time he spent handling such after-hours issues varied from week to week, it can be conservatively estimated that over the course of his employment the amount of time he spent handling such after-hours issues was, on average, at least 3.5 hours per week.

380.   Defendants never gave Edwin Figueroa-Torres contemporaneous notice (or any notice) that any meal break time taken would be non-compensable.

381.   As for dates which are known at this time to have been missed from work, and for which the above-referenced estimates of Edwin Figueroa-Torres' weekly hours would have to be adjusted: (A) from April 20-23, 2018 Edwin Figueroa-Torres missed almost four days of work when he went to Puerto Rico; (B) there were occasional anomalous workweeks when his work hours were somewhat lower or higher than the ranges specified above; (C) on September 18, 2019 he missed most of the workday when he was at Montefiore Medical Center; and (D) he missed approximately hour hours from work on March 4, 2020 and approximately six hours from work on March 10, 2020.

382.   Nicolas Peterson has been employed by Defendants since in or about mid-October 2016, except for a roughly two-week period, which, upon information and belief, was the last two weeks of June 2019.

383.   Throughout his employment, Nicolas Peterson was the joint employee

52

within the meaning of the FLSA and NYLL of combinations of Defendants, including, but not limited to, "David," Fried, Tiebout II Associates LLC and Tiebout Associates LLC.

384.    Throughout his employment Nicolas Peterson worked at 2176-2180 Tiebout Avenue.

385.    Throughout his employment, Nicolas Peterson lived in a room in the basement, an arrangement that benefitted Nicolas Peterson and Defendants.

386.    Nicolas Peterson worked for Defendants primarily as a building cleaning and maintenance employee.

387.    At or about the time Nicolas Peterson was hired, Fried told Edwin Figueroa-Torres to tell Nicolas Peterson that his pay would be $400 twice-a-month.

388.    Edwin Figueroa-Torres conveyed that to Nicolas Peterson, and Nicolas Peterson was paid accordingly.

389.    Throughout his employment, Nicolas Peterson was generally paid twice a month, except for certain pay periods when Defendants would arbitrarily pay him somewhat more frequently and somewhat less frequently than that (e.g., as much as 21 days after the previous paycheck).

390.    For the first several months of his employment, Nicolas Peterson was paid off the books.

391.    On or about November 30, 2018 Defendants, without explanation, reduced Nicolas Peterson's already illegally low $400 twice-a-month pay to $370 twice-a-month.

392.    Nicolas Peterson's $370 twice-a-month pay rate continued until about June 30, 2019, at which point it went back to $400 twice-a-month.

393.    Throughout his employment, Nicolas Peterson generally worked six days a week, Sunday through Friday.

394.    On Mondays and Wednesday Nicolas Peterson generally worked from 7:00 a.m. to about 3:30 p.m.

395.    On Tuesdays, Thursdays and Friday, Nicolas Peterson generally worked from 7 a.m. to about 5 p.m.

396.    On Sundays, Nicolas Peterson generally worked from 7:00 a.m. to 5:30 p.m.

397.    Defendants never gave Nicolas Peterson contemporaneous notice (or any notice) that any meal break time taken would be non-compensable.

398.    As for dates which are known at this time to have been missed from work, and for which the above-referenced estimates of Nicolas Peterson's weekly hours would have to be adjusted: (A) on December 20, 2018 Nicolas Peterson went to the hospital due to a severe asthma attack that occurred while cleaning toxic mold and could not return to work for nine days; (B) there were occasional anomalous workweeks when his work hours were somewhat lower or higher than the ranges specified above; (C) Nicolas Peterson ceased working for a two week period due to the reduction of his pay and that two-week period is believed to have taken place in the second half of June 2019; (D) he missed approximately hour hours from work on March 4, 2020 and approximately six hours from work on March 10, 2020; and (E) his total hours worked each week increased by about one hour a week for the last two weeks in March 2020.

399.    Ruben Figueroa Torres was hired by "David."

54

400.     Ruben Figueroa Torres has been employed by Defendants since in or about early December 2010.

401.     Ruben Figueroa Torres was the joint employee within the meaning of the FLSA and NYLL of combinations of Defendants, including, but not limited to, "David" (throughout his employment); Fried (from the time Fried became a manager onward); 1665 Monroe Realty LLC and 1665 Monroe Associates LLC (from shortly after his employment began onward); East 234 Realty LLC and DYK Realty Holdings LLC (at various times, including in 2013); Staffpro Inc. (from January 1, 2019 onward); and the owners and managers of the buildings where he was assigned to do renovation projects at various times throughout his employment.

402.     Throughout his employment, Ruben Figueroa Torres worked for Defendants primarily as a building maintenance employee doing carpentry, electrical work, small-scale construction, plumbing, repairs, mold remediation, painting, cleaning, boiler maintenance until the fall of 2019 [with greater frequency from mid-October to mid-April], and general building maintenance.

403.     Ruben Figueroa Torres performed a substantial amount of renovation work for Defendants at 1665 Monroe Avenue from about one month after the start of his employment onward, and also often worked for Defendants in other buildings.

404.     Throughout his employment, Ruben Figueroa Torres also filled limited security and safety functions by periodically monitoring video cameras and contacting the police as needed.

