UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EDWIN FIGUEROA-TORRES,
NICOLAS PETERSON,
RUBEN FIGUEROA TORRES,
ALEX CANDELARIO,
GERMAN PENA, and
LUIS MACIAS

                      Plaintiffs,                  **20-CV-4851 (KPF)**

     -against-


DAVID KLEINER, et al.

                      Defendants.
-----------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT

---

Goldberg and Weinberger LLP
630 Third Avenue, 18th Floor
New York, NY 10017
P: (212) 867-9595
F: (212) 949-1857

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ............................................................................................ i

PRELIMINARY STATEMENT ....................................................................................1

FACTS AND PROCEDURAL HISTORY .........................................................................1

   A. Background ......................................................................................................1

   B.  NLRB Proceeding and Subsequent Dismissal ....................................................3

   C.  Defendants' Motion to Compel Arbitration and Subsequent
       Correspondence with the Court Regarding Case .................................................4

   D.  Plaintiffs' Second Amended Complaint .............................................................4

ARGUMENT ............................................................................................................5

   POINT I
   PLAINTIFF'S CLAIMS ARE PREEMPTED/PRECLUDED BY
   THE NLRA ...........................................................................................................6

   A.  Plaintiffs' Unlawful Deduction of Wages Claim Based on the
       Deduction of Union Dues is Preempted by the NLRA ......................................7

   B.  Plaintiffs' Retaliation Claims Based on Alleged Coercion Are
       Preempted/Precluded by the NLRA ..................................................................9

       1) Allegations involving Defendants Filing of a Motion to Compel
           Arbitration .............................................................................................10

       2) Allegations involving Defendants' Negotiation of Collective
           Bargaining Agreements ..........................................................................10

       3) Allegations involved Defendants' Alleged "Coercion" of Plaintiffs ....12

POINT II
EVEN IF PLAINTIFFS' CLAIMS WERE NOT PREEMPTED/PRECLUDED
BY THE NLRA, THEY SHOULD BE DISMISSED ...........................................16

A.   Defendants' Decision to File a Motion to Compel Arbitration
     Cannot Form the Basis of a Viable Retaliation Claim...................................17

B.   The Alleged Provision of COVID-19 Discretionary Payments Cannot
     Form the Basis of a Viable Retaliation Claim ................................................20

C.   Mr. Pena Cannot Establish a Viable Retaliation Claim .................................21

D.   Mr. Peterson Cannot Establish a Viable Retaliation Claim ...........................24

CONCLUSION.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*14 Penn Plaza v. Pyett*,
    556 *U.S.* 247 (2009) ................................................................................11, 12, 15

*Abdullayeva v. Attending Homecare Services LLC*,
    928 F.3d 218 (2d Cir. 2019) ...............................................................................11

*Allen v. St. Cabrini Nursing Home, Inc.*,
    198 F.Supp.2d 442 (S.D.N.Y. 2002) ....................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................6

*Blair v. L.I. Child and Family Development Services, Inc.*,
    16-CV-1591 (JFB), 2017 WL 722112 (E.D.N.Y. Jan. 31, 2017) ........................23

*Bogart v. New York City Law Dept.*,
    00-CV-7417 (DLC), 2001 WL 1631986 (S.D.N.Y. Dec. 20, 2001) ....................18

*Caldwell v. American Basketball Ass'n, Inc.*,
    66 F.3d 523 (2d Cir. 1995) ..................................................................................7

*Cortese v. Skanska Koch, Inc.,* 20-CV-1632 (LJL),
    2021 WL 429971 (S.D.N.Y Feb. 8, 2021) ..........................................................15

*Dao v. Oppenheimer Funds, Inc.*,
    10-CV-8413 (KBF), 2012 WL 1681355 (S.D.N.Y. May 2, 2012) .......................21

*Duraku v. Tishman Speyer Properties,Inc.*,
    714 F.Supp.2d 470 (S.D.N.Y. 2010) ..............................................................11, 12

*Dunn v. Sederakis*,
    143 F.Supp.3d 102 (S.D.N.Y. 2015) .........................................................6, 18, 19

*Gaughan v. Rubenstein*,
    261 F.Supp.3d 390 (S.D.N.Y. 2017) ...............................................................23, 24

*Gerena v. 10 Sheridan Associates, LLC,*
    13-CV-6056 (CM), 2013 WL 5880567 (S.D.N.Y. Nov. 1, 2013)....................6, 15

*Hudacs v. Frito-Lay, Inc.,*
    90 N.Y.2d 342 (1997) ............................................................................7

*Hughes v. Twenty-First Century Fox, Inc.,*
    304 F.Supp.2d 429 (S.D.N.Y. 2018)....................................................17

*Karunakan v. Borough of Manhattan Community College,*
    18-CV-10723 (ER), 2021 WL 535490 (S.D.N.Y. Feb. 12, 2021)........................23

*Karlin v. MCS Mortgage Bankers, Inc.,*
    17-CV-06011 (ADS), 2019 WL 1586861 (E.D.N.Y. April 12, 2019) .................19

*Kroshnyi v. U.S. Pack Services, Inc.,*
    771 F.3d 93 (2d Cir. 2014)....................................................................8

*Kugler v. Donahoe,*
    11-CV-648 (RRM), 2014 WL 1010317 (E.D.N.Y. March 17, 2014) .................20

*Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.,*
    180 F.Supp.3d 236 (S.D.N.Y. 2016)....................................................11

*Manapova v. P.S.C. Community Services, Inc.,*
    18-CV-4146 (FB) (PK), 2020 WL 44521025 (S.D.N.Y. Aug. 3, 2020) ..............11

*Marinov v. Fiat Chrysler Automotive,*
    18-CV-75 (TLS) (APR), 2020 WL 6565205 (N.D. Ind. Nov. 9, 2020) ..............8, 9

*McKenzie v. Illinois Dept. of Transportation,*
    92 F.3d 473 (7th Cir. 1996) ...............................................................17

*Mullins v. City of New York,*
    626 F.3d 47 (2d Cir. 2010)..................................................................16

*Olorode v. Streamingedge, Inc.,*
    11-CV-6934 (GBD), 2014 WL 1689039 (S.D.N.Y. April 29, 2014)...................21

*Perry v. NYSARC, Inc.,*
    424 Fed. Appx. 23 (2d Cir. 2011)........................................................21

*Ramirez v. Michael Cetta, Inc.,*
    19-CV-986 (VEC), 2020 WL 5819551 (S.D.N.Y. Sept. 30, 2020)......................25

*Richardson v. Comm. on Human Rights & Opportunities,*
    532 F.3d 114 (2d Cir. 2008)..................................................................17

*Starr v. Sony BMG Music Entertainment,*
    592 F.3d 314 (2d Cir. 2010)...................................................................6

*San Diego Building Trades Council v. Garmon*,
    359 U.S. 236 (1957)......................................................................7, 13

