UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWIN FIGUEROA-TORRES, NICOLAS
PETERSON, RUBEN FIGUEROA TORRES,
ALEX CANDELARIO, GERMAN PENA, and
LUIS MACIAS,

                 Plaintiffs,

           -v.-

DAVID KLEINER, *a/k/a DAVID GREEN*, *a/k/a
DOVID KLEINER*, *a/k/a DAVID DAVID*, *a/k/a
DAVID KLEIN*, et al.,

                 Defendants.

20 Civ. 4851 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

      Plaintiffs Edwin Figueroa-Torres, Nicolas Peterson, Ruben Figueroa Torres, Alex Candelario, German Pena, and Luis Macias perform maintenance and other services at several apartment buildings in the Bronx.  At the outset of this case, Plaintiffs brought claims against David Kleiner, Ignatie Fried, Moshe Lieb, and Yisrael Feldman (the "Individual Defendants"), as well as certain business entities owned or managed by the Individual Defendants (the "Business Defendants," and together with the Individual Defendants, "Defendants"), for unpaid minimum wage and overtime and related violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219; the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 195, 198, 650-665; the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-107 to 8-134; and 42 U.S.C. § 1981.  Plaintiffs later amended their pleadings to add an additional unlawful wage deduction claim under the NYLL and retaliation

claims under the FLSA and the NYLL, alleging that Defendants retaliated against them for initiating this lawsuit, in part, by tricking and coercing them into joining a labor union, deducting union dues from their paychecks, negotiating collective bargaining agreements with the union that included mandatory arbitration provisions, and then moving to compel arbitration of Plaintiffs' wage-and-hour claims against Defendants.

Defendants now move to dismiss Plaintiffs' unlawful wage deduction and retaliation claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court grants Defendants' motion in part and denies the motion in part.

## BACKGROUND[1]

### A.   Factual Background

#### 1.   The Parties

Defendants are the owners, managers, and management companies of various residential buildings in the Bronx, New York.  (SAC ¶ 1).  Plaintiffs are manual workers who collectively perform building maintenance, electrical

---

[1]   This Opinion draws its facts from the Second Amended Complaint (the "SAC" (Dkt. #80)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  The Court sources additional facts from the declarations submitted by the parties in connection with Defendants' motion to dismiss and the exhibits attached thereto.  These declarations include: (i) the declaration of Stuart Weinberger in support of Defendants' motion to dismiss ("Weinberger Decl." (Dkt. #86)); and (ii) the declaration of Scott A. Lucas in opposition to Defendants' motion ("Lucas Decl." (Dkt. #92, 100)).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #87); Plaintiffs' memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #91); and Defendants' reply memorandum as "Def. Reply" (Dkt. #94).

work, carpentry, small-scale construction, and administrative work for Defendants.  (*Id.* at ¶ 2).  Plaintiffs allege that, although nominally distinct entities, the Business Defendants are in fact a single integrated entity controlled and managed by Defendant David Kleiner.  (*Id.* at ¶ 353).[2]  Of the Individual Defendants, Kleiner is alleged to exercise the most significant degree of control over the Business Defendants and, by extension, Plaintiffs.  (*Id.* at ¶ 20).  In particular, Kleiner is responsible for determining the Business Defendants' wage policies, employee work schedules, pay rates, record-keeping practices, and day-to-day labor operations.  (*Id.* at ¶ 26).  The remaining Individual Defendants serve under Kleiner and exercise control over Plaintiffs' working conditions on his behalf.  (*Id.* at ¶ 27).

### 2.  Defendants' Alleged Wage-and-Hour Violations

Plaintiffs allege that Defendants systematically refused to pay Plaintiffs minimum wage, overtime, or timely wages, and falsified their employment and timekeeping records.  (SAC ¶ 1).  As Defendants do not seek to dismiss the claims based on these allegations, the Court will not discuss them further here.

### 3.  Defendants' Alleged Retaliation

Of greater relevance to the present motion, Plaintiffs allege that soon after filing this action, Defendants "separately approached Plaintiffs (only one of whom is fluent in English) *ex parte* and instructed them to place their signatures on pieces of paper written in English allegedly committing them to

---

[2]  Plaintiffs allege that Kleiner uses several aliases.  (SAC ¶ 13).  For ease of reference, the Court refers to him using the first name listed in the case caption.

be in Defendants' preferred union, Amalgamated Local 298 Eastern States
Joint Board, International Union of Allied Novelty and Production Workers,
AFIL-CIO ("Local 298" or the "Union")[.]"  (SAC ¶ 576).

As an example of Defendants' efforts to induct them into Local 298,
Plaintiffs allege that Defendants attempted to convince Plaintiff German Pena
to sign a union membership card on two occasions.  The first alleged instance
occurred on July 29, 2020, when Defendant Yisrael Feldman asked Pena to
sign a union card that "would have made him a member of Defendants' hand-
picked union."  (SAC ¶ 577).  Plaintiffs allege Feldman did so "to be able to
claim that German Pena can no longer maintain this lawsuit in federal court
due to the mandatory arbitration provisions in whatever collective bargaining
agreement that union had or would have with Defendants[.]"  (*Id.* at ¶ 578).
Despite Feldman's efforts, Pena did not sign the card.  (*Id.* at ¶ 579).

Defendants' second alleged attempt to induce Pena into joining Local 298
occurred on November 30, 2020.  (SAC ¶ 580).  On that date, Defendant Ignatie
Fried called Pena asked to meet in the Bronx.  (*Id.*).  When Pena arrived, Fried
asked him to get into his car and showed him two checks.  (*Id.* at ¶¶ 581-582).
The first check was for $500 and represented the amount of vacation pay that
Defendants had not given Pena in 2020; the second check was for $1,000.  (*Id.*
at ¶ 582).  Although Fried did not explain what the second check was for, he
told Pena that he could have both checks if Pena signed certain papers
indicating his support for Local 298.  (*Id.*; *see also id.* at ¶ 578).  Fried refused,
however, to provide Pena with a copy of the papers, to allow him to take a

picture of the documents, or even to read them before signing them.  (*Id.* at
¶¶ 583-586).  Fried then made several comments to Pena that implicated this
wage-and-hour suit, including that it can take years for a case to be resolved
and years more to get anything even if Pena were to win; that he would not get
anything from the lawyer or the case; that Defendants had been very good to
Pena; that lawyers only care about money; that by the time Pena would get
anything he would no longer be employed by Defendants; and that if Pena did
not sign the papers, Fried would take the checks back.  (*Id.* at ¶¶ 586-589).
Pena interpreted Fried's statements as a threat to fire him, but nevertheless
declined to sign the papers and never received the checks.  (*Id.* at ¶¶ 588-589).

Defendants made similar efforts to induce the other Plaintiffs into
selecting Local 298 as their bargaining representative.  (SAC ¶ 596).  While
Plaintiff Edwin Figueroa-Torres was able to resist Defendants' efforts (*id.* at
¶ 598), Plaintiffs Nicolas Peterson, Ruben Figueroa Torres, Alex Candelario,
and Luis Macias allegedly ceded to Defendants' demands after being coerced
and tricked into signing documents indicating their support for Local 298 (*id.*
at ¶ 596).  According to Plaintiffs, "none of them wanted to be in the union or
had any idea they were signing something relating to a union."  (*Id.* at ¶ 576).

Following these alleged interactions between Defendants and Plaintiffs,
on September 24, 2020, "without Plaintiffs' knowledge that they were allegedly
members of any union, much less Defendants' union," Local 298 entered into
collective bargaining agreements with Defendants Tiebout II Associates, LLC
(Weinberger Decl., Ex. E); 2335 Valentine LLC (*id.*, Ex. F); and 1665 Monroe

5

Associates LLC (*id.*, Ex. G) (together, the "Collective Bargaining Agreements"). (SAC ¶ 599).  The Collective Bargaining Agreements provided that Local 298 would serve as the "exclusive bargaining agent for all full-time and regular part-time building service employees" working at each of the buildings associated with the Business Defendants.  (Weinberger Decl., Ex. E).[3]  The agreements further mandated that "all claims brought … under the [FLSA], the [NYLL] … or any similar laws … shall be subject to" the arbitration procedures set forth in the Collective Bargaining Agreements.  (*Id.*, § 4.D.1).  The Collective Bargaining Agreements' arbitration provisions applied to all "claims that the employee *has or ever had.*"  (*Id.* (emphasis added)).  Finally, the agreements stated that "[t]he parties agree not to contest court confirmation of an arbitration award rendered under" the arbitration provisions.  (*Id.*, § 4.D.6).