405.     Throughout his employment, Ruben Figueroa Torres also regularly

performed certain administrative functions for Defendants by providing notices to tenants (e.g., rent invoices, leases, court papers, and other types of notices), and receiving rents from some of the building's tenants and providing those rents to Defendants.

406.    Throughout most of his employment, Ruben Figueroa Torres was often referred to as the "super," but was never paid as such, was never told that he would be paid as a super/janitor, did not have a legally habitable apartment, and was not the only employee living in the building.

407.    From about March 2011 onward, Defendants provided Ruben Figueroa Torres a basement apartment in 1665 Monroe Avenue, an arrangement that benefited him as well as Defendants.

408.    However, that basement apartment has no built-in heat source, has inadequate electrical service, has a dangerously wired and partly burned breaker box, and before 2018 had a dangerously sinking kitchen floor.

409.    Defendants generally paid Ruben Figueroa Torres by check at the rate of $913.86 twice-a-month from June 2014 to December 2018.

410.    From time to time throughout his employment, Defendants sometimes also paid Ruben Figueroa Torres an additional amount by check for having completed additional projects at other buildings.

411.    In or about January 2019, "David" handed Ruben Figueroa Torres a lease and told him to sign it.

412.    Ruben Figueroa Torres refused to sign the lease.

413.    From January 2019 onward, Defendants, through Staffpro Inc., paid

56

Ruben Figueroa Torres every week and often paid him in gross amounts typically ranging from between $400 and $480 per week.

414.    If Ruben Figueroa Torres had a doctor's appointment or other personal matter that required him to be away from the building for more than an hour but less than half a day, he generally worked additional time during the remainder of the pay period, thereby effectively making up for much or all of the missed time.

415.    Ruben Figueroa Torres was also "on call" 24 hours a day, seven days a week (which caused him to be away from the building much less often than he otherwise would have been) because his work also routinely included handling time-sensitive tenant or building issues that arose after hours (including, but not limited to, plumbing repairs, lighting repairs, breaker repairs, window repairs, assisting Con Ed or the Fire Department as needed, and checking and refilling the boiler [primarily between mid-October and mid-April], etc.).

416.    In addition, some of the renovations that Ruben Figueroa Torres performed during that period were performed outside of or partially outside of his regular work hours.

417.    Apart from his regular work hours, during that period Ruben Figueroa Torres worked approximately six additional hours a week, conservatively estimated, performing after-hours renovation work at other buildings and handling time-sensitive after-hours tenant and building issues (including, but not limited to, plumbing repairs, lighting repairs, breaker repairs, window repairs, assisting Con Ed or the Fire Department as needed, checking and refilling the boiler [primarily between mid-October and mid-April], renovation work, etc.).

418.    From June 2014 until March 2020, Ruben Figueroa Torres's compensable

work hours generally included approximately 47 regular hours, conservatively estimated.

419.    Defendants never gave Ruben Figueroa Torres contemporaneous notice (or any notice) that any meal break time taken would be non-compensable.

420.    On June 18, 2020 Ruben Figueroa Torres asked Fried why his paycheck did not list all of his hours worked.

421.    In response, Fried told him that the rest of the hours were being deducted for rent.

422.    However, Defendants never told Ruben Figueroa Torres that he would be charged rent and never disclosed the amount of the alleged "rent."

423.    As for dates which are known at this time to have been missed by Ruben Figueroa Torres from work: (A) from November 25, 2014 through December 15, 2014 he was in the Dominican Republic; (B) there were occasional anomalous workweeks when his work hours were somewhat lower or higher than the ranges specified above; and (C) beginning on or about March 16, 2020 his work hours were reduced due to the Covid-19 pandemic.

424.    Alex Candelario has been employed by Defendants since about April 2013, shortly after he moved into the apartment of his stepfather, Ruben Figueroa Torres.

425.    Throughout his employment, Alex Candelario was the joint employee within the meaning of the FLSA and NYLL of combinations of Defendants, including, but not limited to, "David," 1665 Monroe Realty LLC and 1665 Monroe Associates LLC (throughout his employment); Fried (from the time Fried became a manager onward); Staffpro Inc. (from January 1, 2019 onward); and the owners and managers of the buildings where Ruben Figueroa Torres did renovation projects at various times throughout his employment, as Alex Candelario

assisted him with those projects.

426.    Throughout his employment Alex Candelario worked primarily at 1665 Monroe Avenue in the Bronx.

427.    When Alex Candelario began working for Defendants in early 2013, the building lacked a full-time porter; however, it did have someone who worked part-time doing the sweeping and mopping (a man known as "Yari" [spelled phonetically]).

428.    At that time Defendants paid Ruben Figueroa Torres a separate $100 check on a twice-a-month basis to pay to "Yari" after Ruben Figueroa Torres cashed the check for him.

429.    Because "Yari" only did the sweeping and mopping, Ruben Figueroa Torres still needed help maintaining the building.

430.    Accordingly, beginning in early 2013 Alex Candelario began actively assisting Ruben Figueroa Torres with the garbage, recycling, repairs and renovations.