*Sarauer v. International Ass'n of Machinists and Aerospace Workers, Dist. No. 10,*
    966 F.3d 661 (7th Cir. 2020) .................................................................14

*Sherman v. Fivesky, LLC,*
    19-CV-8015 (LJL), 2020 WL 5105164 (S.D.N.Y. Aug. 31, 2020)......................18

*Spaulding v. N.Y. City Dep't of Educ.,*
    12-CV-3041 (KAM), 2015 WL 5560286 (E.D.N.Y. Sept. 21, 2015) ...................24

*Torres v. Gristede's Operating Corp.,*
    628 F.Supp.2d 447 (S.D.N.Y. 2008)........................................................18

*Turley v. ISG Lackawanna, Inc.,*
    803 F.Supp.2d 217 (W.D.N.Y. 2011) ......................................................23

*Vaca v. Sipes,*
    386 U.S. 171 (1967)...........................................................................7

*Vysofsky v. Glassman,*
    01-CV-2531 (LMM), 2007 WL 3130562 (S.D.N.Y. Oct. 23, 2007)......................8

*Zhong Li v. Oliver King Enterprises, Inc.*,
    14-CV-9293 (VEC) 2015 4643145 (S.D.N.Y. Aug. 4, 2015) .........................22, 23

## NLRB CASES

*Dairyland USA Corp.*,
    347 NLRB No. 30 (2006) .....................................................................12

*Duane Reade,*
        338 NLRB 943 (2003) ........................................................................13

*Vernitron Electrical Components, Inc.,*
        221 NLRB 464 (1975) ........................................................................13

**OTHER**

9 U.S.C. § 2 ..............................................................................................4

29 U.S.C. § 158 .......................................................................................12

29 U.S.C. § 159 .........................................................................................7

42 U.S.C § 1981 .........................................................................................2

Fed. R. Civ. P. 12(b)(1) ........................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................1, 5

NYLL § 193 .....................................................................................4, 7, 8, 9

FLSA § 215 ................................................................................................5

NYLL ......................................................................................................16

## PRELIMINARY STATEMENT

Plaintiffs Edwin Figueroa-Torres, Nicolas Peterson, Reuben Figueroa Torres, Alex Candelario, German Pena, Luis Macias are building service employees who work at various residential apartment buildings located in the Bronx. Plaintiffs' Second Amended Complaint ("SAC") contains eleven causes of action. Certain portions of the claims asserted in the Ninth, Tenth, and Eleventh causes of action, which relate to dealings with a union are clearly preempted and/or precluded by the National Labor Relations Act ("NLRA") and should therefore be dismissed pursuant to Federal Rule 12(b)(1).

In addition, even if Plaintiffs' claims were not precluded by the NLRA, Plaintiffs have failed to allege viable claims of retaliation under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL"). Accordingly, the Tenth and Eleventh causes of action should be dismissed pursuant to Federal Rule 12(b)(6) on substantive grounds.

## FACTS AND PROCEDURAL HISTORY

### A.      Background

Plaintiffs originally commenced this action against Defendants on June 24, 2020, via the filing of a Summons and Complaint. (Dkt #1.)[1] In the Complaint, the Plaintiffs alleged that the 31 corporate defendants were actually a "single integrated entity controlled and/or managed, and used as an instrumentality" by Defendant David Kleiner. (Dkt #1 at ¶ 353.) In the original Complaint, each of the six named Plaintiffs asserted various claims against Defendants under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (Dkt #1 at ¶¶ 493-535.) In addition, Plaintiff Peterson asserted a claim of discrimination pursuant to New York City Human Rights Law ("NYCHRL") (Dkt #1 at ¶¶ 536-546.)

---

[1] All references to the docket in in this case are cited herein as "Dkt at #__."

1

On September 9, 2020, Defendants filed an Answer to the Complaint, wherein Defendants denied that Plaintiffs were entitled to any relief whatsoever, denied that any statutes were violated, and asserted 22 Affirmative Defenses. (Dkt # 48.) On September 30, 2020, Defendants filed an Amended Answer to the Complaint, wherein they asserted one additional Affirmative Defense, which was that "Plaintiffs are barred and precluded from maintaining this court action because the asserted claims are subject to arbitration under a collective bargaining agreement." (Dkt #49.) On November 25, 2020, Defendants filed a pre-motion letter with the court, requesting a pre-motion conference in anticipation of a motion to compel the arbitration of the claims asserted by each of named Plaintiffs with the exception of German Pena. (Dkt. # 52.)[2]

On December 30, 2020, Plaintiffs filed an Amended Complaint. (Dkt. #58.) In the First Amended Complaint, Plaintiffs asserted several additional claims, including: (1) a claim of discrimination on behalf of Plaintiff Peterson under 42 U.S.C. § 1981; (2) a claim of unlawful deduction of wages under the NYLL on behalf of Plaintiffs Edwin Figueroa-Torres, Rueben Figueroa Torres, Luis Macias (deductions allegedly based on alleged loan repayments) and German Pena (deductions for rent); (3) a claim of unlawful retaliation on behalf of German Pena in violation of the FLSA; and (4) a claim of unlawful retaliation on behalf of German in violation of the NYLL. (*Id.* at ¶¶ 559-598.) On January 13, 2021, Defendants filed an Answer to Plaintiffs' Amended Complaint. (Dkt at #59.)

---

[2] The pre-motion letter notified the court that the buildings which employed five of six plaintiffs in the case – Tiebout II Associates, 1665 Monroe Avenue, and 2335 Valentine Avenue – had been unionized by Local 298 Amalgamated Eastern States Joint Board, International Union of Allied Novelty and Production Workers, AFL-CIO ("Local 298" or "the union"). The buildings executed collective bargaining agreements (CBAs) with the union, and the agreements contained *Pyett* language, which subjected claims to arbitration. *See 14 Penn Plaza v. Pyett*, 556 *U.S.* 247 (2009). Accordingly, in the pre-motion letter to the court, Defendants asserted that the claims asserted by five of the six Plaintiffs in this case should be subject to arbitration, as per the language of the CBAs signed by the union.

**B.       NLRB Proceeding and Subsequent Dismissal**

On January 19, 2021, an unfair labor practice charge was filed at the National Labor Relations Board ("NLRB") ("NLRB complaint") against Defendant David Kleiner and Defendants Tiebout II Associates, 1665 Monroe, and 2335 Valentine. (D's Ex. A.)[3] The NLRB charge was filed by Plaintiffs' current counsel in this litigation, and asserts as follows:

> Employer has unlawfully supported and dominated a labor organization, ***interfered with and coerced employees in the exercise of the their NLRA rights. Employer instructed Petitioners (all but one of whom are not fluent in English) to sign a piece of paper which, unbeknownst to them, would make them part of Employer's hand-picked union.*** Petitioners never wanted to be in Employer's hand-picked union.