Plaintiffs allege that Defendants engaged in the foregoing actions so as to divest this Court of jurisdiction over the case and place the resolution of their claims in the hands of "Defendants' preferred arbitrator," thereby depriving Plaintiffs of "valuable rights," including the "right not to be conscripted into Defendants' union"; the right to litigate, not arbitrate, their claims; the right to a jury trial; and the right to appeal any decision made on their claims.  (SAC ¶ 600).  Defendants would not have undertaken these actions, on Plaintiffs' view, *but for* Plaintiffs' decision to file this wage-and-hour lawsuit.  (*Id.* at

---

[3]     The quoted provisions of each of the Collective Bargaining Agreements are identical in substance.  As such, the Court cites only to the agreement between Local 298 and Tiebout II Associates, LLC.  (*See* Weinberger Decl., Ex. E).

¶ 613).  In Plaintiffs' words, Defendants' actions have caused them "stress, uncertainty, suspicion, and feelings of loss of control[.]"  (*Id.* at ¶ 615).

## B.   Procedural Background

### 1.   The Underlying and First Amended Complaints

Plaintiffs filed the underlying Complaint in this case on June 24, 2020, asserting wage-and-hour and discrimination claims.  (Dkt. #1).  Defendants filed an initial Answer to the Complaint on September 9, 2020 (Dkt. #48), and an amended Answer on September 30, 2020 (Dkt. #49).  The Amended Answer raised as a new affirmative defense that "Plaintiffs are barred and precluded from maintaining this court action because the asserted claims are subject to arbitration under a collective bargaining agreement."  (*Id.* at 59).

On November 25, 2020, Defendants filed a pre-motion letter requesting leave to file a motion to compel arbitration under the Collective Bargaining Agreements.  (Dkt. #52).[4]  The Court ordered the parties to be prepared to address Defendants' contemplated motion at the initial pretrial conference scheduled for December 9, 2020.  (Dkt. #53).  At that conference, the Court granted Plaintiff leave to file an amended complaint and set a briefing schedule for Defendants' motion to compel arbitration.  (*See* Minute Entry for December 9, 2020).  Thereafter, on December 30, 2020, Plaintiffs filed an Amended Complaint, which asserted additional claims under 42 U.S.C. § 1981

---

[4]      The motion to compel arbitration described in this November 25, 2020 letter is the motion that Plaintiffs claim was part of Defendants' retaliatory scheme to punish them for filing the instant suit.  (*See* SAC ¶ 604).

and the NYLL.  (Dkt. #58).  Defendants then filed an Answer to the Amended

Complaint on January 13, 2021.  (Dkt. #59).

### 2.     The National Labor Relations Board Proceedings

On January 19, 2021, Plaintiffs filed an unfair labor practice charge with

the National Labor Relations Board (the "NLRB").  (SAC ¶ 603; *see also*

Weinberger Decl., Ex. A (the "NLRB Complaint")).  The NLRB Complaint

asserted unfair labor practice claims against Kleiner, Tiebout II Associates LLC,

2335 Valentine LLC, and 1665 Monroe Associates LLC (the "Charged Parties").

(NLRB Complaint at 1).  In particular, the NLRB Complaint alleged:

> Employer has unlawfully supported and dominated a
> labor organization, interfered with and coerced
> employees in the exercise of their [National Labor
> Relations Act ("NLRA"] rights. Employer instructed
> Petitioners (all but one of whom are not fluent in
> English) to sign a piece of paper which, unbeknownst to
> them, would make them part of Employer's hand-picked
> union. Petitioners never wanted to be in Employer's
> hand-picked union.

(*Id.*).  On May 24, 2021, the NLRB entered into settlement agreements with the

Charged Parties.  (SAC ¶ 608; Weinberger Decl., Ex. B (the "NLRB

Settlements")).  Pursuant to the NLRB Settlement Agreements, the Charged

Parties agreed, among other things, (i) not to recognize Local 298 as Plaintiffs'

union; (ii) not to instruct their employees to sign authorization cards for Local

298 or any other union; and (iii) not to recognize Local 298 or any other union

at a time when that union did not represent an uncoerced majority of

employees.  (NLRB Settlement Agreements).

### 3. Defendants' Motion to Compel Arbitration

Certain developments in this litigation occurred concurrently with the NLRB proceedings.  On January 29, 2021, Defendants filed a motion to compel arbitration and dismiss the Amended Complaint.  (Dkt. #60-63).  Plaintiffs filed a brief and supporting documents in opposition to Defendants' motion on March 11, 2021.  (Dkt. #67-68).  On April 5, 2021, however, Local 298 disclaimed interest in serving as Plaintiffs' bargaining representative.  (Dkt. #73-1).  Following Local 298's announcement, Defendants notified the Court on April 8, 2021, that they would likely withdraw their motion to compel arbitration.  (Weinberger Decl., Ex. C (Email from Defense Counsel)).

Defendants' anticipated withdrawal of their motion to compel arbitration did not end the matter.  On April 10, 2021, Plaintiffs filed a letter requesting a conference to address "Defendants' scheme to divest this Court of its jurisdiction[.]"  (Dkt. #73 at 1).  Plaintiffs asserted in the letter that Defendants had engaged in "trickery and coercion" that had "disrupted the progress of this case, required the filing of two separate unfair labor practice proceedings before the NLRB, needlessly increased the complexity of this dispute, and necessitated the expenditure of a substantial amount of time and resources."  (*Id.*).  In addition, Plaintiffs indicated their intent to amend their pleading to bring retaliation claims stemming from this scheme.  (*Id.* at 2).  Defendants then filed a responsive letter on April 14, 2021, confirming their withdrawal of their pending motion to compel arbitration, but disputing the remainder of Plaintiffs' arguments made in their April 10, 2021 letter.  (Dkt. #74).

In response to the parties' competing letters, the Court ordered the parties to appear for a telephonic conference on May 28, 2021. (Dkt. #75).  At the conference, the Court authorized Plaintiffs to file a second amended complaint and directed Defendants to file a letter stating whether they intended to answer the second amended complaint or proceed directly to motion practice.  (*See* Minute Entry for May 28, 2021).

### 4.    The Second Amended Complaint

Plaintiffs filed the Second Amended Complaint (the "SAC"), which is the operative pleading in this matter, on June 3, 2021.  (Dkt. #78).[5]  In it, Plaintiffs added additional allegations to their ninth, tenth, and eleventh causes of action.  With particular respect to their ninth cause of action for unlawful deduction of wages under the NYLL, Plaintiffs added a new allegation that Defendants had impermissibly deducted unauthorized union dues from Plaintiffs' paychecks.  (SAC ¶¶ 572-573).  Plaintiffs also supplemented their tenth and eleventh causes of action with new allegations that Defendants had engaged in impermissible retaliation under the FLSA and the NYLL by coercing and tricking Plaintiffs into signing union cards, negotiating the Collective Bargaining Agreements containing mandatory arbitration provisions, and then filing a motion to compel arbitration pursuant to these duplicitous Collective Bargaining Agreements.  (*Id.* at ¶¶ 575-619 (FLSA); *id.* at ¶¶ 620-624 (NYLL)).

---

[5]    Due to a docketing error, the SAC was refiled on June 7, 2021.  (Dkt. #80).  The Court views the SAC as being filed on June 3, 2021.

10

On July 16, 2021, Defendants filed a motion to dismiss certain of the claims asserted in the SAC (Dkt. #85-87) and an Answer as to the claims not subject to their motion (Dkt. #88).  Plaintiffs filed a brief and supporting papers in opposition to Defendants' motion on August 31, 2021.  (Dkt. #91-92). Defendants submitted their reply brief on September 30, 2021 (Dkt. #94). Accordingly, the motion is fully briefed and ripe for the Court's decision.