431.    Shortly thereafter, Ruben Figueroa Torres asked "David" and a former manager named "Harry" to pay Alex Candelario for his work.

432.    They refused, saying, in substance, "We don't pay a porter."

433.    And when Ruben Figueroa Torres asked Fried and a former manager named "Alex" to be paid properly for doing additional renovation projects for Defendants, Ruben Figueroa Torres was told, in words or substance, "If you don't like it, just give me the keys."

434.    Alex Candelario did not want his stepfather to be evicted if he could not complete the extra renovation projects he was given in addition to his regular duties as a nominal

"super," so he continued helping to clean and maintain the building and to assist with renovation projects, and Ruben Figueroa Torres shared some of his pay with him for his efforts.

435.    In or about late-2013 "Yari" became ill and stopped mopping and sweeping the building.  Upon information and belief, "Yari" died on or about January 25, 2014.

436.    Alex Candelario then took over the sweeping and mopping (in addition to the garbage, recycling, repairs and renovation work he was already doing).

437.    Around the time "Yari" became ill and died, Defendants told Ruben Figueroa Torres that they would continue paying Ruben Figueroa Torres an additional $100 twice-a-month so that he could pay it to Alex Candelario for taking over "Yari's" sweeping and mopping duties.

438.    However, Defendants continued refusing to pay anything for the (more time-consuming) garbage, recycling, repair and renovation work Alex Candelario was doing each week.

439.    Although his work hours fluctuated somewhat, on average Alex Candelario, with limited exceptions, worked for Defendants about 18 hours per week from early 2013 to about December 2013, about 24 hours per week from January 2014 to March 16, 2020, and about 12 hours a week from March 16, 2020 to date, all conservatively estimated.

440.    These estimates do not apply to the period from November 25, 2014 through December 15, 2014 when Ruben Figueroa Torres was in the Dominican Republic, during which time Alex Candelario worked an average of about 65 hours a week doing both of their jobs.

441.    Defendants did not begin directly paying Alex Candelario until about

60

2018, at which time they began directly paying him approximately $100 by check.

442.    Throughout his employment through 2018, Alex Candelario was paid twice-a-month.

443.    Defendants did not begin paying Alex Candelario on a weekly basis until January 2019.

444.    German Pena has been employed by Defendants since April 1, 2011.

445.    Throughout his employment, German Pena lived in Defendants' buildings in the Bronx (2120-2126 Tiebout Avenue from April 1, 2011 to the fall of 2015, which, upon information and belief, has at least 75 units, and 705 Gerard LLC Avenue from the fall of 2015 onward, which, upon information and belief, has at least 72 units).

446.    That arrangement benefitted German Pena and also benefitted Defendants (even though Defendants' required German Pena to live in an apartment that was illegal until about June 11, 2019).

447.    From April 1, 2011 to February 1, 2018, German Pena worked for Defendants primarily as a building maintenance employee doing carpentry, electrical work, small-scale construction, plumbing, mold remediation, cleaning, repairs, and similar work.

448.    Until February 1, 2018 German Pena also filled limited security and safety functions by periodically monitoring video cameras and contacting the police as needed.

449.    Until February 1, 2018, German Pena generally also performed administrative duties for Defendants until February 1, 2018, including providing notices to tenants (including rent invoices, court papers, and other types of notices) and receiving rents from some of the building's tenants and later providing those rents to Defendants.

61

450.     Throughout his employment up until February 1, 2018, German Pena was often referred to as the "super," but was never paid as such, was never told that he would be paid as a super/janitor, and did not have a legally habitable apartment.

451.     German Pena was the joint employee within the meaning of the FLSA and NYLL of combinations of Defendants, including, without limitation, "David" (throughout his employment); Fried (from the time he became manager onward); Lieb (from the time he became manager onward); Tiebout Associates LLC, Tiebout DK Holdings LLC and Tiebout II Associates LLC (from the start of German Pena's employment until at least the fall of 2015); 705 Gerard LLC (from the fall of 2015 onward); Palm Tree Construction Corp. (from February 1, 2018 onward), and, at various times, 282 Gun Hill LLC, 1090 Realty LLC, 124 E 176th Street Assoc LLC, 2155 Grand Ave Holdings LLC, 2084 Grand Ave Holdings LLC, 691 LLC, 2505 Bedford 2015 LLC, Gleason Bronx Realty LLC, 2060 Assoc LLC, East 168 Realty LLC, 1215 Realty LLC, 2335 Valentine LLC, 66 Graham LLC, 1855 Realty LLCLLC, 3905 Assoc LLC, 1210 Croes LLC, 1125 Sheridan LLC, Yisrael Feldman, 247 Audubon Realty LLC, E 196 LLC and certain other entities Defendants owned, managed and/or controlled.

452.     With respect to compensable work hours, from April 1, 2011 to about April 1, 2012, German Pena's regular work hours were from 8:30 a.m. to about 8:30-9:00 p.m., Monday-Friday.

453.     From about April 1, 2012 to about the fall of 2015, German Pena's regular work hours were from 8:30 a.m. to about 5:00 p.m., Monday-Friday.