(Def. Ex. A.) (emphasis added) The NLRB complaint sought: (a) a determination from the Board that Defendants violated NLRA sections 8(a)(1), (2), and (3); (b) a determination from the Board declaring that Local 298 was "never validly selected"; and (c) a determination from the Board rescinding all collective bargaining agreements entered into by the parties. (Def Ex. A.)

An unfair labor practice charge also was filed against Local 298 alleging that it was unlawfully recognized by Defendants David Kleiner and Defendants Tiebout II Associates, 1665 Monroe, and 2335 Valentine as the representative of the employees at those buildings. On April 5, 2021, the union disclaimed interest in the buildings which employed Plaintiffs. (Dkt #76-2 at ¶ 606.) On May 24, 2021, NLRB disposed of the complaint filed by Plaintiffs, by entering into settlements agreements with Defendants Tiebout II Associates, 1665 Monroe, and 2335 Valentine. (Dkt #76-2 at ¶ 608; Def. Ex. B.) The NLRB Settlement Agreements contained language which states that "By entering into this Settlement Agreement, the Charged Party does not admit that it has violated the National Labor Relations Act." (Def. Ex. B.)

---

[3] All references to the exhibits annexed to the Declaration of Stuart Weinberger, which is submitted herewith, are cited herein as "Def Ex. ____."

**C.      Defendants' Motion to Compel Arbitration and Subsequent Correspondence with the Court Regarding Case**

On January 29, 2021, Defendants filed a motion to compel arbitration of the claims asserted by Plaintiffs (with the exception of Pena) based on the CBAs which had been entered into in September 2020. (Dkt #60-63) On March 11, 2021, Plaintiffs filed opposition to the motion to compel arbitration. (Dkt #67-68.) On April 9, 2021, upon learning that the union had disclaimed interest in the buildings which employed Plaintiffs, counsel for Defendants notified the court's clerk that Defendants would likely be withdrawing the motion to compel arbitration. (Def. Ex. C.)[4] On April 10, 2021, Plaintiffs' counsel filed a letter with the court which sought, *inter alia*, guidance with respect to a variety of issues and potential relief being sought. (Dkt #73.) On April 14, 2021, Defendants' counsel filed a letter in response to Plaintiffs' letter, and formally withdrew the motion to compel arbitration, as originally contemplated in the correspondence with the court's clerk just a few days earlier. (Dkt #74.)

**D.      Plaintiffs' Second Amended Complaint**

On May 28, 2021, a conference was held with the court. Following the conference, the court issued an Order granting Plaintiffs' request to file a SAC. (Dkt # 77) (Def. Ex. D). On June 7, 2021, Plaintiffs filed a SAC. (Dkt #80). The SAC includes additional allegations (when compared with the prior complaints that had been filed) with respect to the Ninth, Tenth, and Eleventh causes of action.

In the Ninth cause of action, Plaintiffs now assert a claim for unlawful deduction of wages pursuant to NYLL § 193 with respect to Plaintiffs Candelario, Macias, Edwin Figueroa-Torres,

---

[4] Defendants' counsel notified the court's clerk that he was away at the time, and simply needed to confirm with his client before formally withdrawing the motion. Defendants formally withdrew the motion several days later.

and Ruben Figueroa Torres based on the deduction of union dues from Plaintiffs' wages, which Plaintiffs claim were never authorized. (Dkt #80 at ¶¶ 572-574.) [5]

In the Tenth cause of action, Plaintiffs now assert a claim for unlawful retaliation under FLSA § 215 on behalf of Plaintiffs Candelario, Peterson, Macias, Edwin Figueroa-Torres, and Ruben Figueroa Torres.[6]  Plaintiffs claim that they were "successfully coerced and tricked into signing pieces of paper which, based on Defendants' later assertions in this litigation, are believed to have been cards allegedly inducting them into Defendants' hand-picked union." (Dkt #80 at ¶ 596.) Plaintiffs allege that when Defendants filed their motion to compel arbitration, "Defendants pressed forward with their retaliatory scheme to curtail Plaintiffs' rights and to wrest jurisdiction from this Court." (Dkt #80 at ¶ 604.) Plaintiffs also claim that in December 2020, Defendants handed out discretionary payments to Defendants' building services employees characterized as COVID relief payments, which they did not receive. (Dkt #80 at ¶ 612.)

In the Eleventh cause of action, Plaintiffs now assert a claim for unlawful retaliation under NYLL § 215 on behalf of all Plaintiffs. The allegations which form the basis of the Eleventh cause of action are essentially identical to the allegations which form the basis of the Plaintiffs' Tenth cause of action for retaliation under the FLSA.

## ARGUMENT

It is well settled that to survive a motion to dismiss under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is

---

[5] The First Amended Complaint had already included a claim for unlawful deduction of wages based on purported loan repayments. It also included a claim for unlawful deduction of wages on behalf of Plaintiff Pena, for rent deductions. This motion only seeks dismissal of the Ninth cause of action to the extent that it is based on the deduction of union dues.

[6] The First Amended Complaint had already included a claim for retaliation on behalf of Plaintiff Pena under the FLSA and NYLL. As set forth in Point II (A)(3), Plaintiff Pena's retaliation claims should also be dismissed.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept as true legal conclusions, and threadbare recitals of elements of a cause of action fail to state a plausible claim. *Id.* at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556). A complaint that contains only "labels and conclusions" or "a formulaic recitation" of the required pleading elements will not be sufficient to state a cause of action. *Id.* at 570. Significantly, if the allegations in the complaint do not allow a reasonable inference stronger than the "mere possibility of misconduct," the complaint must be dismissed. *Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir. 2010). A complaint is "properly dismissed where, as a matter of law, the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Dunn v. Sederakis,* 143 F.Supp.3d 102, 109 (S.D.N.Y. 2015) (internal citations omitted).

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving the subject matter jurisdiction by a preponderance of the evidence. *Gerena v. 10 Sheridan Associates, LLC,* 13-CV-6056 (CM), 2013 WL 5880567, at *3 (S.D.N.Y. Nov. 1, 2013). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings." *Id.*

For the reasons set forth below, Defendants' motion to dismiss should be granted.

## POINT I
## PLAINTIFFS' CLAIMS ARE PREEMPTED/PRECLUDED BY THE NLRA

The U.S. Supreme Court has long held that "when an activity is arguably subject to [Section 7 or Section 8 of the NLRA], states as well as the federal courts ***must defer to the exclusive***

*competence of the NLRB*." *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244-45 (1959) (emphasis added). *See also Vaca v. Sipes,* 386 U.S. 171, 179 (1967) ("As a general rule, neither state nor federal courts have jurisdiction over suits directly involving activity which is arguably subject to Section 7 or Section 8 of the NLRA."); *Sullivan v. American Airlines, Inc.,* 424 F.3d 267, 277 (2d. Cir. 2005) ("The [NLRB] has primary jurisdiction, by virtue of 29 U.S.C. §§ 159-60, over claims arising under Section 7 and 8 of the [NLRA]."); *Caldwell v. American Basketball Ass'n, Inc.,* 66 F.3d 523, 527 (2d Cir. 1995) (preemption applies where conduct "even 'arguably' constitutes an unfair labor practice under the [NLRA § 8].") One of the primary justifications of the preemption doctrine is "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose…" *Vaca,* 386 U.S. at 180-81.