## DISCUSSION

### A.  The Court Grants Defendants' Motion to Dismiss Certain of Plaintiffs' Claims of Unlawful Wage Deduction and Retaliation Under Federal Rule of Civil Procedure 12(b)(1)

Defendants move to dismiss portions of three of the eleven counts alleged in the SAC for lack of subject matter jurisdiction under Rule 12(b)(1).  (Def. Br. 7).  In particular, Defendants contend that the Court lacks jurisdiction over certain of Plaintiffs' claims for (i) unlawful wage deduction in violation of the NYLL; (ii) unlawful retaliation in violation of the FLSA; and (iii) unlawful retaliation in violation of the NYLL.[6]  Defendants argue that the claims are

---

[6]     Plaintiffs base all three of these claims on discrete sets of allegations, only some of which implicate the labor law issues that are at the heart of Defendants' Rule 12(b)(1) challenge.  For example, Plaintiffs proffer three theories for their claim of unlawful wage deduction in violation of the NYLL: (i) Defendants advanced money to Plaintiffs and later deducted that money from Plaintiffs' paychecks without following the process set forth in Section 193(1)(d) of the NYLL (SAC ¶¶ 565-569); (ii) Defendants deducted money from Plaintiff German Pena's paycheck in satisfaction of rent for an illegal basement apartment (*id.* at ¶¶ 570-571); and (iii) Defendants "ma[de] unauthorized deductions from various Plaintiffs' pay in early 2021 for purported union dues" (*id.* at ¶ 572; *see also id.* at ¶ 573).  Defendants' jurisdictional argument challenges only the third allegation.  Thus, irrespective of the Court's resolution of Defendants' jurisdictional challenge, Plaintiffs will be permitted to pursue an unlawful wage deduction claim premised on the two other alleged instances of unlawful deductions.  Similarly, Plaintiff will be able to assert NYLL and FLSA retaliation claims regardless of the Court's disposition of this motion, as only some of Plaintiffs' theories raise issues the Court lacks the power to adjudicate.

either preempted or precluded by the NLRA, 29 U.S.C. §§ 157, 158.  (Def. Br. 6-
15).  The Court agrees.  As explained below, the Court lacks jurisdiction over
Plaintiffs' claims that implicate violations of the NLRA that could be (and in
some cases were) presented to the NLRB.

### 1.    Applicable Law

A "plaintiff asserting subject matter jurisdiction has the burden of
proving by a preponderance of the evidence that it exists."  *Makarova* v. *United
States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A case is properly dismissed for lack
of subject matter jurisdiction ... when the district court lacks the statutory or
constitutional power to adjudicate it."  *Huntress* v. *United States*, 810 F. App'x
74, 75 (2d Cir. 2020) (summary order) (quoting *Makarova*, 201 F.3d at 113).  In
resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts
alleged in the complaint as true and draw all reasonable inferences in favor of
[the] plaintiff, ... but jurisdiction must be shown affirmatively, and that
showing is not made by drawing from the pleadings inferences favorable to the
party asserting it."  *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d
Cir. 2008) (internal citation and quotation marks omitted).

When jurisdiction is contested, a court is permitted to consider evidence
outside the pleadings, such as affidavits and exhibits.  *See Zappia Middle E.
Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord
Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir.
2014).  In this case, the Court considers the affidavits and exhibits attached
thereto submitted by both parties in connection with Defendants' motion to

dismiss, including (i) the declaration of Stuart Weinberger in support of
Defendants' motion to dismiss ("Weinberger Decl." (Dkt. #86)) and (ii) the
declaration of Scott A. Lucas in opposition to Defendants' motion ("Lucas Decl."
(Dkt. #92, 100)).[7]  The Court also considers the parties' briefing on Defendants'
motion to dismiss or stay this lawsuit and compel arbitration (Dkt. #62
(Defendants' memorandum of law in support of their motion to compel
arbitration and dismiss or stay claims pending arbitration)); Dkt. #68
(Plaintiffs' memorandum of law in opposition to Defendants' motion to compel
arbitration)), which is referred to throughout the SAC (*see, e.g.*, SAC ¶ 604).

### 2. Analysis

Defendants' preemption arguments rely on what is known as "*Garmon*
preemption." (Def. Br. 6-7).  The *Garmon* preemption doctrine takes its name
from *San Diego Building Trades Council* v. *Garmon,* 359 U.S. 236 (1959), in
which the Supreme Court held that "[w]hen an activity is arguably subject to
[Section] 7 or [Section] 8 of the [National Labor Relations] Act, the States as
well as the federal courts must defer to the exclusive competence of the
National Labor Relations Board if the danger of state interference with national
policy is to be averted."  *Id.* at 245.[8]  *Garmon* preemption "is intended to
preclude state interference with the National Labor Relations Board's

---

[7]    Mr. Lucas's July 16, 2021 declaration inadvertently omitted the NLRB's May 24, 2021
       letter that was intended to be included as Exhibit 3. (*See* Dkt. #86, Ex. 3).  A copy of
       the exhibit was subsequently filed on the docket on February 22, 2022.  (Dkt. #100).

[8]    "Sections 7 and 8 of the Act regulate 'concerted activities' and 'unfair labor practices,'
       respectively, seeking to protect the former and stamp out the latter."  *Bldg. Trades
       Employers' Educ. Ass'n* v. *McGowan*, 311 F.3d 501, 508 (2d Cir. 2002) (citing 29 U.S.C.
       §§ 157, 158 (codifying Sections 7 and 8 of the NLRA)).

interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA." *Chamber of Com. of U.S.* v. *Brown*, 554 U.S. 60, 65 (2008) (quoting *Golden State Transit Corp.* v. *Los Angeles,* 475 U.S. 608, 613 (1986)).

Although *Garmon* speaks in broad and categorical terms, the Supreme Court has since clarified that "inflexible application of the doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Farmer* v. *Carpenters*, 430 U.S. 290, 302 (1977).  Rather than "apply the *Garmon* guidelines in a literal, mechanical fashion," *Sears, Roebuck & Co.* v. *San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978) ("*Sears*"), the Supreme Court has instructed that courts must resolve issues of *Garmon* preemption with reference to "'the nature of the particular interests being asserted and the effect upon the administration of national labor policies' of permitting the … court to proceed," *id.* at 189 (quoting *Vaca* v. *Sipes*, 386 U.S. 171, 180 (1967)).

This more flexible approach to *Garmon* preemption is illustrated by the Supreme Court's decision in *Sears*, which addressed the question of whether an action brought to enforce state trespass laws against picketing was preempted by the NLRA.  436 U.S. at 182.  As relevant here, *Sears* addressed the considerations that bear on whether a state law claim is preempted by the "arguably prohibited" (as opposed to the "arguably protected") prong of the *Garmon* doctrine.  *Id.* at 196.  "The critical inquiry" in such a case, the

Supreme Court explained, "is not whether the State is enforcing a law relating specifically to labor relations or one of general application[.]" *Id.* at 197. Rather, whether a claim is preempted because it pertains to conduct that is arguably prohibited by the NLRA is resolved by determining "whether the controversy presented to the state court is identical to … or different from … that which could have been, but was not, presented to the Labor Board." *Id.* The Supreme Court reasoned that "it is only in the former situation that a … court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board[,] which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." *Id.*; *see also Belknap, Inc.* v. *Hale*, 463 U.S. 491, 510 (1983) (observing that in *Sears*, the Supreme Court "emphasized that a critical inquiry in applying the *Garmon* rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could be presented to the Board").

Following the Supreme Court's decisions in *Garmon* and *Sears*, "the Second Circuit has outlined a three-step inquiry for courts to determine if any particular claim is subject to *Garmon* preemption." *Andrewsikas* v. *Supreme Indus., Inc.*, No. 19 Civ. 574 (JAM), 2021 WL 1090786, at *3 (D. Conn. Mar. 22, 2021). The Court "begin[s] by identifying whether any specific provision of [S]ections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of state regulation." *Healthcare Ass'n of N.Y. State,*

*Inc.* v. *Pataki*, 471 F.3d 87, 96 (2d Cir. 2006).  Next, the Court "decide[s] whether the controversy is identical to one that the aggrieved party could bring (or induce its adversary to bring) before the NLRB."  *Id.*  "If not, the State's action could still be preempted, but only if there is a strong showing that the State has interfered with the protections offered by [S]ection 7 or 8 of the NLRA."  *Id.*  Lastly, the Court "consider[s] whether the regulated conduct touches interests 'deeply rooted in local feeling and responsibility,' so that the State's action should not be preempted despite affecting conduct 'arguably' [prohibited] by the NLRA."  *Id.* (quoting *Garmon*, 359 U.S. at 244).

Although preemption is generally a "defense that goes to the merits of a claim, not to subject matter jurisdiction," *Lanier* v. *Bats Exch., Inc.*, 838 F.3d 139, 146 n.5 (2d Cir. 2016), the Second Circuit has found subject matter to be lacking over claims that are subject to *Garmon* preemption.  *See, e.g., Am. Fed'n of Musicians & Employers' Pension Fund* v. *Neshoma Orchestra & Singers, Inc.*, 974 F.3d 117, 123-24 (2d Cir. 2020) (affirming district court's holding that it lacked subject matter jurisdiction over claim subject to *Garmon* preemption); *see also Estevez* v. *Consol. Bus Transit, Inc.*, No. 15 Civ. 7634 (RA), 2016 WL 3448627, at *10 (S.D.N.Y. June 20, 2016) (dismissing claim for lack of subject matter jurisdiction after finding it to be precluded under *Garmon*); *see generally Trollinger* v. *Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004) (observing that "*Garmon* is more than a traditional preemption doctrine … because when properly invoked it tells us not just what law applies (federal law, not state law) but who applies it (the [NLRB], not the state courts or federal district courts)").