454.     In or about the end of fall in 2015, shortly before Christmas, German Pena moved into 705 Gerard LLC Avenue in the Bronx and was required to spend approximately one year generally working about 12 hours a day, Monday through Friday. Much of that work

involved fixing violations and making renovations throughout the building.

455.    From about the fall of 2016 to February 1, 2018, German Pena's regular
work hours were 9:00 a.m. to 5:00 p.m., Monday-Friday.

456.    From the start of his employment until February 1, 2018, Defendants also
required and expected German Pena to regularly handle time-sensitive after-hours repairs and
renovations outside of his regular work hours (including, but not limited to, plumbing repairs,
lighting repairs, breaker repairs, window repairs, assisting Con Ed or the Fire Department as
needed, checking and refilling the boiler [primarily between mid-October and mid-April], etc.).

457.    While the amount of time German Pena spent handling such after-hours
issues varied from day to day, it can be conservatively estimated that from April 2012 to the fall
of 2015, and from the fall of 2016 to February 1, 2018, he spent handling an average of not less
than six hours per week handling such after-hour requests.

458.    From February 1, 2018 onward, German Pena worked for Defendants
renovating apartments in various other buildings owned, operated and/or controlled by
Defendants in the Bronx, including, but not limited to, 1401 Grand Concourse, 2327 Barnes
Ave., 1090 East New York Ave. in Brooklyn, 595 170th St., 1933 Daly Ave., 1125 Sheridan
Ave., 1165 Sheridan Ave., 922 Elsemere Pl., 1215 Grand Concourse, 2060 Grand Concourse, 12
E. 96th Street, 1901 Gleason Ave., 2180 Tiebout Ave., 315-317 E. 187th St., 1210 Croes Ave.,
3905 Carpenter Ave., 3915 Carpenter Ave., 2155 Grand Ave., 2085 Grand Ave., 2335 Valentine
Ave., 124 E. 176th St., 1665 Monroe Ave., 1855 Monroe Ave., 2437 Lyvere St., 282 E. Gun Hill
Rd., 454 E. 160th St., 247 Audubon Ave. in Manhattan, and 691 Gerard Ave.

459.    From February 1, 2018 to March 2020 German Pena's regular work hours

were from 9:00 a.m. to about 5:00 p.m., Monday-Friday, unless German Pena took a break of 15 minutes or more, in which case he would finish his shift later or start his shift earlier to make up for that break time.

460.     During this time, German Pena continued to handle after-hours emergencies and time-sensitive repairs and renovations totaling, on average, not less than one hour a week.

461.     As for dates which are known at this time to have been missed from work during the relevant time period, and for which the above-referenced estimates of German Pena's weekly hours would have to be adjusted: (A) there were occasional anomalous workweeks when his work hours were somewhat lower or higher than the range specified below; (B) in about 2018 (the dates of which are expected to be determined in discovery) he missed about 1-2 days due to a workplace injury requiring a hospital visit; (C) he missed approximately hour hours from work on March 4, 2020 and approximately six hours from work on March 10, 2020; and (D) his hours were reduced somewhat after March 16, 2020 due to the corona virus pandemic.

462.     Prior to February 2018, Defendants never gave German Pena contemporaneous notice (or any notice) that any meal break time taken would be non-compensable.

463.     With respect to pay, at or shortly after the time German Pena was hired by "David," Defendants, through "David," informed him that his pay would be $900 twice-a-month.

464.     In February 2018, German Pena's pay rate changed to $575 weekly.

465.     In about late summer or early fall of 2019, German Pena's weekly pay rate changed slightly to about $578.75, which was paid via a combination of checks from Palm Tree

Construction Corp. and one or more of the other Defendant entities.

466.    Plaintiff Luis Macias has been employed by Defendants since June 2012.

467.    Throughout his employment, Luis Macias was the joint employee within the meaning of the FLSA and NYLL of combinations of Defendants, including, but not limited to, "David," Fried and 2335 Valentine LLC (throughout his employment) and Staffpro Inc. (from January 2019 onward).

468.    Throughout his employment Luis Macias worked at 2335 Valentine Avenue, a Bronx apartment building with at least 35 units.

469.    Throughout his employment, Luis Macias lived in a dwelling in the basement at 2335 Valentine Avenue, an arrangement that benefitted Luis Macias and Defendants. However, that dwelling was and is not legally habitable.

470.    "David" hired Luis Macias when he bought the building.

471.    Luis Macias worked for Defendants primarily as a building maintenance and cleaning employee, performing the combined duties of the work customarily performed by a building superintendent and a porter.

472.    Throughout his employment, Luis Macias was often referred to as the "super," but was never paid as such, was never told that he would be paid as a super/janitor and did not have a legally habitable apartment.

473.    Throughout his employment, Luis Macias also regularly performed certain administrative functions for Defendants by providing notices to tenants (e.g., monthly rent invoices and other papers, including, at times, leases, court papers, delinquency notices, etc.) and by periodically receiving rents from some of the building's tenants and providing those rents to

Defendants.

474.     Luis Macias was paid twice-a-month (or less frequently) until January 2019, at which time his pay was changed to weekly.

475.     Throughout his employment, Luis Macias was paid amounts that varied somewhat from pay period to pay period, but which roughly averaged about $320 per week gross.