The central tenet of the Ninth, Tenth, and Eleventh causes of action as set forth in the SAC are based on purported "coercion" of employees to join a union, the subsequent negotiation of a collective bargaining agreement, and Defendants' decision to file a motion to compel arbitration. The allegations, at their core, are accusing Defendants of engaging in unfair labor practices. However, because such matters are entirely within the sole and exclusive jurisdiction of the NLRB, any claims based on the involvement of the union must be dismissed.

## A.     Plaintiffs' Unlawful Deduction of Wages Claim Based on the Deduction of Union Dues is Preempted by the NLRA

It is well settled NYLL § 193 "prohibits employers from making any deductions from wages, except as required by law or regulation, or authorized by the employee for the employee's benefit." *Hudacs v. Frito-Lay, Inc.,* 90 N.Y.2d 342, 347 (1997). Deductions made for the benefit of a union, rather than for the benefit of the employer, have also been held not to violate the Labor

Law. *Greenwald v. Chiarella,* 271 A.D.213, 216 (1st Dept. 1946); *Vysofsky v. Glassman,* 01-CV-2531 (LMM), 2007 WL 3130562, at *15 (S.D.N.Y. Oct. 23, 2007) (vacated on other grounds by *Kroshnyi v. U.S. Pack Services, Inc.,* 771 F.3d 93 (2d Cir. 2014)).

In the SAC, Plaintiffs do not allege facts which suggest that Defendants deducted money for Defendants' own benefit, nor do they allege that the monies which were deducted were not remitted to the union. Indeed, in the SAC, Plaintiffs acknowledge that they may have signed documents which inducted themselves into the union, authorizing dues to be deducted. However, Plaintiffs allege that because they were "coerced and tricked" by Defendants into signing documents committing them to a union, they never actually authorized the deductions. (Dkt #80 at ¶ 576; 596.) It is clear that the viability of Plaintiffs' NYLL § 193 claim depends ***entirely*** on the allegation that the Defendants committed an unfair labor practice by coercing or tricking Plaintiffs into joining a union. Thus, the only way that Plaintiffs can prevail on their Ninth Cause of Action (regarding the deduction of dues) is if they can show that their signatures were "coerced." Accordingly, even if the Court were to accept the Plaintiffs' allegations as true, the alleged misconduct underlying the unlawful deduction of wages claim is clearly within the purview of the NLRA. Indeed, "the Board has long held that employers and unions engage in unfair labor practices under Sections 8(a)(1)-(3) and 8(b)(1)(A) of the [NLRA] if they check off union dues without an employee's valid authorization." *Stewart v. National Labor Relations Board,* 851.F3d 21, 23 (D.C. Cir. 2017) (internal citations omitted).

In *Marinov v. Fiat Chrysler Automotive,* 18-CV-75 (TLS) (APR), 2020 WL 6565205 (N.D. Ind. Nov. 9, 2020), a plaintiff employee brought a claim against his employer under the Indiana Wage Deduction Statute, relating to union dues which he alleged had been wrongfully deducted from his paycheck. In *Marinov,* the court dismissed the wage claim on preemption grounds, noting

that "while this means that the Plaintiff may have recourse before the NLRB on his wage claim, it does not help him in this Court because the unfair labor practice claims fall within the exclusive jurisdiction of the NLRB, largely precluding the exercise of jurisdiction by federal courts." *Id.* at *6. Indeed, in *Marinov*, the district court noted that the plaintiff, like Plaintiffs in the case at bar, had actually filed a claim with the NLRB alleging coercion and unfair labor practice. *Id.* ("In fact, it appears that the Plaintiff considers his wage claim to be an unfair labor practice because he filed a charge with the NLRB on the very issue raised in the complaint.")

The same analysis applies here. There can be no NYLL § 193 claim based on the deduction of union dues if not for a determination that the Plaintiffs were coerced. The only way Plaintiffs can prevail with respect to an unlawful deduction of wages claim based on the deduction of union dues is if there was a determination unfair labor practices had occurred. As more fully set forth below in Point I (B), *infra*, that determination, however, is for the NLRB, not this court. Plaintiffs' NYLL § 193 claims which are based on Defendants' deduction of union dues is therefore preempted and subject to dismissal.

## B. Plaintiffs' Retaliation Claims Based on Alleged Coercion Are Preempted/Precluded by the NLRA

Similar to Plaintiffs' Ninth Cause of action based on the deduction of union dues, Plaintiffs' Tenth and Eleventh causes of action are based primarily on three sets of allegations: (1) Defendants "coerced" or "tricked" Plaintiffs into signing documents which caused them to become members of a union; (2) Defendants negotiated CBAs with the union which contained, among other things, *Pyett* language; and (3) Defendants filed a motion to compel arbitration. Each set of allegations is discussed below.

*1)*     <u>*Allegations involving Defendants' Filing of a Motion to Compel Arbitration*</u>

It can hardly be argued that a litigant's decision to file a motion to compel arbitration of claims, in and of itself, could be the basis of an actionable retaliation claim. Indeed, defendants (including employers) file motions to compel arbitration all the time. Thus, Plaintiffs' repeated referral Defendants' attempt "to divest this court of jurisdiction" is, frankly, absurd. Following Plaintiffs' logic, ***every single motion to compel arbitration*** would necessarily constitute an "attempt to divest the court of jurisdiction." Moreover, if Plaintiffs' allegations were to be believed, every motion to compel arbitration filed in a case involving an FLSA claim would be "retaliatory" in nature. Filing a motion to compel arbitration is a lawful exercise of litigation strategy, and in this case, was done in accordance with the Federal Rules of Civil Procedure.

*2)*     <u>*Allegations involving Defendants' Negotiation of Collective Bargaining Agreements*</u>

The negotiating of collective bargaining agreements is, of course, a process wherein both the union and employer agree to certain terms and conditions that they might not like. In this case, the union secured numerous benefits for its members, including, among other things: (1) guaranteed annual wage increases; (2) monthly allowances for cell phones; (3) an opportunity to participate in an annuity; (4) significant job protection, such that employees could only be discharged for just cause; (5) guaranteed severance pay in the event of lay off; (6) lump sum payments in the event of retirement; (7) guaranteed vacation; (8) holiday pay at an overtime rate in the event the employee is required to work a holiday; (9) five guaranteed personal days; and (10) all grievances to be heard by neutral arbitrators (Def. Exs. E-G.) In addition, the employees obtained the general benefit of belonging to a union to represent their interests. Without delving into the actual negotiation process (which is also clearly within the exclusive jurisdiction of the NLRB), Plaintiffs can hardly argue that the foregoing guarantees were inserted into the contracts

in order to benefit the employer. These are not "sham" CBAs, as Plaintiffs' counsel has suggested. These contracts contain real, tangible guaranteed benefits for its members.