###### a.   Unlawful Wage Deductions

The Court begins by addressing its jurisdiction over Plaintiffs' claim for unlawful wage deductions under the NYLL.  Although Plaintiffs allege several distinct unlawful deductions, Defendants' preemption argument is limited to Plaintiffs' claim that Defendants made "unauthorized deductions from various Plaintiffs' pay in early 2021 for purported union dues[.]"  (Def. Br. 7-9; *see also* SAC ¶ 572).  Plaintiffs allege as part of this claim that "[e]ven if some of those deductions had been authorized (which Plaintiffs deny), they would have still been impermissible because … they were for Defendants' benefit rather than Plaintiffs'."  (SAC ¶ 573).  For these alleged violations, Plaintiffs seek the amount of the unauthorized deductions and liquidated damages.  (*Id.* at ¶ 574).

Plaintiffs' unlawful deduction claim, insofar as it challenges Defendants' alleged deductions of union dues, is preempted by Section 8 of the NLRA.  *See* 29 U.S.C. § 158.  Plaintiffs' allegations made in support of their claim, if proven, would establish a plausible violation of Section 8, because the NLRB "has long held that employers and unions engage in unfair labor practices under Sections 8(a)(1)-(3) and 8(b)(1)(A) of the [NLRA] if they check off union dues without an employee's valid authorization."  *Stewart* v. *Nat'l Lab. Rels. Bd.*, 851 F.3d 21, 23 (D.C. Cir. 2017), *as amended* (Mar. 23, 2017); *see also United Food & Com. Workers Dist. Union Loc. One, AFL-CIO* v. *N.L.R.B.*, 975 F.2d 40, 44 (2d Cir. 1992) (stating that "[c]heck off authorizations must be voluntary").  As such, Plaintiffs' claim is identical to one that could be brought before the NLRB.  Indeed, the NLRB explained as much in a May 24, 2021

17

letter to Plaintiffs' counsel, when it advised Plaintiffs that they were "not foreclosed from pursuing" their unlawful wage deduction allegations before the NLRB. (Lucas Decl., Ex. 3). Further, it is also clear that this aspect of Plaintiffs' unlawful wage deduction claim does not touch on interests so deeply rooted in local concerns that would make preemption inappropriate. *See Garmon*, 359 U.S. at 244. To the contrary, Plaintiffs' allegations identify conduct that is squarely within the ambit of the NLRA. *See Stewart*, 851 F.3d at 23; *see also Sarauer* v. *Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 677 (7th Cir. 2020) (observing that a claim based on "employer's failure to keep records of plaintiffs' check-off authorizations while continuing to make deductions" would allege "an arguable unfair labor practice within the [NLRB's] exclusive jurisdiction" under *Garmon*).

Accordingly, the Court finds that Plaintiff's unlawful wage deduction claim predicated on the allegation that Defendants deducted union dues from Plaintiffs' paychecks without their permission is preempted by the NLRA. The Court therefore grants Defendants' motion to dismiss this claim.[9]

### b.    Retaliation Under the NYLL

The Court next addresses its jurisdiction over Plaintiffs' retaliation claim alleged under the NYLL. In support of this claim, Plaintiffs allege that Defendants retaliated against them for filing the present lawsuit by tricking and coercing them into signing union membership cards; entering into the

---

[9]    For avoidance of doubt, the Court's preemption analysis does not apply to Plaintiffs' unlawful wage deduction claims premised on deductions other than those that were applied to Plaintiff's union dues. *See supra* n.6.

Collective Bargaining Agreements with Local 298 that contained provisions mandating the arbitration of all past, present, and future wage-and-hour claims; and then filing a motion to compel the arbitration of their federal and state wage-and-hour claims.  (SAC ¶¶ 576, 596, 600, 612-613).  Defendants argue that this claim is also preempted by the NLRA because "the allegations which form the very basis of the potential retaliation claim — coercion — are squarely and indisputably covered by the NLRA."  (Def. Br. 12).  Although the Court does not adopt Defendants' preemption analysis, it ultimately agrees that Plaintiffs' retaliation claim under the NYLL is preempted by the NLRA.

Beginning with the first step of the *Garmon* analysis, the alleged conduct at the core of Plaintiffs' claim, if proven, would likely establish at least an arguable violation of the NLRA.  *See Pataki*, 471 F.3d at 96.  Plaintiffs allege that Defendants responded to the filing of the present case by coercing and tricking Plaintiffs into selecting Local 298 as their bargaining representative and then working with Local 298 to develop collective bargaining agreements that would force Plaintiffs to arbitrate their wage-and-hour claims.  (*See, e.g.*, SAC ¶¶ 576, 596, 599).  These allegations raise a plausible violation of Section 8 of the NLRA, which makes it an unlawful labor practice for an employer "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it."  29 U.S.C. § 158(a)(2); *see also Corbel Installations, Inc.*, 360 NLRB 10, 35 (2013) (finding employer's direction to employees that they would not receive benefits unless they signed union membership cards was "coercive and constitutes unlawful

assistance in violation of Section 8(a)(2) and (1) of the [NLRA]"); *Dairyland USA Corp.*, 347 NLRB 310, 311 (2006) (stating that an employer violates Section 8 by "directing employees to meet with a union representative to sign an authorization card and having a supervisor or company official present when cards are signed"), *enforced*, *NLRB* v. *Local 348-S, United Food & Commercial Workers Int'l Union*, 273 F. App'x 40 (2d Cir. 2008) (summary order).  Indeed, both parties agree that Plaintiffs' retaliation claim alleges behavior that is arguably prohibited by the NLRA.  (*See* Def. Br. 8 (arguing that, if the Court were to accept Plaintiffs' allegations as true, the alleged conduct would amount to a violation of the NLRA); NLRB Complaint at 2 (arguing that Defendants' alleged actions violated Section 8 of the NLRA)).

The second step of the *Garmon* preemption inquiry, which asks whether the controversy presented by Plaintiffs' retaliation is identical to a labor claim that could be heard by the NLRB, presents a closer call.  *See Pataki*, 471 F.3d at 96.  It is undisputed that several of Plaintiffs' allegations advanced in this case are identical to ones that Plaintiffs brought before the NLRB.  For instance, in the NLRB Complaint, Plaintiffs alleged that the Charged Parties had "unlawfully supported and dominated a labor organization" and "interfered with and coerced employees in the exercise of their NLRA rights."  (NLRB Complaint at 1).  To that end, Plaintiffs alleged that the Charged Parties had "instructed Petitioners (all but one of whom are not fluent in English) to sign a piece of paper which, unbeknownst to them, would make them part of Employer's hand-picked union."  (*Id.*).  Similarly, in support of their retaliation

claim in this case, Plaintiffs again allege that Defendants "approached Plaintiffs (only one of whom is fluent in English) *ex parte* and instructed them to place their signatures on pieces of paper written in English allegedly committing them to be in Defendants' hand-picked union[.]"  (SAC ¶ 576).  These allegations repeat, nearly word-for-word, those that were presented to, and reviewed by, the NLRB.  (*Compare id., with* NLRB Settlements).

Yet the fact that Plaintiffs' unfair labor practice and retaliation claims arise out of the same basic factual circumstances does not, on its own, mandate the application of *Garmon* preemption.  This is clear from the Supreme Court's decisions in *Farmer* and *Sears*, where the Court found *Garmon* preemption inapplicable despite the fact that both controversies "arose in the same factual setting" as arguable labor law violations.  *Sears*, 436 U.S. at 196-98 (finding a state claim not to be preempted despite arising out of picketing activity that arguably violated the NLRA); *Farmer*, 430 U.S. at 305 (same); *see also Domnister* v. *Exclusive Ambulette, Inc.*, 607 F.3d 84, 90 (2d Cir. 2010) (explaining in the removal jurisdiction context that *Garmon* preemption was inappropriate where plaintiffs alleged violations of their labor rights in a separate federal complaint, but did not in their state complaint).