476.     Throughout his employment, Luis Macias generally worked eight hours a day Monday through Friday (starting at 7:00 a.m.), and an average of 2 hours a day on Saturdays and an average of two hours a day on Sundays (separating and otherwise handling the building's trash and recycling), conservatively estimated.

477.     Luis Macias was also "on call" 24 hours a day Monday through Saturday for any time-sensitive tenant or building issues that arose after hours.

478.     While the amount of time he spent handling such after-hours issues varied from week to week, it can be conservatively estimated that over the course of his employment the amount of time he spent handling such after-hours issues was, on average, at least 2 hours per week, conservatively estimated.

479.     Defendants never gave Luis Macias contemporaneous notice (or any notice) that any meal break time taken would be non-compensable.

480.     As for dates which are known at this time to have been missed from work, and for which the above-referenced estimates of Luis Macias's weekly hours would have to be adjusted:  (A) due to knee surgery and his post-surgery recovery he missed work, the dates of which are believed to have run from May 15, 2019 to September 24, 2019; (B) there were

66

occasional anomalous workweeks when his work hours were somewhat lower or higher than the ranges specified above; and (C) his hours were reduced somewhat after March 16, 2020 due to the corona virus pandemic.

**Defendants' Record-Keeping Obligations**

481.    Under federal and state law, employers are responsible for keeping detailed records of wages, hours, and other employment information. *See* 29 U.S.C. § 211(c); NYLL § 661; NYLL § 195; 12 NYCRR § 142-2.6.

482.    "These requirements are not mere technicalities, but substantive obligations that are 'fundamental underpinnings' of FLSA and critical to ensuring the statute's effectiveness, for an employer's '[f]ailure to keep accurate records can obscure a multitude of minimum wage and overtime violations.'"  *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483 (S.D.N.Y. 2007) (Lynch, J.) (citing cases).

483.    Defendants at all times mentioned herein failed to comply with the above-referenced record-keeping obligations because, *inter alia*, they deliberately falsified timekeeping records by making Plaintiffs sign blank timesheets and otherwise failed to accurately record Plaintiffs' time, and failed to correctly list Plaintiffs' regular pay rates or overtime pay rates.

484.    Plaintiffs are not exempt employees.

**Individual and Enterprise Coverage Under the FLSA**

485.    Upon information and belief, Defendants constitute an "enterprise" as that term is defined by 29 U.S.C. § 203(r), in that, at all material times herein, they engaged in related activities performed through unified operation and/or common control for a common business purpose.

486.     At all times mentioned herein, Defendants' employees, including plaintiffs, regularly engaged in interstate commerce in connection with their employment, including, but not limited to handling and purchasing goods and materials (including construction tools [e.g., cement, adhesive compounds, lumber, piping, electrical wiring, tubing, sheetrock, plaster, scrapers, grinders, sanders, hammers, pry bars, nails, drills, wrenches, screwdrivers, files and saws] and supplies [e.g., sheet rock, cement, pipes, plumbing fixtures, etc.], and cleaning tools [mops, brooms, shovels, bags, etc.] and products [solvents, cleaning fluids, etc.]) transported from out-of-state.

487.     At all times mentioned herein, Defendants also had employees who handled credit and debit card and other transactions that involve the interstate banking, finance and insurance systems, and who transacted business across state lines via interstate telephone calls, text messages, faxes, emails, and the U.S. Mail, and Plaintiffs themselves periodically purchased parts and supplies from hardware and plumbing stores in connection with their work.

488.     Upon information and belief, few if any of the above-referenced items were manufactured in New York.

489.     Most of them, upon information and belief, were manufactured in China and the Midwest. *See, e.g., Archie v. Grand Cent. P'ship,* 997 F.Supp. 504, 530 (S.D.N.Y.1998) (Sotomayor, J.) (sanitation workers using "bags, brooms, shovels, pails, scrapers ... radios, books ... [and] flashlights" handled goods "undoubtedly moved in interstate commerce"); *Shim v. Millennium Grp.,* No. 08–CV–4022, 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) ("[T]he test is met if employees ... merely handled supplies or equipment that originated out-of-state").

490.     Upon information and belief, at all material times herein each of the entity defendant's annual gross sales exceeded $500,000 per annum and each of them had at least two

employees engaged in commerce.  *See*, *e.g.*, *Shim, supra*, 2009 WL 211367, at \*3 ("virtually every enterprise in the nation *doing the requisite dollar volume of business* is covered by the FLSA") (emphasis added) (quoting *Archie,* 997 F.Supp. at 530).

491.     This belief is based on, *inter alia*, the substantial volume of Defendants' business (upon information and belief, the joint employers herein own many thousands of rental units), and the substantial labor and materials needed to operate and maintain thousands of rental units.

492.     Upon information and belief, the entity Defendants constitute an enterprise engaged in commerce or in the production of goods for commerce within the meaning of FLSA.