Indeed, it does not appear that Plaintiffs took issue with ***any*** provision of the CBAs except the language which required that all claims be subject to arbitration. However, as stated in Defendants' original motion to compel, numerous courts, including the U.S. Supreme Court, the Second Circuit, and district courts in the Eastern and Southern District have held that an employer and a union may negotiate language requiring claims be subject to mandatory arbitration, including the very types of claims brought in this case. *See 14 Penn Plaza v. Pyett*, 556 *U.S.* 247 (2009); *Abdullayeva, v. Attending Homecare Services LLC,* 928 F.3d 218, 221 (2d Cir. 2019) ("we have no trouble concluding both that the Union agreed to mandatory arbitration in the CBA on behalf of its members and that the arbitration agreement at issue clearly and unmistakably encompasses [plaintiff's] FLSA and NYLL claims."). Further, as stated in Defendants' motion to compel, courts have repeatedly held that claims may be subject to arbitration even where the CBA was executed after the claim arose. *See Mannapova v. P.S.C. Community Services, Inc.,* 18-CV-4146 (FB) (PK), 2020 WL 44521025 (E.D.N.Y. Aug. 3, 2020) ("the Second Circuit has held that a broad arbitration provision with no temporal limitation may encompass preexisting claims.")

Moreover, courts in the Southern District have granted motions to compel arbitration where unions have signed CBAs and other documents requiring arbitration of claims, where as here, those very claims were already being litigated in federal court. *See Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.,* 180 F.Supp.3d 236 (S.D.N.Y. 2016) (granting motion to compel arbitration of FLSA claims despite the plaintiffs having litigated their claims for six months in federal court); *Duraku v. Tishman Speyer Properties,Inc.,* 714 F.Supp.2d 470 (S.D.N.Y. 2010) (granting motion to compel arbitration of discrimination claims where plaintiffs filed

11

complaint alleging violations of Title VII, NYSHRL, and NYCHRL in November 2009 and the union and company entered into a supplemental agreement which required arbitration of such claims in February 2010).

In light of the foregoing, it is clear that an employer is well within its rights to: (1) negotiate a collective bargaining agreement with a union while litigation is pending; (2) include *Pyett* language in the contract which requires arbitration of all claims, including claims which have already arisen; and (3) file a motion to compel arbitration. Such actions, cannot possibly form the basis of an unlawful retaliation claim under the FLSA, NYLL, or any other statute for that matter.

3)      *Allegations involving Defendants' Alleged "Coercion" of Plaintiffs*

Accordingly, since there can be no claim for retaliation for signing a contract with *Pyett* language, Plaintiffs seek to establish a retaliation claim under the FLSA and NYLL by alleging that employees were "coerced" or "tricked" into signing union cards, and that the Defendants entered into contracts with their "hand-picked union" to curtail their statutory rights to have their claims heard in federal court. Put another way, if not for the "coercion" allegations and Defendants' purportedly unlawful recognition of the union, there would be no retaliation claim. However, the allegations which form the very basis of the potential retaliation claim – coercion – are squarely and indisputably covered by the NLRA.

The plain language of the Section 8(a)(2) of the NLRA states, "it shall be an unfair labor practice for an employer to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it." 29 U.S.C. § 158. Specifically, one example of conduct constituting "unlawful assistance" includes "directing employees to meet with a union representative to sign an authorization card and having a supervisor or company official present when cards are signed." *Dairyland USA Corp.*, 347 NLRB No. 30, at *4 (2006). *See also*

*Duane Reade,* 338 NLRB 943 (2003) (unfair labor practice violation where the company handed out union applications to its employees, and thereafter recognized union); *Famous Castings Corp.,* 301 NLRB No. 56, at *6 (1991) (unfair labor practice violation where employer directed employees to sign cards); *Vernitron Electrical Components, Inc.,* 221 NLRB 464, 465 (1975) (unfair labor practice violation where employees were pressured to sign union authorization cards). The Court can take judicial notice of the legions of reported NLRB cases dealing with allegations of coerced employees and unlawful recognition. Moreover, as the foregoing cases demonstrate, it is the NLRB which determines whether there was coercion, and it is the NLRB to determine the remedy, should coercion be found. The NLRB is given broad authority under the Act to remedy violations, including going to federal court under Section 10(j) of the NLRA. As the U.S. Supreme Court has made clear, "[T]he unifying consideration of our decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures and equipped with its specialized knowledge and cumulative experience." *Garmon*, 359 U.S. at 242. It is clearly not for individual employees and their attorneys to litigate unfair labor practices in federal court. *Id.* at 244-45. Allowing individuals and their attorneys to litigate unfair labor practices in federal courts would destroy the uniformity in labor relations in dealing with unfair labor practices. There would be no uniformity in labor policy if the fact-finder, whether it be a court or a jury, were placed in a position where determinations of potential coercion, unlawful recognition, and good faith bargaining played central roles. Those determinations cannot be outside of the purview of the NLRB.[7]

---

[7]Allowing discovery on these issues would further destroy the uniform labor policy and the uniform system of determining unfair labor practices through the procedures allowed by the NLRB. An employer is not permitted to question employees about their union activities outside the NLRB forum. Discovery involving these issues cannot be conducted outside of an NLRB proceeding because, as the U.S. Supreme Court has reiterated, the NLRB is "armed with its own procedures and equipped with its specialized knowledge and cumulative experience." *Garmon,* 359 U.S. at 242.

To be clear, Defendants deny ever engaging in the wrongdoing that is being alleged by Plaintiffs in the SAC. However, assuming, *arguendo,* that Defendants had actually committed the misconduct alleged by Plaintiffs, that would be an unfair labor practice under Section 8 of the NLRA, and therefore be within the exclusive jurisdiction of the NLRB. This conclusion is further evidenced by the fact (as acknowledged in the SAC) that Plaintiffs ***already*** filed an unfair labor practice charge against the Defendants at the NLRB, using almost identical language that is contained in the SAC ("coercion"), in which they alleged violations of Sections 8(a)(1), (2), and (3) of NLRA (Def. Ex. A.) *See Sarauer v. International Association of Machinists and Aerospace Workers, Dist. No. 10,* 966 F.3d 661, 677 (7th Cir. 2020) (dismissing wage claims based on NLRB's exclusive jurisdiction over actions which might constitute unfair labor practices, noting that plaintiffs "basically conceded as much" when they previously filed unfair labor practice charges with the NLRB). Here, the NLRB investigated those allegations, and disposed of the case without finding that Defendants committed any wrongdoing. When presented with the facts and evidence, the NLRB had several options to pursue, including the option of potentially commencing a proceeding against Defendants in federal court. The NLRB did not do that. The NLRB decided how to handle and resolve this case and the issues raised by Plaintiffs in the unfair practice charge. That should be the end of analysis. The type of misconduct alleged in the SAC, if proven to be true, would constitute an unfair labor practice under the NLRA. The remedy for such purported misconduct lies exclusively with the NLRB.[8] Plaintiffs' blatant attempt to circumvent the NLRB regarding matters which are ***clearly*** within the NLRB's sole jurisdiction, in an effort to litigate those same issues in federal court must not be permitted. Honorable Judge Liman's decision recent