Rather, as the Supreme Court's decisions in this area demonstrate, the NLRA will preempt Plaintiffs' retaliation claim only if the claim would present the same controversy that was or could be presented to the NLRB.  *See Sears*, 436 U.S. at 197; *see also Belknap*, 463 U.S. at 510-12.  To determine whether the controversies would be identical across the two proceedings, the Court

considers the elements of Plaintiffs' retaliation claim and unfair labor practice charges.  If Plaintiffs would be required to put forward the same proof in support of both their state claim and the unfair labor practice charge, then the claim is identical to one that could and must be presented to the NLRB in the first instance.  *See Loc. 926, Int'l Union of Operating Engineers, AFL-CIO* v. *Jones*, 460 U.S. 669, 682 (1983) (distinguishing *Sears* and finding *Garmon* preemption applicable where "the same crucial element must be proved to make out" both the state claim and an unfair labor practice charge under Section 8 of the NLRA); *see also Pennsylvania Nurses Ass'n* v. *Pennsylvania State Educ. Ass'n*, 90 F.3d 797, 804 (3d Cir. 1996) (applying *Garmon* preemption where "much of the conduct forming the basis of the state tort claims also underlies the potential unfair labor practice charges, and the same facts would need to be determined in each proceeding").

To prevail on their NYLL retaliation claim, Plaintiffs will be required to demonstrate "[i] participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action." *Mullins* v. *City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Daniels* v. *Am. Airlines, Inc.*, No. 19 Civ. 3110 (MKB), 2022 WL 493573, at *5 (E.D.N.Y. Feb. 17, 2022) (noting that the same standard applies to retaliation claims alleged under the FSLA and the NYLL).  The allegations in the SAC relevant to these elements include that Defendants (i) coerced and tricked Plaintiffs into signing documents indicating their

support for Local 298 (SAC ¶¶ 596); (ii) entered into Collective Bargaining Agreements that contained mandatory arbitration provisions (*id.* at ¶¶ 599-600); and (iii) filed a motion to compel arbitration of Plaintiffs' wage-and-hour claims (*id.* at ¶ 601).

As reflected in both parties' briefs, whether Plaintiffs' allegations are sufficient to state a retaliation claim under the NYLL is appropriately analyzed under a line of cases addressing whether litigation filings, such as a complaint or counterclaim, can constitute an adverse employment action sufficient to satisfy the second element of a retaliation claim.  (*See* Def. Br. 18-19; Pl. Opp. 5).  "The courts in this Circuit have held that the filing of 'baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions.'"  *Kim* v. *Lee,* No. 21 Civ. 3552 (LJL), 2021 WL 6052122, at *11 (S.D.N.Y. Dec. 20, 2021) (quoting *Torres* v. *Gristedes Operating Corp.*, 628 F. Supp. 2d 447, 472 (E.D.N.Y. 2008)).  Thus, "[t]o sustain a claim of retaliation based on the filing of a lawsuit or a counterclaim, the plaintiff must allege both that [i] the lawsuit or counterclaim was filed both 'with a retaliatory motive' and that [ii] it was filed 'without a reasonable basis in fact or law.'"  *Id.* (collecting cases).[10]  The Court assumes, for the purposes of

---

[10]   The Court is aware of the cases suggesting that "[w]hether or not an employee can claim retaliation because he or she has been sued in a well-founded lawsuit is an open question."  *Lawrence* v. *NYC Med. Prac., P.C.*, No. 18 Civ. 8649 (GHW), 2019 WL 4194576, at *9 (S.D.N.Y. Sept. 3, 2019).  At least some courts in the Second Circuit have found that even a well-founded complaint, if made in bad faith, can constitute an adverse employment action.  *See, e.g.*, *Rodriguez* v. *Nat'l Golf Links of Am.*, No. 19 Civ. 7052 (PKC) (RML), 2020 WL 3051559, at *6 (E.D.N.Y. June 8, 2020) (permitting a plaintiff to plead a retaliation claim under the FLSA and the NYLL based on a state complaint that plaintiff alleged was made in bad faith); *see also Romero* v. *Bestcare, Inc.*, No. 15. Civ. 7397 (JS) (GRB), 2018 WL 1702001, at *6 (E.D.N.Y. Feb. 28, 2018)

this jurisdictional analysis, that Plaintiffs could sustain their retaliation claim under the NYLL based on a plausible showing that Defendants' motion to compel arbitration was both made in bad faith and baseless.

Here, the resolution of whether Defendants' motion to compel arbitration was baseless, and thus could constitute an adverse action, would necessarily require the Court to inquire into labor matters that are entrusted to the NLRB's exclusive jurisdiction. Plaintiffs suggest in the SAC that Defendants' motion was baseless because the Collective Bargaining Agreements containing the mandatory arbitration provisions were "void *ab initio*" as a consequence of the

---

(recommending allowing a plaintiff to proceed with his claim for retaliation based on a counterclaim that was "baseless *or* would not have been pursued absent a retaliatory motive" (emphasis added)), *report and recommendation adopted*, No. 15 Civ. 7397 (JS) (GRB), 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018). A greater number of courts, however, have required that a filing made in the course of an ongoing litigation be *both* baseless *and* made in bad faith in order to constitute an adverse employment action for purposes of a retaliation claim. *See Kim* v. *Lee*, No. 21 Civ. 3552 (LJL), 2021 WL 6052122, at *11 (S.D.N.Y. Dec. 20, 2021) (collecting cases). "Absent both elements," these latter courts have reasoned, "such a claim would raise First Amendment issues." *Id.*

Several factual distinctions between this case and *Rodriguez*, the primary case finding that potentially meritorious claims made in bad faith may constitute an adverse action, lead the Court to adhere to the majority position among district courts in this Circuit. *See Rodriguez*, 2020 WL 3051559. In particular, the alleged adverse action in *Rodriguez* was an entirely separate state court action. *Id.* at *5. Here, by contrast, the litigation filing at issue is a motion to compel arbitration. Plaintiffs in this case were thus never at risk of being held liable or ordered to pay damages. Moreover, in *Rodriguez*, the Court based its decision in part on the fact that a third party, not the defendant, was responsible for filing the alleged retaliatory action. *Id.* In this case, Defendants authored the allegedly retaliatory motion to compel arbitration. (*See* SAC ¶ 604). This case therefore more strongly implicates Defendants' First Amendment "right of access to the courts[.]" *Bill Johnson's Restaurants, Inc.* v. *N.L.R.B.*, 461 U.S. 731, 741 (1983); *see also id.* at 743 (holding that "[t]he filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [NLRA]"). For all these reasons, the Court declines on the facts of this case to depart from the majority position of courts in the Second Circuit that a litigation filing must be both made in bad faith and baseless to constitute a plausible adverse action for the purposes of a retaliation claim.

circumstances preceding their execution.  (SAC ¶¶ 605-606).  But whether
Defendants' alleged actions, or other circumstances related to Defendants'
negotiation and execution of the Collective Bargaining Agreements with Local
298, rendered the Collective Bargaining Agreements void is not a matter that
can be resolved by reference to "the technical rules of contract law[.]"  *Cnty.*
*Concrete Corp.* v. *Nat'l Lab. Rels. Bd.*, 765 F. App'x 712, 717 (3d Cir. 2019)
(unpublished decision) (stating that, in the labor context, "[w]hether or not an
agreement has been reached between two parties is a question of fact for the
[NLRB] to determine").  Rather, resolving the controversy presented by
Plaintiffs' claim would require the Court to wade into such matters as whether
Plaintiffs were validly represented by Local 298 at the time Defendants filed
their motion and whether Local 298 and Defendants' negotiations over the
Collective Bargaining Agreements constituted an unfair labor practice.  These
determinations, in turn, would depend on the Court's interpretation and
application of the substantive provisions of the NLRA.

Plaintiffs' briefing in response to both the present motion and
Defendants' prior motion to compel arbitration confirms the centrality of these
labor law issues to their retaliation claim.  In opposition to Defendants' motion
to compel arbitration, Plaintiffs argued that the Court "should not place its
judicial imprimatur on the fruits of Defendants' trickery and coercion, or the
union allowing itself to be used as Defendants' instrumentality to deprive
Plaintiffs of valuable rights[.]"  (Dkt. #68 at 2).  Similarly, in opposition to the
instant motion to dismiss, Plaintiffs argue that their retaliation claim is not

preempted because, among other things, "[i] there is no employee-union or employer-union relationship; [ii] the Purported CBAs are void; [and] [iii] there would be no inconsistency between the NLRB's unilateral settlements and a subsequent finding that Defendants' union never became Plaintiffs' representative and that the Purported CBAs were void *ab initio*[.]"  (Pl. Opp. 19). These arguments confirm that the resolution of Plaintiffs' retaliation claim will require the Court to wade into labor law matters.