## First Cause of Action

### Unpaid Minimum Wages in Violation of the Fair Labor Standards Act
#### (on behalf of Nicolas Peterson, Edwin Figueroa-Torres, Alex Candelario, Luis Macias)

493.     Plaintiffs incorporate the preceding paragraphs herein by reference.

494.     Defendants "employed" Plaintiffs as that term is defined under 29 U.S.C. § 203(g).

495.     At all material times herein, the federal minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1).

496.     In the event Defendants claim that one or more of the Plaintiffs were "residential janitors" as that term is defined under New York law, it is noted that residential janitors are not exempt from the FLSA's minimum wage and overtime requirements. Opinion Letter from the Dep't of Labor, Wage & Hour Div., 2019 DOLWH LEXIS 1, \*5 (FLSA 2019-1).

497.    At all material times herein, Defendants willfully failed to pay Nicolas Peterson, Edwin Figueroa-Torres (for most of the relevant time period), Alex Candelario and Luis Macias at rate that was at least equal to the federal minimum wage rate in effect during the time they employed Plaintiffs.

498.    Defendants' knowing and deliberate acts are in direct contravention of 29 U.S.C. § 206(a)(1) and are actionable under 29 U.S.C. § 216(b).

499.    As a result of the foregoing, Defendants are liable to Nicolas Peterson, Edwin Figueroa-Torres (for most of the relevant time period), Alex Candelario and Luis Macias for unpaid minimum wages (in amounts to be determined at trial, and for which estimates will be provided after Plaintiffs' complete pay records and other necessary documentation have been provided in discovery), together with liquidated damages, attorney's fees, and costs.

## Second Cause of Action

**Unpaid Minimum Wages in Violation of Part 141 of Title 12 of the Official Compilation of Codes, Rules and Regulations ("NYCRR") and NYLL §§ 650, *et seq.* and 198(1-a)**
**(on behalf of all Plaintiffs)**

500.    Plaintiffs incorporate the preceding paragraphs herein by reference.

501.    At all material times herein, Defendants, which constitute a single integrated entity as well as joint employers, were a large employer of 11 or more employees.

502.    At all material times herein, Nicolas Peterson, German Pena (from February 1, 2018 onward) and Alex Candelario were not "janitors" or "supers" of the buildings in which they worked.

503.    Although Edwin Figueroa-Torres, Ruben Figueroa Torres, German Pena

(prior to February 1, 2018) and Luis Macias were often referred to as "super": **(A)** they were never paid as such (to the contrary, beginning no later than January 2019 Defendants formally classified them as hourly employees); **(B)** they were never told that they would be paid as a super/janitor; and **(C)** they did not have legally habitable apartments.

504. Accordingly, their minimum compensation under New York law was not and is not limited to the unit rate for bona fide "janitors" set forth in 12 NYCRR 141-1.2. See *Quintero v. Anjudiromi Constr. Corp.*, 2018 U.S. Dist. LEXIS 27862, at **10-15 (S.D.N.Y. Feb. 21, 2018) (denying summary judgment: "Defendants bear the burden of demonstrating that this exemption applies.").

505. At all material times herein, the applicable hourly minimum wage in New York State and City (NYLL § 652(1); 12 NYCRR § 141-1.3) was as follows:

| Time Period | Applicable Hourly Minimum Wage Rate |
|---|---|
| Dec. 31, 2013 - Dec. 31, 2014 | $8.00 |
| Dec. 31, 2014 - Dec. 31, 2015 | $8.75 |
| Dec. 31, 2015 - Dec. 31, 2016 | $9.00 |
| Dec. 31, 2016 - Dec. 31, 2017 | $11.00 |
| Dec. 31, 2017 - Dec. 31, 2018 | $13.00 |
| Dec. 31, 2018 - Dec. 31, 2019 | $15.00 |

506. As detailed above, Defendants failed to pay Plaintiffs the applicable New York minimum wage rate in effect during their employment.

507. Defendants' knowing and deliberate acts constitute violations of NYLL § 650, *et seq.*, and 12 NYCRR Part 141.

508. As a result of the foregoing, Defendants are liable to Plaintiffs for unpaid

minimum wages (in amounts to be determined at trial, and for which estimates will be provided after Plaintiffs' complete pay records and other necessary documentation have been provided in discovery), together with liquidated damages, attorney's fees, and costs, and pre-judgment interest under NYLL §§ 663 and 198(1-a).

## Third Cause of Action

### Unpaid Overtime in Violation of the Fair Labor Standards Act
### (on behalf of all Plaintiffs)

509.    Plaintiffs incorporate the preceding paragraphs herein by reference.

510.    At all times mentioned herein, Defendants failed to comply with the FLSA, in that Defendants frequently required and permitted Plaintiffs to work more than 40 hours per week, but provision was not made by Defendants to pay Plaintiffs at the rate of one and one-half times the regular rate for the hours worked in excess of the hours provided for in the FLSA (29 U.S.C. § 207).

511.    Defendants are and were at all relevant times herein aware that overtime pay is mandatory for non-exempt employees who work more than 40 hours per week.

512.    Defendants are and were at all material times herein fully aware that Plaintiffs usually worked more than 40 hours per week without receiving overtime compensation for any of that additional work.

513.    No agreement existed between the parties with respect to the payment of overtime for hours worked in excess of 40 in a workweek.