---

[8] Plaintiffs' counsel's suggestion (as stated at the May 28, 2021 conference) that the NLRB disposed of the case brought by Plaintiffs because they "have no interest" in pursuing the allegations of coercion is befuddling. (Def Ex. D at p. 9.) It is precisely the role of the NLRB to investigate and adjudicate such matters.

in *Cortese v. Skanska Koch, Inc.,* 20-CV-1632 (LJL), 2021 WL 429971, at *10-11 (S.D.N.Y Feb. 8, 2021) is particularly instructive. In that case, involving an FLSA claim and a potential unfair labor practice issue, Judge Liman wrote "The question then, of whether the Construction Agreement is an unfair labor practice and thus is an enforceable contract at all, is remitted to the NLRB. It cannot be litigated in this case at this stage under FLSA without doing violence to, and ultimately undermining, the exclusive jurisdiction of the NLRB and the authority it was given under the NLRA…" *See also Gerena v. 10 Sheridan Associates LLC,* 13-CV-6056 (CM), 2013 WL 5880567, at *6 (S.D.N.Y. Nov. 1, 2013) (dismissing employee's retaliation claim based on lack of subject matter jurisdiction, where essence of complaint was an alleged unfair labor practice).

Finally, any argument advanced by Plaintiffs which suggest that the allegations which would potentially constitute an unfair labor practice are only "tangentially" or "peripherally" related to the retaliation claims must be rejected. The allegations of purported coercion are vital, because, as stated earlier, the negotiation of a CBA with *Pyett* language, and the filing of a motion to compel arbitration cannot possibly be the basis of an actionable retaliation claim. Rather, the only way that Plaintiffs could possibly establish a claim of retaliation (if at all) is to demonstrate that the Defendants (and/or the union) engaged in an unfair labor practice. That is a determination which must be made by the NLRB, and it cannot be made by this honorable Court. *Garmon*, 359 U.S. at 242.

Accordingly, Defendants' motion to dismiss those portions of the Ninth, Tenth, and Eleventh causes of action which are based on allegations involving the union must be dismissed as a matter of law.

**POINT II**

**EVEN IF PLAINTIFFS' CLAIMS WERE NOT PREEMPTED/PRECLUDED BY THE NLRA, THEY SHOULD BE DISMISSED**

Even if Plaintiff's FLSA and NYLL retaliation claims were not preempted and/or precluded (they are), the claims nevertheless fail because Plaintiffs have not alleged sufficient facts which, even accepted as true, would constitute a basis for a retaliation claim under the statutes. Under the FLSA, an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" to the FLSA. 29 U.S.C. § 215(a)(3). Similarly, under the NYLL, it is unlawful for an employer to "discriminate or retaliate against any employee … because such employee has made a complaint to his or her employer … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates the statute." NYLL § 215(1)(a). Generally, in order to establish a claim of retaliation under the FLSA and the NYLL, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) causal connection between the protected activity and the adverse employment action. *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). There is no doubt that all of the Plaintiffs engaged in activity protected by the FLSA and the NYLL when they commenced the present lawsuit in June 2020. However, the SAC does not sufficiently allege that Plaintiffs were somehow penalized, mistreated, transferred, disciplined, suspended, terminated, or subject to any other adverse employment actions based on their protected activity. Plaintiffs have not adequately alleged that Defendants' actions would deter or dissuade an individual from pursuing their rights under the FLSA or NYLL. Plaintiffs' retaliation claims should therefore be dismissed.

**A.     Defendants' Decision to File a Motion to Compel Arbitration Cannot Form the Basis of a Retaliation Claim**

As set forth in Point I, *supra*, Plaintiffs are alleging that Defendants retaliated against them by "tricking" or "coercing" them into signing documents which caused them to join a union, and thereafter filing a motion to compel arbitration. As explained above, the allegations of coercion and unlawful recognition of a union are clearly within the exclusive jurisdiction of the NLRB. Nevertheless, even if the NLRB did not have exclusive jurisdiction to hear such claims, Plaintiffs' retaliation claim fails on substantive grounds.

Motions to compel arbitration are indisputably common. There is nothing nefarious about the filing of a motion to compel arbitration; bringing the issue before the Court, so that the Court can determine if a party is bound to arbitrate rather than to have their claim heard in court. Litigation decisions such as the filing of a motion to compel arbitration cannot be grounds for liability. Indeed, despite undertaking a thorough review, Defendants did not find a single case (in any jurisdiction) where a court held that a party could establish a claim of retaliation based on a litigant's decision to file a motion to compel arbitration. Indeed, courts in the Second Circuit routinely permit such motions, including in the context of FLSA litigations. Clearly, "an employer is entitled to undertake reasonable defensive measures against an employee's charge of discrimination." *Hughes v. Twenty-First Century Fox, Inc.,* 304 F.Supp.2d 429, 449 (S.D.N.Y. 2018) (dismissing retaliation claim) citing *Richardson v. Comm. on Human Rights & Opportunities,* 532 F.3d 114, 123 (2d Cir. 2008)). Courts have ruled that litigation tactics which are subject to court supervision may not typically form the basis of viable retaliation claims. *See McKenzie v. Illinois Dept. of Transportation,* 92 F.3d 473, 486 (7th Cir. 1996) ("an attempt to obstruct the litigation of the underlying discrimination complaint, like oppressive discovery requests and the withholding of other evidence, is inseparable from the litigation of the claim,"

and is "a matter be resolved pursuant to court rules, not by Title VII."); *Sherman v. Fivesky, LLC,* 19-CV-8015 (LJL), 2020 WL 5105164 (S.D.N.Y. Aug. 31, 2020) (holding that defendant's decision to issue a subpoena to plaintiff's employer for employment records, in the midst of Title VII litigation originally commenced by the plaintiff, could not be the basis of a plausible claim for retaliation); *Bogart v. New York City Law Dept.,* 00-CV-7417 (DLC), 2001 WL 1631986, at *8 (S.D.N.Y. Dec. 20, 2001) (holding that plaintiff's allegations of the defendant's purportedly "abusive litigation tactics" could not form the basis of plausible Title VII retaliation claim.); *Dunn v. Sedarakis,* 143 F.Supp.3d 102 (S.D.N.Y. 2015) (defendant's campaign to pressure plaintiff's union representatives not to assist her could not be the basis of a plausible FLSA retaliation claim.)