Thus, far from not "hav[ing] anything in common" with Plaintiffs' state law claim, *Belknap*, 463 U.S. at 510, the labor law issues in this case would be dispositive of one of the elements of Plaintiffs' retaliation claim.  Because the Court's resolution of these issues would risk interfering with the "exclusive competence of the" NLRB, *Garmon* dictates that the Court yield to the NLRB's primary jurisdiction.  *Garmon*, 359 U.S. at 245 (holding that when a claim is preempted by the NLRA, the States as well as the federal courts must defer" to the NLRB); *see also Jones*, 460 U.S. at 682 (stating that "[d]ecisions on … questions of federal labor law should be resolved by the Board").

In opposition, Plaintiffs point to "at least six fatal flaws" in Defendants' position that, they contend, render *Garmon* preemption inapplicable here.  (Pl. Opp. 12).  Of these six purported flaws, three are relevant to the Court's preceding preemption analysis.[11]  *First*, pointing to cases in which courts have

---

[11]    Plaintiffs' remaining three arguments are irrelevant to the Court's finding that their state retaliation claim is preempted.  These arguments include: (i) federal laws do not preempt other federal laws; (ii) Defendants' preemption argument uses the wrong legal standard; and (iii) Plaintiffs' retaliation claim under the FLSA falls within an exception to the *Garmon* preemption doctrine.  (*See* Pl. Opp. 12).

sanctioned parties under their inherent authority and Federal Rule of Civil
Procedure 11, Plaintiffs argue that their claim is not preempted because this
Court has inherent power to sanction the conduct alleged in the SAC.  (*Id.* at
12-13).  "If this Court has the power to impose sanctions against Defendants,"
Plaintiffs ask, "then how could it be powerless to allow that recompense to be
determined in the context of a retaliation claim?" (*Id.* at 13).  This is a *non
sequitur*.  Plaintiffs have not moved for sanctions under Rule 11, the Court's
inherent powers, or any other authority.  Instead, Plaintiffs have filed a state-
law retaliation claim that, for the reasons just provided, "must yield to the
subordinating federal authority[.]" *Garmon*, 359 U.S. at 241.

    *Second*, Plaintiffs assert several arguments related to the NLRB's
participation in the present dispute, none of which is availing.  (Pl. Opp. 14-
19).  In the main, Plaintiffs' argument is that the NLRB's resolution of Plaintiffs'
unfair labor practice charges leaves this Court free to resolve all outstanding
issues remaining in the case.  (*See, e.g.*, *id.* at 15 (arguing that "the NLRB no
longer has any interest at stake in this dispute"); *id.* (stating that "[o]nce the
NLRB completes its work, the parties return to court for the resolution of any
remaining issues"); *id.* at 16 (suggesting that "[h]ad it viewed Plaintiffs'
FLSA/NYLL retaliation and unlawful deduction claims are interfering with its
jurisdiction, the NLRB would have presumably stated as much")).

    The flaw in Plaintiffs' argument is that the NLRB has *not* resolved the
labor law issues implicated by Plaintiffs' retaliation claim.  To be sure, Plaintiffs
pursued unfair labor practice charges before the NLRB (*see* NLRB Complaint),

27

and the NLRB entered into settlement agreements with the Charged Parties (*see* NLRB Settlement Agreements).  But the NLRB did *not* determine whether Defendants' alleged conduct amounted to an unfair labor practice under the NLRA.  (*See* NLRB Settlement Agreements at 1 (providing that by entering into the settlement agreement, the "Charged Party does not admit that it has violated the [NLRA]")).  Given that the NLRB has not resolved the legal significance of Defendants' actions under the NLRA, Plaintiffs' claim, if it were permitted to move forward, would require the Court to address in the first instance a labor law issue that it lacks the power to address.

*Third*, Plaintiffs contend that their retaliation claim under the NYLL is not preempted because their retaliation claim under the FLSA is not precluded and the two statutes proscribe the same conduct.  (Pl. Opp. 19-21).  Plaintiff's reasoning on this point begs the question:  As the Court will explain, Plaintiffs' retaliation claim under the FLSA *is* precluded.  Plaintiffs' argument is therefore premised on an inaccurate conclusion of law.

Accordingly, on the record before it, the Court finds that Plaintiffs' retaliation claim under the NYLL is preempted by the NLRA because it implicates a controversy that could and must be addressed by the NLRB in the first instance.  *See K.D. Hercules, Inc.* v. *Laborers Loc. 78 of Laborers' Int'l Union of N. Am.*, No. 20 Civ. 4829 (LGS), 2021 WL 1614369, at *3 (S.D.N.Y. Apr. 26, 2021) (holding that a claim was preempted under *Garmon* "because the SAC alleges that Defendants' actions giving rise to the … claim also constituted an unfair labor practice"); *Am. Fed'n of Musicians & Employers' Pension Fund* v.

*Neshoma Orchestra & Singers, Inc.*, No. 17 Civ. 2640 (JGK), 2018 WL 2338764, at *4 (S.D.N.Y. May 23, 2018) (finding that because the "claim is identical to one that could have been presented to the NLRB," the claim was "within the exclusive jurisdiction of the NLRB"), *aff'd*, 974 F.3d 117 (2d Cir. 2020); *Fitzgerald* v. *Signature Flight Support Corp.*, No. 13 Civ. 4026 (VB), 2014 WL 3887217, at *6 (S.D.N.Y. Aug. 5, 2014) (concluding that a claim that fell "within the ambit of Section 8 of the NLRA" was preempted by the NLRA under *Garmon*).  The Court therefore grants Defendants' motion to dismiss the claim.

### c. Retaliation Under the FLSA

Lastly, the Court addresses its jurisdiction over Plaintiffs' retaliation claim under the FLSA.  At the outset, the Court notes that Defendants' challenge to this federal claim raises an issue of preclusion, not preemption.  "The doctrine of preemption, which derives from the Supremacy Clause of the U.S. Constitution, operates to render only state or local laws 'without effect' if in conflict with federal law."  *Roache* v. *Long Island R.R.*, 487 F. Supp. 3d 154, 166 (E.D.N.Y. 2020) (quoting *Altria Grp., Inc.* v. *Good*, 555 U.S. 70, 76 (2008)).  Preemption is therefore "inapplicable to a potential conflict between two federal statutes."  *Tufariello* v. *Long Island R.R. Co.*, 458 F.3d 80, 86 (2d Cir. 2006).  Thus, the "appropriate way of framing Defendants' argument is whether FLSA reaches the alleged conduct and whether the claim is 'precluded' by the NLRA."  *Cortese* v. *Skanska Koch, Inc.*, No. 20 Civ. 1632 (LJL), 2021 WL 429971, at *8 (S.D.N.Y. Feb. 8, 2021); *see also Roache*, 487 F. Supp. at 166 (same).

Defendants' argument that Plaintiffs' FLSA claim is precluded by the NLRA "cuts against well-established law that strongly disfavors preclusion of one federal statute by another absent express manifestations of preclusive intent." *United States* v. *Sforza*, 326 F.3d 107, 111 (2d Cir. 2003). "Courts 'are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Id.* (quoting *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO* v. *N.Y. Shipping Ass'n,* 965 F.2d 1224, 1237 (2d Cir. 1992)). "To overcome the presumption against preclusion, defendants must demonstrate a clear congressional intent to preclude, or a positive repugnancy between the two federal statutes." *Id.* (citing *Traynor* v. *Turnage*, 485 U.S. 535, 548-49 (1988)).