514.    As detailed herein, Defendants' wage and hour violations were willful.

515.     Consistent with the foregoing, Defendants are liable to Plaintiffs for unpaid overtime (in amounts to be determined at trial, and for which estimates will be provided after Plaintiffs' complete pay records and other necessary documentation have been provided in discovery), together with liquidated damages, attorney's fees, and costs.

## Fourth Cause of Action

**Unpaid Overtime in Violation of 12 NYCRR § 141-1.4
and NYLL § 650, *et seq.* and 190, *et seq.***

**(on behalf of all Plaintiffs)**

516.     Plaintiffs incorporate the preceding paragraphs herein by reference.

517.     Defendants failed to comply with, *inter alia*, NYLL § 663.1 and § 142-2.2 of 12 NYCRR § 141-1.4, in that Plaintiffs often worked for Defendants in excess of the maximum hours provided by law, but provision was not made by Defendants to pay Plaintiffs at the rate of 1½ times the regular rate for the hours worked in excess of the maximum hours provided by law.

518.     Consistent with the foregoing, Defendants are liable to Plaintiffs for unpaid overtime (in amounts to be determined at trial, and for which estimates will be provided after Plaintiffs' complete pay records and other necessary documentation have been provided in discovery), together with liquidated damages, attorney's fees, and costs.

**Fifth Cause of Action**

**Untimely Paid Wages in Violation of NYLL § 191**
**(on behalf of all Plaintiffs)**

519.    Plaintiffs incorporate the preceding paragraphs herein by reference.

520.    NYLL § 191(1)(a) is a substantive provision of NYLL article 6 which requires that manual workers be paid "weekly and not later than seven calendar days after the end of the week in which the wages are earned[.]"

521.    Plaintiffs are and were manual workers at all material times herein.

522.    Until at least January of 2019 (and, for Nicolas Peterson, up to the present), Defendants consistently failed to pay Plaintiffs on a weekly basis; instead, they paid generally Plaintiffs twice-a-month, and sometimes less frequently than that (e.g., sometimes paying Nicolas Peterson as much as 21 days after the previous paycheck).

523.    Accordingly, Plaintiffs were generally not timely paid for the first 8-9 days of each 15 or 16 day pay cycle. Stated differently, Plaintiffs were generally not timely paid for at least about 54% of the pre-2019 wages they were paid.

524.    Workers who live paycheck-to-paycheck (as these Plaintiffs did) experience increased hardship and dependency when they are not paid on a weekly basis as the law requires.

525.    The untimely manner in which Defendants paid Plaintiffs was deliberate, *i.e.*, willful, rather than accidental, involuntary or the result of any difficulty in meeting their payment obligations, and is fully consistent with their calculated disregard of their other wage and hour obligations as set forth above.

74

526.   "The remedies available through § 198(1-a) [e.g., liquidated damages and attorney's fees] apply to employees bringing claims under § 191." *Duverny v. Hercules Med. P.C.*, No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547, at *13 (S.D.N.Y. Mar. 3, 2020), citing *Vega v. CM & Assoc. Constr. Mgmt.*, LLC, 175 A.D.3d 1144 (App. Div. 2019) and *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 605 N.Y.S.2d 213, 216 n.2 (1993); see also *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 481-82 (S.D.N.Y. 2012).

527.   Accordingly, Plaintiffs are entitled to liquidated damages (in amounts to be determined at trial, and for which estimates will be provided after Plaintiffs' complete pay records have been provided in discovery) for the untimely paid portion of their wages (which includes at least about 54% of the pre-2019 wages that were "actually paid," *Perez-White v. Advanced Dermatology of N.Y. P.C.*, 2016 U.S. Dist. LEXIS 120642, at *28 (S.D.N.Y. Sep. 6, 2016)), together with attorney's fees under NYLL §§ 191 and 198(1-a).

**Sixth Cause of Action**

**Violations of NYLL § 195's Wage Notice and Paystub Requirements**
**(on behalf of all Plaintiffs)**

528.   Plaintiffs incorporate the preceding paragraphs herein by reference.

529.   NYLL § 195(1)(a) provides, in pertinent part:

Every employer shall: (1)

**(a)** provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; *** the regular pay day designated by the employer in accordance with [NYLL § 191]; the name of the employer; any "doing business as" names

used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. *** Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. Such acknowledgement shall include an affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to this subdivision was in the language so identified or otherwise complied with paragraph (c) of this subdivision, and shall conform to any additional requirements established by the commissioner with regard to content and form. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay[.]

530.   Defendants failed to ever provide any of the Plaintiffs with the notice required by NYLL § 195(a).

531.   Accordingly, Defendants, for violating NYLL § 195(1)(a) for well in excess of 100 days, are liable to each Plaintiff for $5,000, together with attorney's fees. NYLL § 198(1-b).

532.   NYLL § 195(3) provides, in pertinent part:

Every employer shall: (1)

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. ***

533.    On those occasions when Defendants provide Plaintiffs with paystubs, those paystubs did not comply with the requirements of NYLL § 195(3).

534.    Accordingly, Defendants, for violating NYLL § 195(3) well in excess of 20 days, are liable to each Plaintiff for $5,000, together with attorney's fees. NYLL § 198(1-d).