Defendants are mindful that in certain contexts, the filing of a baseless or frivolous lawsuit or counterclaim against individuals who have engaged in protected activity could potentially form the basis of an actionable retaliation claim. *See Torres v. Gristede's Operating Corp.,* 628 F.Supp.2d 447 (S.D.N.Y. 2008). This case, however, is easily distinguishable from those cases because Defendants did ***not*** assert any counterclaims against the Plaintiff. Defendants did ***not*** commence legal action against Plaintiffs. Rather, Defendants filed a motion to compel arbitration, which was withdrawn just days after learning that the union disclaimed interest in the relevant buildings. Significantly, even if Defendants' motion to compel had not been withdrawn, and even if the motion had been granted by this court, Plaintiffs would have retained their full rights to seek redress under applicable law at arbitration before neutral arbitrators. Plaintiffs in this case were never in jeopardy of being forced to pay for the cost of defending against counterclaims or lawsuits, nor were they ever faced with the prospect of being found liable for monetary damages. In short, unlike in situations where counterclaims or subsequent lawsuits are filed, Plaintiffs in this case never faced any potential legal harm. The "leverage" that defendants attempt to create by filing

baseless suits or counterclaims is simply not present in this case. It should also be noted the SAC does not contain any allegations suggesting that Defendants have taken actual disciplinary action against Plaintiffs, nor does it contain any allegations suggesting that Defendants have attempted to harm Plaintiffs' current or future careers, or their professional reputations. *See Karlin v. MCS Mortgage Bankers, Inc.,* 17-CV-06011 (ADS), 2019 WL 1586861, at *3 (E.D.N.Y. April 12, 2019) (dismissing FLSA and NYLL retaliation claim where defendant employer filed counterclaim against plaintiff, noting that the plaintiff did "not allege any facts that could plausibly suggest that her reputation or job prospects have been affected by the Defendants' counterclaims.")

Rather, the only "harm" that Plaintiffs could have possibly suffered in this case as a result of Defendants' motion to compel is the temporary delay of their litigation, pending the outcome of the motion. It should also be noted that Plaintiffs have not alleged, much less established, that Defendants' motion to compel has actually discouraged them from pursuing their rights in this litigation, or in any other manner whatsoever. *See Dunn v. Sedarakis,* 143 F.Supp.3d 102, 115 (S.D.N.Y. 2015) (dismissing FLSA retaliation complaint, noting that the fact that plaintiff herself had not been discouraged from pursuing the lawsuit was relevant.) The SAC simply states, in conclusory form, that if "low wage workers had pre-existing knowledge of" the purportedly "retaliatory" actions taken by Defendants, "the resulting adjustment to that worker's benefit calculus might well tip the scales back to the default position for most underpaid low wage employees, namely, not taking the risky and comparatively unusual step of filing a lawsuit against very powerful current employer." (Dkt. #80 at ¶ 617.) Plaintiffs' counsel's suggestion regarding how Defendants' motion to compel in this case could be interpreted by some other unnamed "low wage workers" in the future is highly speculative and cannot be the basis of a plausible retaliation claim under applicable law.

In light of the foregoing, even if the court determines that the NLRB does not have exclusive jurisdiction over the retaliation claims being asserted in this case, Plaintiffs' attempt to establish a retaliation claim under the FLSA and NYLL based on Defendants' decision to file a motion to compel arbitration must be rejected by the court.

## B.     The Alleged Provision of Discretionary Payments Cannot Form the Basis of a Viable Retaliation Claim

Plaintiffs assert that in December 2020, Defendants "handed out discretionary payments to Defendants' building service employees characterized as Covid relief payments in amounts believed to have been $700 for recent hires, and $1000 for long term employees. Plaintiffs, however, were passed over and conspicuously excluded from these payments." (Dkt. #80 at ¶ 610.) This allegation is insufficient to create an actionable claim of retaliation under the FLSA and NYLL. First, Plaintiffs do not allege that Defendants or their agents made any comments or remarks which are suggestive of retaliatory intent.[9] Indeed, even assuming the truth of Plaintiffs' allegations regarding the discretionary payments, there are a myriad of potential non-retaliatory reasons as to why Plaintiffs did not receive the payments. Plaintiffs have not alleged any facts suggesting retaliatory intent, aside from the allegation that they did not receive such alleged payments. That is not sufficient to establish an inference of causation.

Rather, Plaintiffs appear to be relying entirely on the temporal proximity between their protected activity (June 2020) and the purportedly protected activity (December 2020) to establish causation. However, it is well settled that "a substantial time lag between the protected activity and the adverse employment action suffices to defeat an inference of retaliatory animus." *Kugler*

---

[9] Plaintiffs do allege one conversation that took place exclusively between Defendant Fried and Plaintiff Pena, wherein Defendant Fried allegedly threatened Pena with termination. However, that purported conversation cannot be the basis of inferring retaliatory intent with respect to any plaintiffs other than Pena. Further, the relevance of the conversation to Pena's claim of retaliation is discussed below.

*v. Donahoe,* 11-CV-648 (RRM), 2014 WL 1010317, at *9 (E.D.N.Y. March 17, 2014) (internal citations omitted). Courts in the Second Circuit have held that the passage of six months is beyond the temporal range which can establish the requisite causal connection with respect to a claim for retaliation. *See Perry v. NYSARC, Inc.,* 424 Fed. Appx. 23, 26 (2d Cir. 2011) ("We have … concluded that even a four-month interval between protected activity and alleged retaliation is insufficient in itself to establish the causal connection necessary to support a retaliation claim."); *Dao v. Oppenheimer Funds, Inc.,* 10-CV-8413 (KBF), 2012 WL 1681355, at *8 (S.D.N.Y. May 2, 2012) ("the passage of six months between the time of the alleged complaint and plaintiff's termination eliminates any inference plaintiff can draw that the two are connected."); *Olorode v. Streamingedge, Inc.,* 11-CV-6934 (GBD) (AJP), 2014 WL 1689039, at *19 (S.D.N.Y. April 29, 2014) (six month gap between complaint and termination insufficient to show causation); *Chukwueze v. NYCERS,* 891 F.Supp.2d 443, 456-58 (S.D.N.Y. 2012) (three to six month gap insufficient to establish causal connection); *Allen v. St. Cabrini Nursing Home, Inc.,* 198 F.Supp.2d 442, 450 (S.D.N.Y. 2002) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation.");

In light of foregoing, given the six-month gap between Plaintiffs' protected activity and the discretionary payments alleged, and the lack of any additional facts from which to infer retaliatory intent, Plaintiffs' retaliation claims based on the Defendants payment of discretionary bonuses to other employees should be dismissed.