Here, despite the presumption against preclusion, the Court finds that Plaintiffs' retaliation claim under the FLSA is precluded by the NLRA for the reasons just discussed in the context of Plaintiffs' NYLL retaliation claim. Like Plaintiffs' state law retaliation claim, the merits of their FLSA retaliation claim would turn on whether Defendants' motion to compel arbitration was baseless, which is, in essence, a question of labor law. To put a finer point on it, the baselessness of Defendants' motion to compel arbitration depends on whether Local 298 was validly selected as Plaintiffs' collective bargaining representative and whether Local 298 and Defendants permissibly negotiated and executed the Collective Bargaining Agreements. Because the power to resolve these issues is confined to the NLRB, Plaintiffs' FLSA retaliation claim is precluded

30

by the NLRA. *See Cortese*, 2021 WL 429971, at *10 (finding a claim alleged

under the FLSA to be precluded where it could not "be litigated in this case at

this stage under FLSA without doing violence to, and ultimately undermining,

the exclusive jurisdiction of the NLRB and the authority it was given under the

NLRA"); *see also Trollinger*, 370 F.3d at 610-11 (holding in the context of the

Racketeer Influenced and Corrupt Organizations Act ("RICO") that when an

"action depends upon a federal-law predicate offense and a violation of that

predicate law may be found only if the defendant's conduct violates the NLRA,

the federal district courts lack jurisdiction under *Garmon* because the NLRA

issues in the case would be anything but collateral"); *Adkins* v. *Mireles*, 526

F.3d 531, 542 (9th Cir. 2008) (affirming district court's finding that federal

RICO claims were preempted by the NLRA where the claims rested on alleged

conduct that was prohibited by Sections 7 and 8 of the NLRA).[12]

## B.    The Court Grants in Part and Denies in Part Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Defendants also move to dismiss Plaintiffs' retaliation claims that are not

subject to *Garmon* preemption on the ground that they fail to state a claim

upon which relief can be granted under Rule 12(b)(6). In particular,

Defendants move to dismiss Plaintiffs' retaliation claims premised on

(i) Defendants' alleged refusal to provide Plaintiffs with certain discretionary

---

[12]    The Court's finding of preclusion is predicated on the unique facts of this case. As reflected in other decisions in this District, the NLRA does not ordinarily preclude actions under the FLSA. *See generally OConner* v. *Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 604 (S.D.N.Y. 2020) (observing that "the NLRB does not have exclusive jurisdiction over FLSA actions").

payments (Def. Br. 20-21); and (ii) Fried's statements to Pena on November 30, 2020 (*id.* at 21-24).[13]  The Court finds that Plaintiffs have failed to state a claim based on Defendants' alleged denial of discretionary payments.  By contrast, the Court finds that Plaintiffs have plausibly alleged retaliation claims under the NYLL and the FLSA based on Fried's statements to Pena.

### 1.    Applicable Law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating the viability of a plaintiff's claim, the Court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  That said, the Court is "not required

---

[13]    Defendants also argue that Plaintiff Peterson cannot establish a viable retaliation claim. (Def. Br. 24-25).  Defendants base this challenge on Plaintiffs' allegation that "Defendants' retaliatory intent was also exacerbated by Peterson's claims of unlawful discrimination in the Complaint."  (*Id.* at 24 (quoting SAC ¶ 614)).  Although Defendants speculate that Plaintiffs may be attempting to use this allegation to state a retaliation claim on behalf of Peterson under the NYCHRL (*id.*), the Court does not understand this allegation to state a separate claim.  Instead, given that it is alleged as part of Plaintiffs' claim for retaliation based on Defendants' alleged union-related activities and motion to compel arbitration, the Court views this allegation as bearing on whether Plaintiffs engaged in protected activity and whether Defendants engaged in impermissible retaliation under the NYLL.  Because the Court has found that it lacks jurisdiction over that claim, it declines to address it further here.

to credit conclusory allegations or legal conclusions couched as factual

allegations." *Rothstein* v. *UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

### 2. Analysis

Plaintiffs' retaliation claims under the NYLL and the FLSA are subject to

the three-step burden-shifting framework established in *McDonnell Douglas*

*Corp.* v. *Green,* 411 U.S. 792 (1973). *See Mullins*, 626 F.3d at 53 (FLSA);

*Daniels*, 2022 WL 493573, at *5 (NYLL). As discussed earlier, "a plaintiff

alleging retaliation under FLSA [or the NYLL] must first establish a *prima facie*

case of retaliation by showing [i] participation in protected activity known to the

defendant, like the filing of a FLSA lawsuit; [ii] an employment action

disadvantaging the plaintiff; and [iii] a causal connection between the protected

activity and the adverse employment action." *Mullins*, 626 F.3d at 53. "At the

pleading stage, a plaintiff is not required to allege specific evidence as to

each *prima facie* element, but rather must plead facts sufficient to render his

claim plausible." *Cabrera* v. *CBS Corp.*, No. 17 Civ. 6011 (CM), 2018 WL

1225260, at *3 (S.D.N.Y. Feb. 26, 2018).

### a. Defendants' Refusal to Provide Discretionary Payments

The Court begins with Plaintiffs' claim that Defendants retaliated against

them for filing the present suit by refusing to provide them with certain

discretionary payments. (SAC ¶ 610). Plaintiffs allege in support of this claim

that Defendants, "in or about December 2020, ... handed out discretionary

payments to Defendants' building service employees characterized as Covid

relief payments" of between $700 and $1,000," but that Plaintiffs "were passed

33

over and conspicuously excluded from these payments." (*Id.*).  Defendants

argue that this claim must be dismissed because Plaintiffs have not alleged a

causal connection between their protected activity and the alleged adverse

employment action that they experienced.  (Def. Br. 20).

"Proof of causation can be either '[i] indirect, by showing that the

protected activity was followed closely by discriminatory treatment, or through

other circumstantial evidence such as disparate treatment of fellow employees

who engaged in similar conduct; or [ii] direct, through evidence of retaliatory

animus directed against the plaintiff by the defendant.'" *Zuckerman* v. *GW*

*Acquisition LLC*, No. 20 Civ. 8742 (VEC), 2021 WL 4267815, at *17 (S.D.N.Y.

Sept. 20, 2021) (internal alterations omitted) (quoting *Hicks* v. *Baines*, 593 F.3d

159, 170 (2d Cir. 2010)); *accord Mullins*, 626 F.3d at 53.

Here, the timing of Plaintiffs' filing of the present litigation and

Defendants' alleged actions does not, on its own, establish a causal

relationship between the two.  Although the Second Circuit has "not drawn a

bright line to define the outer limits beyond which a temporal relationship is

too attenuated to establish a causal relationship," *Gorman-Bakos* v. *Cornell Co-*

*op. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001), the

Supreme Court has suggested that the temporal proximity "must be very

close," *Clark Cnty. Sch. Dist.* v. *Breeden*, 532 U.S. 268, 273 (2001) (per curiam)

(internal quotation marks and citation omitted).  "Courts in this District

generally find two or three months to be the outer limit for alleging the

existence of causation based on temporal proximity." *Zuckerman*, 2021 WL

4267815, at *17 (collecting cases).  Plaintiffs allege that Defendants engaged in
their retaliatory actions approximately five months after Plaintiffs filed the
Complaint.  (*See* SAC ¶ 610; Dkt. #1).  This temporal connection, absent
additional allegations suggesting that Defendants engaged in unlawful
retaliation, does not nudge Plaintiffs' claim across the plausibility threshold.
*See Perry* v. *NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (summary order)
(noting that the Second Circuit has "concluded that even a four-month interval
between protected activity and alleged retaliation is insufficient in itself to
establish the causal connection necessary to support a retaliation claim");
*Beachum* v. *AWISCO N.Y.,* 785 F. Supp. 2d 84, 99 (S.D.N.Y. 2011) (finding the
passage of more than four months to be too long to give rise to an inference of
retaliatory motivation); *cf. Salazar* v. *Bowne Realty Associates, L.L.C.*, 796 F.
Supp. 2d 378, 384-85 (E.D.N.Y. 2011) (finding that an adverse action as much
as eight months after an employee's protected activity, paired with other
evidence, could raise an inference of retaliatory motive).

Beyond the alleged temporal connection, the SAC is devoid of any
evidence — direct or indirect — of Defendants' retaliatory animus toward
Plaintiffs.  Plaintiffs allege only that some employees received discretionary
payments from Defendants, but Plaintiffs "conspicuously" did not.  (SAC
¶ 610).  This bare allegation does not plausibly allege direct evidence of
Defendants' retaliatory animus toward them.  Plaintiffs do not allege, for
instance, that Defendants made any comments to Plaintiffs suggesting that
Defendants were refusing to provide payments to employees who had joined

35

Plaintiffs' wage-and-hour suit. Nor do Plaintiffs allege that the employees who received the payments were similarly situated to Plaintiffs in material respects such that Defendants' decision could be attributed to Plaintiffs' filing of this wage-and-hour lawsuit. Absent such additional allegations, the Court cannot find that Defendants denied Plaintiffs the payments because of their decision to engage in protected activity. *See Jeanty* v. *Newburgh Beacon Bus Corp.*, No. 17 Civ. 9175 (CS), 2018 WL 6047832, at *11 (S.D.N.Y. Nov. 19, 2018) (holding that plaintiff failed to allege causal connection where plaintiff claimed "that because he was suspended after he engaged in protected activity, the protected activity must have been the cause of his suspension").