535.    Defendants are likewise liable for attorney's fees for the violations set forth in this cause of action.

**Seventh Cause of Action**

**Unlawful Discrimination in Violation of the New York City Human Rights Law**
**(on behalf of Nicolas Peterson Against "David," Tiebout DK Holdings LLC, Tiebout II Associates LLC, Tiebout Associates LLC and Fried)**

536.    The preceding paragraphs are incorporated herein by reference.

537.    Nicolas Peterson is the only Plaintiff of African descent, and the only Plaintiff who is, and looks, "black."

538.    In addition, at the start of Nicolas Peterson's employment, his immigration status was such that he could be considered an undocumented immigrant.

539.    At all material times herein, Nicolas Peterson:

(A)    was singled out by Defendants for the payment of wages that were substantially lower than the (already illegally and unconscionably low) level of wages paid to the other Plaintiffs and, upon information and belief, the maintenance workers in Defendants' other buildings;

(B)    was singled out by Defendants as the only Plaintiff to have his already illegally and unconscionably low wages of $400 twice-a-month reduced further still (to $370 twice-a-month), a step taken inexplicably and with no

77

prior notice;

(C)  was singled out by Defendants as the only Plaintiff to continue being paid twice-a-week after Defendants became liability-conscious enough to begin paying the other Plaintiffs once a week; and

(D)  was singled out by Defendants as the only Plaintiff to be placed in a "dwelling" with no bathroom or kitchen.

540.  Upon information and belief, Defendants' disparate treatment of Nicolas Peterson referenced herein occurred, in whole or in part, because of his race and color, and was exacerbated by his immigration status and whatever stereotypes Defendants associated to his race, color and immigration status.

541.  The New York City Human Rights Law ("NYCHRL") provides, in pertinent part:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived … race … color … alienage or citizenship status of any person: *** (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

NYC Administrative Code § 8-107; see also N.Y.C. Admin. Code § 8-102 (defining "Alienage or citizenship status").

542.  There is no rationale, non-discriminatory explanation for the disparate treatment of Nicolas Peterson referenced in this cause of action.

543.  The above-referenced specific and related instances of discrimination against Nicolas Peterson were authorized and permitted by Defendants to continue unremedied for so long as to amount to a discriminatory policy or practice.

544.  Accordingly, Nicolas Peterson is entitled to damages for the

discriminatory pay scale and treatment from the inception of his employment onward in amounts to be determined at trial. See, e.g., *Mohamed v. NYU*, 2015 U.S. Dist. LEXIS 121178, at *7 (S.D.N.Y. Sep. 10, 2015).

545.    Punitive damages are likewise warranted under the NYCHRL because the discrimination alleged herein was with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017).

546.    For their unlawful discrimination as alleged herein, Defendants are also liable for "such other remedies as may be appropriate" (NYC Administrative Code 8-502(a)), as well as attorney's fees. N.Y.C. Admin. Code § 8-502(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests a judgment as follows, or in such other amount as is determined at trial:

(1) For Plaintiffs' First and Second Causes of Action for unpaid minimum wages, a judgment for unpaid minimum wages in amounts to be determined at trial, together with liquidated damages;

(2) For Plaintiffs' Third and Fourth Causes of Action for unpaid overtime, a judgment for unpaid overtime in amounts to be determined at trial, together with liquidated damages;

(3) For Plaintiffs' Fifth Cause of Action for untimely paid wages, a judgment for liquidated damages in amounts to be determined at trial for the untimely paid portion of their wages;

(4) For Plaintiffs' Sixth Cause of Action for wage notice and paystub violations, a judgment for $10,000 per Plaintiff;

(5) For Plaintiffs' Seventh Cause of Action, a judgment in Nicolas Peterson's favor for pay discrimination damages and damages for the other disparate treatment to which he was subjected, together with punitive damages, all in amounts to be determined at trial; and

(6) For all causes of action, attorney's fees, costs, disbursements, prejudgment interest, post-judgment interest and such other and further relief as is just.

**Notice Pursuant to New York Limited Liability Company Law ("LLCL") § 609(c)**

Pursuant to LLCL § 609(c), if a wage judgment is entered in Plaintiffs' favor and is not satisfied by Defendants, Plaintiffs will seek to collect said judgment from the 10 Members of each LLC Defendant with the Largest Ownership Interest each said LLC.

**Demand Pursuant to New York Business Corporation Law ("BCL") §§ 630 and 624**

Pursuant to New York Business Corporation Law ("BCL") § 630, Plaintiffs hereby demand that Defendants Staffpro Inc. and Empay Inc. (and any other subsequently-named corporate Defendant) permit an examination of their record of shareholders under BCL § 624 so that liability may be imposed on their respective top ten shareholders for the unpaid wages, etc. referenced herein.

**<u>Jury Trial Demand</u>**

Plaintiffs demand a trial by jury with respect to all issues so triable.


Dated:  New York, New York
         June 24, 2020

                              Law Offices of Scott A. Lucas
                              By: <u>*/S/ Scott A. Lucas*</u>
                                   Scott A. Lucas
                                   250 Park Avenue
                                   20th Floor
                                   New York, New York 10177
                                   (212) 983-6000
                                   *Attorneys for Plaintiffs*