## C.   Mr. Pena Cannot Establish a Viable Retaliation Claim

Defendants did not move to compel the arbitration of Pena's claims because, unlike the other plaintiffs in this case, he never joined the union. Nevertheless, according to the SAC, Plaintiff

Pena appears to be asserting a claim of retaliation under the FLSA and NYLL based on a conversation that he allegedly had with Defendant Fried. According to the SAC, on November 30, 2020, Defendant Fried allegedly met with Plaintiff Pena and showed him two checks – one in the amount of $500.00 for vacation pay that had not been paid to him for 2020, and a second check for $1,000.00. (Dkt. #80 at ¶¶ 580-82.) The SAC alleged that Defendant Fried allegedly told Pena that he needed to sign papers in order to receive the checks, and when Pena refused, Fried did not give him the checks. (Dkt #80 at ¶¶ 583-85.) Thereafter Defendant Fried allegedly told Pena that "it can take years for a case to resolve and years to get anything even if he wins; that Pena won't get anything from the lawyer or the case; that the Company has been very good to Pena; and that lawyers only care about the money." (Dkt. #80 at ¶ 586.) Defendant Fried also allegedly stated that "by the time [Pena] gets anything, [Pena] will no longer be in the Company," a statement which Pena interpreted as a "threat" to fire him due to the lawsuit. (Dkt. #80 at ¶¶ 587-88.)

Even if the conversation occurred just as it is described in the SAC (which Defendants dispute), that does not establish a plausible claim for retaliation under the FLSA or NYLL. First, the comments attributed to Fried do not constitute a "threatened termination." The statement that litigation can "take years" to resolve is plainly accurate. The alleged statement from Fried regarding "lawyers wanting all the money" is not suggestive of retaliatory intent. *See Jian Zhong Li v. Oliver King Enterprises, Inc.*, 14-CV-9293 (VEC) 2015 4643145, at *4 (S.D.N.Y. Aug. 4, 2015) (dismissing FLSA and NYLL retaliation claim where employer repeatedly contacted former employee who had filed lawsuit in effort to convince employee to settle out of court, ruling that no reasonable person would be dissuaded from engaging in protected activity based on such allegations, and noting that "a defendant's eagerness to settle an FLSA claim for a sum of money

is more likely to encourage an employee to bring an FSLA case than dissuade him from doing so.")

Similarly, the remark that Pena "would no longer be in the Company" by the time he receives money can simply be understood to mean that it would be a long time before the case was to resolve itself. The statements do not suggest malintent or retaliatory animus, and they do not suggest that Defendants planned on terminating Pena. Moreover, even if that alleged statement was construed as a threatened termination, that would be insufficient to establish a claim for relief under applicable law. *See Blair v. L.I. Child and Family Development Services, Inc.,* 16-CV-1591 (JFB) (SIL), 2017 WL 722112, at *11, 14 (E.D.N.Y. Jan. 31, 2017) ("it is well established that a threat of termination on its own does not rise to the level of an adverse employment action," dismissing retaliation claim based on threat of termination in Title VII case); *Karunakan v. Borough of Manhattan Community College,* 18-CV-10723 (ER), 2021 WL 535490, at *6 (S.D.N.Y. Feb. 12, 2021) (dismissing retaliation claim where plaintiff was threatened with non-reappointment); *Turley v. ISG Lackawanna, Inc.,* 803 F.Supp.2d 217, 254 (W.D.N.Y. 2011) (dismissing retaliation claim, noting "threats of termination or other punishment do not qualify as adverse actions where they were never carried through.")

Plaintiff Pena also asserts that Defendants' decision to withhold a check for "vacation pay" constituted retaliation. These allegations also fail to state an actionable claim. Defendants recognize that a refusal to provide certain benefits may potentially constitute an adverse employment action if the employee is entitled to the benefits. However, the SAC does not contain any allegations whatsoever which would suggest that Plaintiff Pena was "entitled" to vacation pay. It is well settled that "neither the FSLA nor the NYLL require an employer to provide paid vacation, sick leave, or holiday pay." *Gaughan v. Rubenstein,* 261 F.Supp.3d 390, 426 (S.D.N.Y.

2017). Absent an express or implied agreement, which Plaintiffs have not alleged, Plaintiff Pena would not be entitled to vacation pay. Moreover, there are no other allegations suggesting that Plaintiff Pena should have expected to receive vacation pay in 2020. Plaintiffs do not allege, for example, that he received vacation pay in prior years working for Defendants. Plaintiffs also do not allege that it is Defendants' practice to provide employees with vacation pay, nor do they allege that Plaintiff Pena ever received any documents from Defendants suggesting that he was entitled to receive vacation pay. In short, because the SAC does not suggest that he was ever entitled to receive vacation pay as part of his employment, Plaintiff Pena has not established a viable claim for retaliation based on Defendants' purported withholding of such pay. *See Blair,* 2017 WL 722112, at *12 (dismissing retaliation claim where the plaintiff alleged that she was denied health benefits, noting "Nowhere in the Complaint, however, does Plaintiff plead that the School was obligated to provide the benefits as part of her employment…"); *Spaulding v. N.Y. City Dep't of Educ.,* 12-CV-3041 (KAM) (VMS), 2015 WL 5560286, at *6 (E.D.N.Y. Sept. 21, 2015) (no adverse action for retaliation purposes where the plaintiff did not demonstrate that she was entitled to benefits during period in which they were taken away).

For the foregoing reasons, the retaliation claims asserted by Plaintiff Pena pursuant to the FLSA and NYLL should be dismissed.

### D. Mr. Peterson Cannot Establish a Viable Retaliation Claim

The SAC includes an allegation that "upon information and belief, Defendants retaliatory intent was also exacerbated by Peterson's claims of unlawful discrimination in the Complaint." (Dkt #80 at ¶ 614.) Plaintiffs do not provide any allegations of fact to support the conclusory statement, and it is unclear whether Plaintiffs are asserting a cause of action of retaliation on behalf of Peterson under NYCHRL. However, to the extent Plaintiffs are asserting such a claim, it must

be denied for the same reasons already set forth herein. In order to "prevail on a retaliation claim under the NYCHRL, the plaintiff must show that [he] took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Ramirez v. Michael Cetta, Inc.,* 19-CV-986 (VEC), 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020). Other than the conclusory allegation that Defendants "retaliatory intent was exacerbated by Peterson's claim of unlawful discrimination," the SAC does not contain any actual allegations of fact which would suggest retaliatory intent. Defendants filing of a motion to compel arbitration may not form the basis of a retaliation claim under the NYCHRL, and the temporal gap between Peterson's protected activity and the "discretionary bonus" not received is too attenuated to infer any causal connection. Therefore, to the extent Plaintiffs are asserting a claim of retaliation under NYCHRL on behalf of Plaintiff Peterson, the claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this court grant the instant motion to dismiss, and award Defendants such other relief as it deems just and proper.

Respectfully Submitted,

Stuart Weinberger

25