Plaintiffs argue in opposition that "[e]ven if Defendants weren't legally obligated to provide [the discretionary] payments to anyone, the Second Circuit has squarely rejected that argument that discretionary benefits can be doled out in a discriminatory manner." (Pl. Opp. 10 (citing *Davis* v. *N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235-36 (2d Cir. 2015)). Although Plaintiffs attempt to draw support for their claim from *Davis*, that decision only underscores the flaw in their claim. In *Davis*, the Second Circuit held that the denial of a discretionary bonus, in some circumstances, may constitute an adverse employment action. *Davis*, 804 F.3d at 236. The Second Circuit further held, however, that the retaliation claim before it had been properly dismissed, because the plaintiff failed to show that her employer's decision not to provide her with a discretionary bonus was due to a discriminatory motivation rather than the fact that the plaintiff was absent from her job for four months and

had failed to contribute toward her employer's earning of the bonuses that were then distributed to certain of its employees. *Id.* The same issue is present here. As discussed, Plaintiffs have failed to allege that they were passed over for the payments due to their involvement in protected activity rather than, for example, their performance, the nature of their positions, the length of time they had been in their position, or some other permissible consideration.

On the record before it, the Court cannot find that Defendants' decision not to provide Plaintiffs with discretionary payments plausibly constituted unlawful retaliation. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' retaliation claims under the NYLL and the FLSA insofar as they are based on Defendants' denial of discretionary COVID-relief payments.

### b.    Pena's Conversation with Fried

The Court concludes by addressing Pena's retaliation claim premised on his conversation with Fried on November 30, 2020. (SAC ¶¶ 577-590). To review, Pena alleges that Fried told him that he would have to sign union-related documents to receive checks in the amounts of $1,000 and $500. (*Id.* at ¶ 582). Pena further alleges that Fried told him that "it can take years for a case to resolve and years to get anything even if he wins; that [he] won't get anything from the lawyer or the case; that the Company has been very good to [him]; and that lawyers only care about the money." (*Id.* at ¶ 586). Finally, Pena alleges that Fried told him that "by the time he gets anything, he will no longer be in the Company." (*Id.* at ¶ 587). According to Pena, he understood Fried's statement "to be a threat to fire him due to this lawsuit." (*Id.* at ¶ 588).

Defendants argue that Pena's claim must also be dismissed for failure to state a claim because neither Fried's statements nor his refusal to provide Pena with the $1,000 or $500 checks constitutes an adverse action nor suggests a retaliatory motive.  (Def. Br. 21-24).  The Court address each argument in turn.

The Court finds first that Pena has plausibly alleged that he experienced an adverse employment action.  An adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting [similar] charge[s.]"  *Mullins*, 626 F.3d at 53 (internal quotation marks omitted) (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White,* 548 U.S. 53, 68 (2006)).  Here, Pena alleges that Fried (i) threatened to fire him and (ii) refused to provide him with benefits to which he was entitled.  (SAC ¶¶ 588-589).  These allegations, taken together and considered in the light most favorable to Plaintiffs, could plausibly dissuade a reasonable worker from pursuing claims against Defendants.  Indeed, a reasonable worker in Pena's position could conclude that pursuing their wage-and-hour claim would not be worth forgoing vacation pay or other benefits.  *See Gaughan* v. *Rubenstein*, 261 F. Supp. 3d 390, 420 (S.D.N.Y. 2017) (noting that withholding of wages is an adverse act for the purpose of stating a retaliation claim); *cf. Sethi* v. *Narod*, 12 F. Supp. 3d 505, 529 (E.D.N.Y. 2014) (stating in the discrimination context that "[i]f Plaintiff was deprived of five paid days of vacation each year to which he was entitled, then Plaintiff suffered a materially adverse impact in the terms and conditions of employment sufficient to establish an adverse employment action").

The Court also finds that Pena has alleged sufficient evidence of Fried's retaliatory animus to establish a causal connection between Pena's participation in this case and Fried's alleged retaliation.  Although Fried's alleged threat of termination and withholding of Pena's vacation pay occurred on November 30, 2020 (SAC ¶¶ 580, 582, 587), this was not the first conversation alleged to have occurred between Pena and Fried where Fried attempted to have Pena sign union-related documents.  As alleged in the SAC, Pena first broached the topic of Pena's willingness to join Local 298 with Pena on July 29, 2020, when he asked Pena "to sign a paper which … would have made him a member of Defendants' hand-picked union." (*Id.* at ¶ 577).  This first conversation, which took place approximately five weeks after Pena and the other Plaintiffs filed the Complaint in this case (*see* Dkt. #1), falls within the two-to-three-month period that courts in this District have found sufficient to demonstrate the existence of causation.  *See Zuckerman*, 2021 WL 4267815, at *17.  And while the second conversation between Pena and Fried, which occurred on November 30, 2020, falls outside that temporal limit, its close relationship to the first conversation provides indirect evidence that Fried's comments were inspired by Pena's participation in this litigation.

Further, Pena alleges more than indirect temporal evidence of Fried's retaliatory intent.  As set forth in the SAC, Fried explicitly tied Pena's ability to receive "the vacation pay [Defendants] hadn't paid him for 2020" to his willingness to sign a union membership card (SAC ¶ 582; *see also id.* at ¶ 594 (alleging that Pena was entitled to the vacation pay)).  Moreover, during this

same conversation, Fried made several statements to Pena suggesting that continuing to pursue his claims against Defendants would not be worth his time. (*Id.* at ¶¶ 586-587). These allegations tie Defendants' alleged adverse action directly to Pena's protected activity and satisfy Plaintiffs' minimal burden to plead retaliatory intent at this stage of the proceedings.

Defendants' arguments to the contrary miss the mark. *First*, Defendants argue that a threat of termination is not, on its own, sufficient to constitute an adverse employment action. (Def. Br. 23). While it is true that courts in the Second Circuit have consistently held that "the threat of disciplinary action, without more, does not constitute an adverse employment action," *Norman* v. *NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 166 (S.D.N.Y. 2020) (quoting *Henry* v. *NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014)), *aff'd*, No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021), Pena's claim does not rest solely on Fried's alleged threat of termination. As discussed, Pena alleges that Fried's threat of termination occurred during a longer conversation during which Fried refused to provide Pena with vacation pay to which he was allegedly entitled. (SAC ¶¶ 582, 594). These allegations are sufficient to state a claim at this early juncture.

*Second*, Defendants argue that Pena's allegations related to Fried's refusal to provide him with the two checks fail to state an adverse action because Pena has not alleged that he was entitled to the checks. (Def. Br. 23). But the fact is that Pena *does* allege that he was entitled to the vacation pay. Pena does so explicitly, alleging that "[t]he vacation pay Fried withheld (and

40

was never paid) was earned by German Pena because he was promised vacation pay and fulfilled the condition of receiving it, and Defendants have never claimed otherwise." (SAC ¶ 594). And he does so implicitly, alleging that Fried told Pena that the $500 check was "for the vacation pay [Defendants] hadn't paid him for 2020[.]" (*Id.* at ¶ 582). On Pena's account, therefore, Fried explicitly acknowledged Pena's entitlement to the vacation pay but refused to provide it to him. Defendants' cited cases, finding that plaintiffs who did not allege they were entitled to benefits could not allege an adverse action based on the withholding of those benefits, are therefore inapposite. (Def. Br. 23-24).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' retaliation claims under the FLSA and NYLL based on Pena's alleged November 30, 2020 conversation with Fried.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' partial motion to dismiss under Rules 12(b)(1) and 12(b)(6).

The Court GRANTS Defendants' motion to dismiss under Rule 12(b)(1) with respect to Plaintiffs' claims for (i) unlawful wage deduction insofar as it is predicated on Defendants' alleged deductions of union dues and (ii) retaliation under the FLSA and NYLL based on Defendants' filing of the motion to compel arbitration. Additionally, the Court GRANTS Defendants' motion under Rule 12(b)(6) as to Plaintiffs' retaliation claims under the FLSA and the NYLL based on Defendants' alleged refusal to provide them with discretionary payments.

By contrast, the Court DENIES Defendants' motion to dismiss Plaintiffs' FLSA and NYLL retaliation claims pursuant to Rule 12(b)(6) based on Pena's conversation with Fried.

Defendants are directed to file an amended Answer on or before **April 4, 2022**.

The Court expects that the parties will continue to adhere to the discovery deadlines set forth in the Civil Case Management Plan and Scheduling Order.  (Dkt. #102).

The Clerk of Court is directed to terminate the motion at docket entry 85.

SO ORDERED.

Dated:          March 14, 2022
                New York, New York

_____
          KATHERINE POLK FAILLA
          United States District Judge